**ASU Sandra Day O'Connor College of Law**
**First Amendment Clinic, Public Interest Law Firm**
Gregg P. Leslie, Gregg.Leslie@asu.edu,* (AZ Bar # 035040)
Aaron A. Baumann, Aaron.Baumann@asu.edu,* (AZ Bar # 033754)
Samuel Pritchett, spritch2@asu.edu**
Aliza Lewis, ajlewi20@asu.edu**
111 E Taylor St, Mail Code 8820
Phoenix, AZ 85004
(480) 727-7398
*Certified supervising attorney pursuant to L.R. Civ. 83.4(e)
**Certified limited practice student pursuant to L.R. Civ. 83.4(e)
*Attorneys for Plaintiff Lucas Mullikin*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LUCAS MULLIKIN,<br><br>*Plaintiff,*<br>v.<br><br>CITY OF YUMA,<br>JAMES BAISCH, in his personal capacity<br><br>*Defendants.* | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. When civilians, independent journalists, or professional reporters observe government officials exercising their duties, their activities receive constitutional protection because—in a democracy—the public must know what their government is up to. Courts have thus long recognized a First Amendment right to film matters of public interest and question government officials. *See, e.g., Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995).

2. On May 16, 2023, Lucas Mullikin ("Mullikin") sought to record a Yuma Police Department officer detaining a confused individual on a public sidewalk. Mullikin is a professional journalist who drew on his experience to identify a safe vantage point, separated by physical barriers, from where he could record footage of public interest without endangering himself or others. Despite these precautions, Officer James Baisch ("Officer Baisch") denied Mullikin his right to record, then pushed him away without provocation, pushed him to the ground, ordered him to stay on the ground, and arrested him for failing to comply with this illegal order.

3. Officer Baisch singled Mullikin out because he was filming. Other bystanders were not. Due to the City of Yuma's inadequate policies and training, Officer Baisch did not know how to perform his duties without violating Mullikin's constitutional rights.

4. Mullikin brings this suit to remedy the loss of his rights and to ensure he and others can report on matters of public interest without fear for their safety. Mullikin seeks compensatory and punitive damages for the violation of his rights, injunctive relief to restrain the Yuma Police Department from further violations of his rights, and declaratory relief.

## JURISDICTION AND VENUE

5. This action to vindicate Mullikin's rights protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution is brought under 42 U.S.C. § 1983. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1343.

6. Venue is proper in the District of Arizona under 28 U.S.C. § 1391(b) because the Defendants each reside and/or perform official duties within this District and the events or omissions giving rise to Mullikin's claims occurred in this District.

## PARTIES

7. Lucas Mullikin ("Mullikin") is a resident of Las Vegas, Nevada, and a professional photographer, filmmaker, and producer who works on a freelance basis for local, national, and international news organizations.

8. Defendant City of Yuma ("the City" or "Yuma") is a municipal corporation, organized and existing under the laws of the State of Arizona. The Yuma Police Department is an agency of the City of Yuma; all actions of the Yuma Police Department are the legal responsibility of the City.

9. Defendant James Baisch ("Officer Baisch") is an adult resident of Arizona. At all times relevant to the events described in this Complaint, Officer Baisch was employed by the City as a police officer and was acting under color of state law by the City's authority. Officer Baisch is sued here in his personal capacity.

## FACTUAL ALLEGATIONS

10. Mullikin has worked as a freelance journalist for more than a decade, providing videography, writing, producing, directing, and interviewing services to individual and media entity clients.

11. Mullikin specializes in directing, filming, and producing short-form videos in which he films a news scene, interviews civilian witnesses and experts, and edits footage to produce a news segment or documentary. His work has been commissioned by

CNBC, Bloomberg, and the BBC, which published his videos on their social media pages, websites, and YouTube accounts.

12. Mullikin also travels to conflict and crisis zones to cover breaking news stories by shooting video footage and interviewing sources. Mullikin has covered protests, convoys, and the war in Ukraine.
13. On May 16, 2023, Mullikin and his girlfriend, Alissa Heap ("Heap"), drove through Yuma, Arizona, on their way home from a trip to Mexico.
14. At or around 8:00 pm, Mullikin saw a physical altercation in which a larger person was grabbing someone smaller and throwing him against a fence.
15. Mullikin thought he was witnessing an assault and drove toward the altercation.
16. As he approached, Mullikin saw that the larger individual was a Yuma Police Department officer, later identified as Officer Kinnell, and the smaller individual was a civilian ("John Doe").
17. Mullikin and Heap parked, exited their car, and approached the scene on foot.
18. Mullikin realized that John Doe was disoriented and not threatening or attacking Officer Kinnell.
19. John Doe was confused as to why he had been detained and feared he was being abducted.
20. Mullikin stood several feet away and began recording with his phone.
21. Mullikin asked Officer Kinnell why he was detaining John Doe.
22. Officer Kinnell replied, "Why? Because he is not listening to me."

23. Mullikin asked, “Why are you arresting him? Why are you tackling and detaining him?”

24. Officer Kinnell replied, “Because he was refusing to comply with a city command.”

25. Mullikin asked, “What was the command?”

26. Officer Kinnell replied, “The command was to stop.”

27. Mullikin asked, “To stop what?”

28. Officer Kinnell replied, “To stop so I could talk to him.”

29. As John Doe became increasingly agitated, Officer Kinnell raised his voice and told Mullikin: “You need to back up right now! Go over to the corner or I’m done with you. I’ll talk to you in a sec. Go. Get over there.”

30. Mullikin was not the only bystander observing Officer Kinnell. Also watching from several feet away was an unidentified man, who was shining a flashlight on the scene and encouraging Officer Kinnell to charge John Doe with resisting arrest.

31. Mullikin moved to the corner where Officer Kinnell directed him.

32. Officer Kinnell lifted John Doe and carried him to the same corner.

33. Mullikin continued to film Officer Kinnell and John Doe from several feet away.

34. Officer Kinnell called for additional officer support.

35. Officer Kinnell then told Mullikin, “You need to back up.”

36. Mullikin took two steps back while saying, "Six feet, six feet,” which he believed was a reasonable distance from Officer Kinnell. Mullikin positioned himself behind two sections of iron fencing, approximately six feet from Officer Kinnell, and continued

filming. Mullikin believed this spot was close enough to record yet far enough to respect Officer Kinnell and John Doe's safety.

37. John Doe wrapped his legs tightly around a fencepost.

38. Two additional Yuma Police Department officers arrived.

39. Officer Kinnell told them, "We need to get him [John Doe] to my car."

40. When John Doe protested that he was being unlawfully arrested, one of the officers replied, "We'll figure that out," and helped Officer Kinnell remove John Doe's legs from the fence.

41. John Doe said, "We'll figure it out now, before you arrest me."

42. The assisting officer replied, "Nope."

43. Another officer employed pain compliance techniques on John Doe, explaining that the tool they were applying to separate his leg from the fence would hurt him because he wasn't complying.

44. At or around 8:20 pm, Officer Baisch arrived in his patrol car. He parked and approached the scene on foot.

45. As he approached, Officer Baisch walked past two civilians who were watching, but not filming, the scene from approximately six feet away.

46. Officer Baisch immediately walked up to Mullikin and said, "Hey, get back. Get back."

47. Mullikin replied, "It's six feet, it's six feet."

48. Officer Baisch grabbed Mullikin's wrist and upper arm and pushed him away from the scene, saying "Get back, get back, get back."

49. While being pushed, Mullikin said, “Excuse me, excuse me officer. It’s six feet.”
50. Officer Baisch grabbed Mullikin’s head, pushed him to the ground and said, “Get on the ground.”
51. Mullikin said, “Excuse me, sir, I have not done anything wrong.”
52. Officer Baisch pushed Mullikin until Mullikin was flat on his back, approximately 20 feet from John Doe, then pointed to where Mullikin was lying and said, “You stay there.”
53. Officer Baisch turned around and started walking back toward Officer Kinnell.
54. Mullikin kept filming, although he was too far away to record John Doe’s arrest.
55. Mullikin stood up and said, “What’s your badge number, officer? Badge number, officer?”
56. Officer Baisch turned around, walked toward Mullikin, and said, “You’re under arrest.”
57. Mullikin asked, “Why?”
58. Officer Baisch said, “Because you’re failing to comply.”
59. Officer Baisch grabbed Mullikin’s left arm—the arm holding his phone—, pulled Mullikin’s hands behind his back, and tried to grab Mullikin’s phone out of his hand.
60. Mullikin’s phone stopped recording.
61. Officer Baisch forced Mullikin to the ground and twisted his arm so that Mullikin feared he would dislocate his shoulder.
62. Mullikin’s knees were deeply skinned and bloody.
63. Mullikin’s knees remained scabbed, painful, and healing for weeks afterward.

64. While being forced to the ground, Mullikin shouted, "I did nothing wrong, I'm a journalist! This is fucked up!"

65. Officer Baisch held Mullikin's neck and left wrist and said, "Put your hands behind your back, you're under arrest."

66. Sergeant Andres Angulo ("Sergeant Angulo") approached and held Mullikin's head and right arm while Officer Baisch twisted Mullikin's left arm and grabbed at Mullikin's phone.

67. Officer Baisch said, "You're not going to stand on top of us while we're working. Put your hand behind your back!"

68. Mullikin said, "Let me have my phone, please! I don't want it to break. Let me set it down. I wasn't trying, you can ask the other officer. I wasn't mean, I wasn't cursing at him."

69. Sergeant Angulo said, "We'll figure that out, buddy."

70. Officer Baisch replied, "You're not going to stand over the top of us while we work."

71. Officer Baisch handcuffed Mullikin, lifted him to his feet, and walked him to a patrol car.

72. Officer Baisch cited Mullikin for resisting arrest (A.R.S. § 13-2508) and willfully failing to comply with a lawful order of a police officer (Yuma City Code § 111-04).

73. On information and belief, Officer Baisch's actions, including pushing Mullikin away from John Doe, pushing him down to the ground, ordering him to "stay there," seizing his phone, and placing him under arrest, were taken in retaliation for Mullikin

recording Yuma Police Officers' activities and requesting Officer Baisch's badge number.

74. Defendant City of Yuma is responsible for the policies and practices of the Yuma Police Department.

75. On or about September 28, 2023, Thomas Garrity ("Chief Garrity"), Yuma's Chief of Police, gave an interview to News 11, NBC's local news affiliate, about Mullikin's arrest.

76. Chief Garrity pointed to the moment Mullikin stood up, after being forced to the ground by Officer Baisch and told to "Stay there," as the moment he disobeyed a lawful order.

77. When asked whether he thought Officer Baisch or the other officers had done anything wrong, Chief Garrity responded, "No, I do not."

78. Chief Garrity's response illuminates Yuma's misunderstanding of how the constitution protects journalists and civilians when they interact with police officers.

79. From January of 2013 until November of 2023, the Yuma Police Department did not have any policies providing officers with standards, training, or information about how to engage with journalists or civilians recording police activity in public places.

80. Yuma published policies and a training pamphlet on media and journalist interactions in November 2023, six months after Mullikin's arrest.

81. Mullikin was unable to record important aspects of officers' interactions with John Doe because of Officer Baisch's failure to respect his constitutional rights and Yuma's failure to provide training, policies, and supervision to its officers.

82. Mullikin fears for his safety should he return to Yuma and report on the activities of other public officials, due to the unlawful, retaliatory, and violent treatment he experienced at the hands of Officer Baisch.

**CLAIM ONE**

**Violation of the First and Fourteenth Amendments of United States Constitution under 42 U.S.C. § 1983 (Interference with speech and news gathering) (Against Defendant James Baisch in his personal capacity)**

83. Lucas Mullikin realleges and incorporates by reference the preceding paragraphs of the Complaint.

84. This right of newsgathering includes the right of all citizens to record matters of public interest, in a public location, free from unlawful government interference. This includes the right to record a physical altercation between the police and a private citizen on a public sidewalk.[1]

85. Mullikin engaged in protected activity under the First Amendment when he recorded Officer Kinnell's physical altercation with John Doe from a public sidewalk.

86. Mullikin peacefully recorded Officer Kinnell and John Doe's altercation from several feet away, behind two sections of metal fence, without indicating any intent to interfere.

---

[1] "The First Amendment protects the right to photograph and record matters of public interest. This includes the right to record law enforcement officers engaged in the exercise of their official duties in public places." *Askins v. U.S. Dept. of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) (internal citations omitted).

87. When Officer Baisch told him to "Get back," Mullikin sought to clarify the situation by explaining that he was "six feet," or a safe distance, away.

88. Officer Baisch unreasonably interfered with Mullikin's right to record matters of public interest by ordering Mullikin away from his safe vantage point, physically pushing him away, ordering him to "Get on the ground," shoving him onto the pavement, ordering him to stay sprawled on the sidewalk approximately 20 feet away from the scene, taking his cell phone, and placing him under arrest.

89. When Officer Baisch took these actions, Mullikin had not interfered with any of the officers' duties and presented no threat of interference.

90. Mullikin also engaged in protected activity under the First Amendment when he asked Officer Baisch for his badge number.

91. Baisch unreasonably interfered with Mullikin's right to ask public officials questions about their offices by forcing him back onto the pavement, handcuffing him, and placing him under arrest, thereby preventing Mullikin from further questioning Officer Baisch and other Yuma Police officers about their exercise of authority.

92. Mullikin's question did not threaten Officer Baisch or other officers in any way.

93. Officer Baisch's actions deprived Mullikin of his only adequate means to record Officer Kinnell's altercation with John Doe and his ability to ask Officer Baisch and other officers questions about their duties as public officials.

94. Baisch's actions towards Mullikin were unreasonable, unjustified by the circumstances, and constituted unlawful interference with Mullikin's rights under the First and Fourteenth Amendments.

95. Officer Baisch acted willfully, maliciously, and with reckless disregard for Mullikin's right to record matters of public interest and to ask public officials questions about their offices under the First Amendment.

96. At all relevant times, Officer Baisch acted under color of State law.

97. As a direct and proximate cause of Officer Baisch's unlawful actions alleged herein, Mullikin has been deprived of his rights under the First and Fourteenth Amendments, suffered physical injury and emotional distress, and fears further mistreatment should he engage in protected activity within the City's jurisdiction.

## CLAIM TWO

## Violation of the First and Fourteenth Amendments of United States Constitution under 42 U.S.C. § 1983 (Retaliation) (Against Defendant James Baisch in his personal capacity)

98. Lucas Mullikin realleges and incorporates by reference the preceding paragraphs of the Complaint.

99. The First Amendment of the United States Constitution provides Mullikin with the right to record matters of public interest in a public place and to ask public officials questions about their offices.

100. The First and Fourteenth Amendments of the United States Constitution also make it unlawful for a public official or municipal entity to retaliate against Mullikin for the exercise of these rights.

101. Mullikin engaged in protected activity under the First Amendment when he recorded Officer Kinnell's physical altercation with John Doe from a public sidewalk.

102. Immediately after arriving as backup to Officer Kinnell, Officer Baisch retaliated against Mullikin by ordering Mullikin to “Get back,” pushing him further away, ordering him to “Get on the ground,” shoving him onto the pavement, ordering him to “Stay there” (where he could not record John Doe’s arrest), taking his phone, placing him under arrest, and improperly citing him for violations of city and state law.

103. Mullikin also engaged in activity protected under the First Amendment when he asked Officer Baisch for his badge number.

104. Immediately after Mullikin's second request, Baisch retaliated against Mullikin by swiftly turning around and declaring “You’re under arrest,” forcing Mullikin back to the ground, taking his phone, placing him under arrest, and improperly citing him for violations of city and state law.

105. Officer Baisch’s actions towards Mullikin would chill a person of ordinary firmness from continuing to engage in constitutionally protected activity, including but not limited to recording matters of public interest in a public place and asking public officials questions about their offices.

106. Officer Baisch’s actions were substantially motivated by Mullikin’s protected activity, including his attempt to record Officer Kinnell’s altercation with John Doe and his questions about Officer Baisch’s badge number.

107. As alleged above, Officer Baisch ordered Mullikin to “Get back!” and engaged him physically, grabbing the arm he used to hold his phone and pushing him further away from the target of his recording. If Mullikin were not recording the altercation, Officer Baisch would not have taken such extreme action.

108. Officer Baisch later chose to re-engage with Mullikin, forcing him back to the ground, handcuffing him, placing him under arrest, and taking his phone immediately after Mullikin asked for Officer Baisch's badge number a second time. If Mullikin had not asked for his badge number, Officer Baisch would not have taken such extreme action.

109. Officer Baisch's actions were unreasonable under the circumstances.

110. When Officer Baisch took these aggressive actions, Mullikin had not interfered with any of the officers' duties and presented no threat of interference.

111. Mullikin peacefully recorded John Doe's arrest while standing on a public sidewalk, several feet away, behind two sections of metal fence, without indicating any intent to interfere.

112. When Officer Baisch first told him to "Get back," Mullikin sought to clarify the situation by explaining that he was "six feet," a safe distance, away.

113. Officer Baisch's decision to arrest Mullikin was unsupported by probable cause.

114. Officer Baisch claimed that Mullikin had violated A.R.S. § 13-2508 by resisting arrest and Yuma City Code § 111-04 by failing to comply with a lawful order.

115. Officer Baisch's order to "stay" on the ground—unsupported by reasonable suspicion that Mullikin had committed a crime, depriving Mullikin of his First Amendment right to record matters of public interest in a public place, and without any objective evidence that Mullikin threatened officers' safety—was not a "lawful order" under Yuma City Code § 111-04.

116. Mullikin also did not resist arrest by employing any physical force or taking any nonviolent physical actions to impede his arrest.

117. Mullikin merely expressed his objections verbally and adjusted his body to avoid hurting himself, while complying with Officer Baisch's demands.

118. Officer Baisch lacked probable cause to arrest Mullikin for any other crime.

119. Even if Officer Baisch's actions were supported by probable cause, Yuma Police Department officers typically exercise their discretion not to arrest individuals for failing to follow a lawful order, when such a failure constitutes the sole basis for an arrest.

120. Officer Baisch acted willfully, maliciously, and with reckless disregard for Mullikin's constitutional rights.

121. At all relevant times, Officer Baisch acted under color of state law.

122. As a direct and proximate cause of Officer Baisch's unlawful actions as alleged herein, Mullikin has been deprived of his rights under the First and Fourteenth Amendments, suffered physical injury and emotional distress, and fears further retaliation should he engage in protected activity within the City's jurisdiction.

## CLAIM THREE

### Violation of the First and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 (Liability under *Monell* doctrine) (Against Defendant City of Yuma)

123. Lucas Mullikin realleges and incorporates by reference the preceding paragraphs of the Complaint.

124. Defendant City of Yuma is liable for Officer Baisch's violations of Mullikin's rights under the First and Fourteenth Amendments as alleged herein.

125. The City is responsible for providing training, policies, and supervision for Yuma Police Department officers to prevent unnecessary violations of citizens' constitutional rights in the course of police activity.

126. The City failed to train Yuma Police Department officers, including Officer Baisch, on necessary procedures to protect the public's First Amendment rights, including but not limited to the right to record matters of public interest in a public place, the right to ask public officials questions about their offices, and the right to be free from any form of retaliation.

127. The City also failed to supervise its officers as they interacted with journalists and other members of the public exercising their First Amendment rights.

128. This failure to train and supervise constitutes a policy of deliberate indifference.

129. Specifically, the City had no policies in place regarding proper procedure that officers should follow in dealing with media and journalists at the time of Mullikin's arrest. Mullikin was arrested in May of 2023, and the City thereafter published policies for officer interactions with media and journalists in November of 2023.

130. The City knew or should have known that its officers needed procedures to follow and lacked training on this topic at the time of Mullikin's arrest.

131. While the City had, prior to Mullikin's arrest, acknowledged the public's general First Amendment right to speak, to record police activity in the majority of situations, and to be free from retaliatory arrests, the City maintained inadequate policies to

protect these rights in practice and to guide officers when encountering these rights under stressful conditions or in uncertain situations.

132. The City also did not train Yuma Police Department officers on respecting these rights without endangering themselves or others.

133. Further, the City's policy makers enacted an informal policy permitting violations of citizens' rights to record matters of public interest in a public place, to ask public officials questions about their offices, and to remain free from retaliation for their protected expression.

134. This informal policy is evidenced by Chief Garrity endorsing his officers' behavior in a televised interview. When an interviewer showed Chief Garrity a video of Mullikin's arrest and asked if he felt any officers did anything wrong, Chief Garrity responded "No, I do not."

135. Chief Garrity noted that Officer Baisch's order to "Stay there" on the ground, which unlawfully interfered with Mullikin's First Amendment rights, was a "lawful order," the violation of which gave Officer Baisch probable cause to arrest Mullikin.

136. In light of the proliferation of high-quality cameras in cell phones, recent public interest in police activity, and legal authority entrenching the right to record matters of public interest in public places, the need to train and supervise officers was obvious. The City's own policies have acknowledged the growth of other kinds of recorded interactions, such as "1st Amendment Audits," since at least 2018.

137. Similarly, in light of heightened tensions between the general public and police officers, it has been increasingly obvious that officers need training and supervision to

ensure they do not react irrationally to activities protected under the First Amendment, like recording or questioning their activities.

138. The City's lack of policy and inadequate training on these topics was so clearly insufficient to meet this need, and so likely to result in violation of constitutional rights, that the City's decision to ignore this need until after Mullikin's arrest constituted a policy of deliberate indifference.

139. The City's failures were the moving force behind the violation of Mullikin's rights under the First and Fourteenth Amendments, as a result of which Mullikin suffered physical injury and emotional distress and fears further retaliation should he engage in protected activity within the City's jurisdiction.

## CLAIM FOUR

### Violation of the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 (Unlawful and excessive force) (Against Defendant James Baisch)

140. Lucas Mullikin realleges and incorporates by reference the preceding paragraphs of the Complaint.

141. The Fourth Amendment of the United States Constitution guarantees Mullikin the right to be free from unlawful search and seizure, including but not limited to seizure conducted with excessive force that is objectively unreasonable under the circumstances.

142. Officer Baisch violated this constitutional right by employing an objectively unreasonable level of force when seizing Mullikin.

143. Officer Baisch applied excessive force when pushing Mullikin away from the site of Officer Kinnell's altercation with John Doe.

144. Mullikin stood a safe distance from the scene: six feet away and behind two sections of metal fence. When Mullikin tried to explain himself, he was met with an immediate physical response.

145. Officer Baisch pushed Mullikin away, grabbed his head, and forced him to the ground.

146. Officer Baisch also applied excessive force when arresting Mullikin.

147. While arresting Mullikin, Officer Baisch slammed him to the pavement and grabbed his arm so that Mullikin feared his shoulder would dislocate.

148. Mullikin posed no threat to officers, John Doe, or bystanders at any point, including when Officer Baisch initially forced him back and later slammed him to the ground while arresting him.

149. In the first instance, Mullikin maintained an appropriate distance from the scene while he was recording. Drawing on his experience with on-scene journalism, Mullikin stationed himself six feet away, behind two sections of metal fence, and was careful not to interfere with officers.

150. In the second instance, Mullikin was even farther away from the altercation. He had not resisted when Officer Baisch initially pushed him back and took no actions after Officer Baisch left him sprawled on the ground besides standing up and requesting Officer Baisch's badge number. These actions did not constitute an immediate threat to officers or bystanders.

151. In seizing Mullikin with unlawful and excessive force, Officer Baisch acted willfully, maliciously, and with reckless disregard for Mullikin's constitutional rights.

152. As a direct and proximate cause of Officer Baisch's unlawful actions, Mullikin has been deprived of his rights under the Fourth and Fourteenth Amendments, suffered physical injury and emotional distress, and fears further mistreatment should he engage in protected activity within the City of Yuma.

## CLAIM FIVE

### Violation of the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 (Unlawful Seizure) (Against Defendant James Baisch)

153. Lucas Mullikin realleges and incorporates by reference the preceding paragraphs of the Complaint.

154. The Fourth Amendment of the United States Constitution guarantees Mullikin the right to be free from unreasonable search and seizure, including but not limited to seizure conducted without reasonable suspicion of wrongdoing.

155. Officer Baisch violated this constitutional rights by ordering Mullikin to "Get on the ground" and "Stay there" without any basis for suspecting Mullikin had acted, or intended to act, wrongfully.

156. Officer Baisch intentionally seized Mullikin when he ordered him to "Get on the ground" and "Stay there."

157. Under the circumstances, a reasonable person in Mullikin's position would have believed that this show of authority forbade him from moving freely. This command,

coupled with the show of force that left him injured and shaken, convinced Mullikin that he was to stay in the exact spot Officer Baisch indicated.

158. In taking these actions, Officer Baisch acted willfully, maliciously, and with reckless disregard for Mullikin's rights to be free from unreasonable searches and seizures.

159. As a direct and proximate cause of Officer Baisch's unlawful actions as alleged herein, Mullikin has been deprived of his rights under the Fourth and Fourteenth Amendments, suffered physical injury and emotional distress, and fears further mistreatment should he engage in protected activity within the City's jurisdiction.

## CLAIM SIX

### Violation of the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 (Wrongful Arrest) (Against Defendant James Baisch)

160. Lucas Mullikin realleges and incorporates by reference the preceding paragraphs of the Complaint.

161. The Fourth Amendment of the United States Constitution guarantees Mullikin the right to be free from unreasonable search and seizure, including but not limited to arrest without probable cause.

162. At the time of Mullikin's arrest, the limited information available to Officer Baisch did not provide probable cause to believe Mullikin had violated A.R.S. § 13-2508, Yuma City Code § 111-04, or any other law.

163. Officer Baisch cited Mullikin under Yuma City Code § 111-04 based on Mullikin's failure to obey Officer Baisch's order to "Stay there," after Officer Baisch pushed Mullikin away from John Doe's arrest and shoved him to the ground.

164. Officer Baisch also cited Mullikin under A.R.S. § 13-2508 for resisting arrest, which Mullikin allegedly committed only while being unlawfully arrested under Yuma City Code § 111-04.

165. Officer Baisch's order that Mullikin "Stay there" was not a lawful order under Yuma City Code § 111-04, because the order violated Mullikin's constitutional rights and exceeded the scope of Officer Baisch's authority.

166. Officer Baisch's order that Mullikin "Get back" unreasonably interfered with his right to record matters of public interest in a public place and constituted unlawful retaliation for Mullikin's exercise of constitutional rights.

167. Mullikin had not put himself, the officers, John Doe, or any bystanders in danger. Recording police activity on a public sidewalk, from a safe distance, and from behind physical barriers, does not endanger the people involved or interfere with officers' duties.

168. Mullikin's efforts to record officers provided no basis for suspecting him of criminal activity

169. Though police officers have broad authority to issue orders which protect the public and prevent escalation, Officer Baisch does not have authority to seize citizens who are not under suspicion of any crime and do not present any danger to officers, suspects, or bystanders.

170. Officer Baisch also had no information to support a citation under A.R.S. § 13-2508 for resisting arrest.

171. Mullikin did not employ physical force or passive resistance to impede his arrest, but expressed his objections verbally and adjusted his body to avoid hurting himself while complying with Officer Baisch's demands.

172. Officer Baisch lacked probable cause to arrest Mullikin for any other crime.

173. Officer Baisch acted willfully, maliciously, and with reckless disregard for Mullikin's constitutional rights.

174. As a direct and proximate cause of Officer Baisch's unlawful actions as alleged herein, Mullikin has been deprived of his rights under the Fourth and Fourteenth Amendments, suffered physical injury and emotional distress, and fears further mistreatment should he engage in protected activity within the City's jurisdiction.

## CLAIM SEVEN

**Violation of the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 (Liability under *Monell* Doctrine) (Against Defendant City of Yuma)**

175. Lucas Mullikin realleges and incorporates by reference the preceding paragraphs of the Complaint.

176. Defendant City of Yuma is liable for Baisch's violations of Mullikin's rights under the Fourth and Fourteenth Amendments as alleged herein.

177. The City is responsible for providing training, policies, and supervision for Yuma Police Department officers to prevent unnecessary violations of citizens' constitutional rights in the course of police activity.

178. The City failed to train Yuma Police Department Officers, including Officer Baisch, on necessary procedures to protect the public's Fourth Amendment rights, including but not limited to the right to be free from excessive force, unlawful seizure, and arrest without probable cause.

179. The City also failed to supervise its officers as they seized and arrested citizens in tense situations.

180. This failure to train and supervise constitutes a policy of deliberate indifference.

181. Specifically, the City maintained inadequate policies for nonviolent de-escalation of tense situations. While the City's policies acknowledged the general need to de-escalate encounters and resolve them without unreasonable violence or unlawful acts, they provided insufficient guidance on applying these principles to officers arriving in the middle of a stressful situation, with minimal information, and no time to confer.

182. Even if the City provided policies to protect citizens' Fourth Amendment rights in handbooks or memoranda, its representatives within the Yuma Police Department established a contradictory informal policy or custom.

183. For example, Chief Garrity endorsed Baisch and his fellow officers' behavior in interviews. When an interviewer showed Chief Garrity a video of Mullikin's arrest and asked if he felt any officers did anything wrong, Chief Garrity responded "No, I do not."

184. Chief Garrity noted that Officer Baisch's order to "Stay there" on the ground, which unlawfully interfered with Mullikin's First Amendment rights, was a "lawful order," the violation of which gave Officer Baisch probable cause to arrest Mullikin.

185. In light of the potential for tension, irrationality, and violence in all police interactions, the need to adequately train and supervise officers was obvious. Many of the Yuma Police Department's policies broadly acknowledge the importance of training and supervision on de-escalation and proper treatment of citizens.

186. The City's limited training, inadequate supervision, and informal policy of allowing violations was so clearly inadequate to meet this need, and so likely to result in violation of constitutional rights, that the City's decision to ignore this need until after Mullikin's arrest constituted a policy of deliberate indifference.

187. The City's failures were the moving force behind the violation of Mullikin's rights under the Fourth and Fourteenth Amendments, as a result of which Mullikin suffered physical injury and emotional distress and fears further retaliation should he engage in protected activity within the City's jurisdiction.

## PRAYER FOR RELIEF

WHEREFORE, Mullikin respectfully requests from this Court:

A. A declaratory judgment that Defendants' conduct complained of herein violated Mullikin's rights under the United States Constitution;

B. An injunction restraining Defendant City of Yuma from retaliating against Mullikin for his newsgathering or recording, interfering with Mullikin's newsgathering or recording without lawful basis, using excessive force against

Mullikin, seizing or arresting Mullikin without lawful basis, and maintaining the inadequate policies, supervision, and training practices complained of herein;

C. General and compensatory damages for Mullikin from Defendant City of Yuma for the violation of his rights under the United States Constitution, including but not limited to pain, suffering, emotional distress, and costs to be determined according to proof;

D. General, compensatory, and punitive damages for Mullikin from Defendant James Baisch for the violation of his rights under the United States Constitution, including but not limited to pain, suffering, emotional distress, and costs to be determined according to proof;.

E. An award of attorney's fees pursuant to 42 U.S.C. § 1988;

F. An award of costs as permitted by law;

G. Pre- and post-judgment interest as permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

DATED this 21st day of February, 2025.

/s/ Aaron Baumann
Gregg P. Leslie
Aaron A. Baumann
Aliza Lewis
Samuel Pritchett
Public Interest Law Firm
Sandra Day O'Connor College of Law
Arizona State University
*Attorneys for Plaintiff Lucas Mullikin*