Michele Molinario, Bar #020594
Derek R. Graffious, Bar #033486
Ashley E. Caballero-Daltrey, Bar #036449
Melynda M. Meyrick, Bar #039695
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1746
Fax: (602) 200-7831
mmolinario@jshfirm.com
dgraffious@jshfirm.com
adaltrey@jshfirm.com
mmeyrick@jshfirm.com

Attorneys for Defendants City of Yuma
and James Baisch

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Lucas Mullikin,<br><br>Plaintiff,<br><br>v.<br><br>City of Yuma; James Baisch, in his personal capacity,<br><br>Defendants. | No. 2:25-cv-00637-ROS-JZB<br><br>**DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendants City of Yuma and James Baisch submit the following statements of fact and exhibits in support of their Motion for Summary Judgment:

1. On May 16, 2023, Yuma Police Department ("YPD") received a report of a suspected trespasser. [Ex. 1, Declaration of Chief Thomas Garrity ¶ 2.]

2. Initially, YPD Officer Ryan Kinnell was the sole officer who responded to the call and attempted to approach the suspect who was on a public sidewalk of a busy street. [*See generally,* Ex. 2, Officer Kinnell Body-Worn Camera ("BWC") 1.]

3. The suspect physically hindered every attempt Officer Kinnell made to detain him, including using his body weight against Officer Kinnell, throwing himself on the ground, and grabbing onto a wrought iron fence. [*See, e.g.*, Ex. 2 Officer Kinnell BWC 1 at 00–01:00.]

4. The victim of the trespass was also present, standing off to the side. [*See, e.g.*, Ex. 3, Alissa Heap Dep. at 22:19–25; Ex. 5, Mullikin Dep. at 190:2–19.]

5. The incident occurred on a major roadway in Yuma. [Ex. 4, Officer James Baisch Dep. at 225:16–21.]

6. Plaintiff Lucas Mullikin and his girlfriend, non-party Alissa Heap, were staying in Yuma that night and drove by as Officer Kinnell was attempting to stop the suspect on foot. [*See generally*, Ex. 2, Officer Kinnell BWC 1; Ex. 5, Lucas Mullikin Dep. at 90:12–17, 93:22–94:11.]

7. Plaintiff testified that he saw a larger individual wrestling with a smaller individual and decided to stop. [Ex. 5, Mullikin Dep. at 93:22–95:2, 97:2–22.]

8. Plaintiff and Heap both began recording the incident and approached Officer Kinnell, who was still the sole officer on scene and struggling to apprehend the suspect. [*See generally*, Ex. 6, Mullikin Video, Ex. 7, Heap Video 1.]

9. Plaintiff immediately interjected himself into the scene and began peppering Officer Kinnell with numerous questions, e.g., why he was arresting the suspect and what his badge number was, all while Officer Kinnell was still struggling with the suspect. [Ex. 8, Officer Kinnell BWC 2 at 00:47–2:15; Ex. 1, Chief Garrity Decl. ¶ 8 (providing foundation); Ex. 5, Lucas Mullikin Dep. at 177:8–184:14.]

10. Through the interaction, Officer Kinnell nevertheless responded to his questions, even while he was trying to effectuate the detention of the actively resisting suspect. [Ex. 8, Officer Kinnell BWC 2 at 00:47–2:15; Ex. 5, Lucas Mullikin Dep. at 190:2–184:14, 190:2–19.]

11. During the active struggle between Officer Kinnell and the suspect, Plaintiff and Heap moved close to Officer Kinnell, who had to divert his attention to them and told them both to back up multiple times. [Ex. 8, Officer Kinnell BWC 2 at 1:31–1:59, 4:00–4:22.]

12. During the interaction, Heap backed up as she was directed. [*See, e.g.*, Ex. 8, Officer Kinnell BWC 2 at 4:00–4:22; *see also* Ex. 3, Heap Dep. at 28:23–29:2 (discussing distance from incident).]

13. Instead of backing up, Plaintiff stated multiple times that he was six feet away, indicating that he did not believe he needed to move. [Ex. 8, Officer Kinnell BWC 2 at 1:31–1:59.]

14. He refused to comply, backing up only tiny steps despite Officer Kinnell's repeated commands. [Ex. 8, Officer Kinnell BWC 2 at 1:31–1:59.]

15. Plaintiff moved closer to Officer Kinnell and continued to demand that he answer his questions, arguing with him about the law and the nature of the arrest. [Ex. 8, Officer Kinnell BWC 2 at 1:31–2:29.]

16. At the same time, Officer Kinnell attempted to get the suspect to his feet, while the suspect used his body weight against him, nearly pulling them both into the street. [Ex. 8, Officer Kinnell BWC 2 at 2:18–2:25.]

17. During the struggle, Plaintiff was so close that Officer Kinnell could have leaned forward and touched him. [Ex. 7, Heap Video 1 at 2:25–2:35; Ex. 3, Heap Dep. at 76:22–77:13. Ex. 5, Mullikin Dep. at 198:13–200:13 & Deposition Exhibit 3 (included here at the end of Ex. 5).]

18. Plaintiff identified himself as a journalist. [Ex. 8, Officer Kinnell BWC 2 at 02:35–02:37.]

19. Officer Kinnell had to go hands off with the suspect to deal with Plaintiff, and then he had to regain his hold on the suspect to pull him back off the ground. [Ex. 8, Officer Kinnell BWC 2 at 2:18–2:43.]

20. After a renewed struggle, including the suspect attempting to hook his leg around the wrought iron fence, Officer Kinnell was able to escort the suspect as far as the corner of the fence line. [Ex. 8, Officer Kinnell BWC 2 at 2:18–3:45.]

21. Officer Kinnell called for backup during this struggle and Plaintiff continued to ask him questions. [Ex. 8, Officer Kinnell BWC 2 at 2:18–3:45.]

22. Officer Kinnell's original call for backup indicated that it was urgent and that he was surrounded by people. [Ex. 4, Officer Baisch Dep. at 146:25–147:13, 152:21–154:15.]

23. Officer Baisch, who was with an officer in field training, responded. [Ex. 4, Officer Baisch Dep. at 146:25–147:12.]

24. Before Officer Baisch arrived, Officer Kinnell radioed that things were "Code 4" indicating that he had the situation under control. [Ex. 4, Officer Baisch Dep. at 146:25–147:12.]

25. Officer Baisch stopped responding. [Ex. 4, Officer Baisch Dep. at 146:25–147:12.]

26. However, a passerby then noticed the predicament that Officer Kinnell was facing and called 911 to report an officer was surrounded. [Ex. 4, Officer Baisch Dep. at 146:25–147:12, 155:2–10, 159:15–25.]

27. Learning this, Officer Baisch and the trainee resumed their response to Officer Kinnell's location, with lights and sirens. [Ex. 4, Officer Baisch Dep. at 146:25–147:12, 155:2–10, 159:15–25.]

28. Multiple officers arrived on scene for backup. [Ex. 4, Officer Baisch Dep. at 164:22–165:24; Ex. 9, Officer Baisch BWC at 1:30–1:41; Ex. 1, Chief Garrity Decl. ¶ 8 (providing foundation).]

29. When Officer Baisch arrived on scene, he observed three officers huddled around the suspect, who was on the ground and appeared to have wrapped himself around the iron fence to resist officer efforts to detain him. [Ex. 4, Officer Baisch Dep. at 147:13–17, 167:11–20, 175:9–24; Ex. 9, Officer Baisch BWC at 1:42-1:52.]

30. He noticed that Officer Kinnell and another officer were standing behind the suspect and a third officer was on the ground on the suspect's right, attempting to unhook the suspect's legs from around the fence. [Ex. 4, Officer Baisch Dep. at 167:11–20, 173:10–175:24.]

31. He intended to assist these officers by approaching the left side of Officer Kinnell and getting on the ground to work on unlatching the suspect's legs. [Ex. 4, Officer Baisch Dep. at 175:9–24; 314:11–25.]

32. As Officer Baisch got near, he observed Plaintiff standing very close to Officer Kinnell and the suspect, who was still not apprehended and fighting the officers' efforts to take him in. [Ex. 4, Officer Baisch BWC at 1:41–1:53; Ex. 4, Officer Baisch Dep. at 173:10–175:24, 314:11–25.]

33. To assist with detaining the suspect, Officer Baisch would also have to kneel on the ground, which would place him a mere couple feet in front of where Plaintiff stood. [Ex. 4, Officer Baisch Dep. at 167:11–20, 173:10–175:24, 314:11–315:7.]

34. Officer Baisch knew that kneeling a couple of feet in front of Plaintiff would put him within striking distance from Plaintiff and would place him in a tactical position of disadvantage. [Ex. 4, Officer Baisch Dep. at 167:11–20, 173:10–175:24, 314:11–315:7.]

35. Officer Baisch was concerned about everyone's safety, including Plaintiff's. [Ex. 4, Officer Baisch Dep. at 173:19–175:4.]

36. Accordingly, he twice ordered Plaintiff to get back. [Ex. 9, Officer Baisch BWC at 1:53–1:58; Ex. 4, Officer Baisch Dep. at 184:10-22.]

37. Plaintiff refused to comply with Officer Baisch's commands. [*See* Ex. 9, Officer Baisch BWC at 1:53–1:58; Ex. 4, Officer Baisch Dep. at 184:19–186:1.]

38. Instead, he told Officer Baisch twice, "its six feet." [*See* Ex. 9, Officer Baisch BWC at 1:53–1:58; Ex. 3, Heap Dep. at 87:17–21.]

39. During this interaction, Heap is heard telling Plaintiff that it was not six feet so that he would back up, but he did not. [Ex. 3, Heap Dep. at 86:18–87:11; Ex. 11, Heap Video 3 at 1:20–1:25.]

40. At this point, three officers were still unable to fully detain the resisting suspect, and Officer Baisch could not assist because Plaintiff refused to keep a reasonable distance from him. [Ex. 4, Officer Baisch Dep. at 167:11–20, 173:10–175:24, 314:11–25; Ex. 9, Officer Baisch BWC at 1:50-1:56; Ex. 11, Heap Video 3 at 0:00–1:25.]

41. Plaintiff refused to comply and Officer Baisch placed two hands on one of Plaintiff's arms and escorted Plaintiff back, which is the lowest level of force that an officer has besides his presence and verbal commands. [*See* Ex. 9, Officer Baisch BWC at 1:53–1:58; *see also* Ex. 4, Officer Baisch Dep. at 193:5–194:7 (discussing levels of force).]

42. Plaintiff pushed against Officer Baisch, and after a few feet backward, grabbed onto the fence so that Officer Baisch could not move him back. [*See* Ex. 9, Officer Baisch BWC at 1:53–1:58; Ex. 4, Officer Baisch Dep. at 200:6–201:20; *see also* Ex 10, Plf Resp. to RFAs; Ex. 11, Heap Video 3 at 1:24–1:30.]

43. Officer Baisch struggled to break Plaintiff's hold of the fence and then put his hand on Plaintiff's head to lower him to the ground because Plaintiff had resisted and refused to comply with lawful commands and the escort backwards. [Ex. 9, Officer Baisch BWC at 1:58–2:08; Ex. 4, Officer Baisch Dep. at 210:10–212:12, 214:13–22.]

44. Plaintiff pushed against Officer Baisch with his chest and leaned on him during the interaction. [Ex. 4, Officer Baisch Dep. at 200:6–201:20; Ex. 5, Mullikin Dep. at 236:2–4.]

45. After Officer Baisch put Plaintiff on the ground, he told him to "stay" there. [Ex. 9, Officer Baisch BWC at 1:58–2:08; Ex. 5, Mullikin Dep. at 238:16-24.]

46. Officer Baisch turned from Plaintiff and walked back to where the other YPD officers were still struggling with the suspect. [Ex. 9, Officer Baisch BWC at 1:58–2:08.]

47. Plaintiff again disregarded Officer Baisch's command, stood up, and headed straight for Officer Baisch from behind. [Ex. 9, Officer Baisch BWC at 1:58–2:08; Ex. 4, Officer Baisch Dep. at 219:6–221:16, 326:17–21; *see also* Ex. 5, Mullikin Dep. at 239:6-22, 241:5–242:21 & Deposition Exhibits 10–11 (attached here at the end of Ex. 5).]

48. Officer Baisch noticed from his peripheral that Plaintiff was approaching from behind him. [Ex. 4, Officer Baisch Dep. at 219:6–221:16.]

49. At that time, Officer Baisch decided to arrest Plaintiff because he had probable cause for failure to comply with lawful commands, and for assault for leaning and

pushing on him during the escort backwards. [*See also* Ex. 4, Officer Baisch Dep. at 219:6–221:16, 323:14–324:7, 332:20–333:11.]

50. Simultaneously, Plaintiff asked for Officer Baisch's name and badge number as he moved towards him. [Ex. 9, Officer Baisch BWC at 2:03–2:10; Ex. 4, Officer Baisch Dep. at 219:6–221:16; *see also* Ex. 5, Mullikin Dep. at 219:6–221:16; Ex. 6, Mullikin Video at 3:36-3:39.]

51. Officer Baisch does not remember hearing the question. [Ex. 4, Officer Baisch Dep. at 219:23–221:3.]

52. As Officer Baisch turned back toward Plaintiff, he told Plaintiff that he was under arrest for failure to comply. [Ex. 9, Officer Baisch BWC at 2:08–2:13.]

53. Plaintiff refused to give up his arms, and he pulled away and physically resisted while Officer Baisch attempted to get him into handcuffs. [Ex. 9, Officer Baisch BWC at 2:10–2:18; Ex. 4, Officer Baisch Dep. at 225:25–227:15.]

54. Instead, he kept physically resisting, and, in the ensuing struggle, Plaintiff ended up on the ground. [Ex. 9, Officer Baisch BWC 2:18–2:21; Ex. 4, Officer Baisch Dep. at 333:23–334:23.]

55. Plaintiff still attempted to get up multiple times after he was initially put on the ground. [Ex. 9, Officer Baisch BWC 2:18–2:27; Ex. 4, Officer Baisch Dep. at 333:23–334:23; Ex. 5, Mullikin Dep. at 246:14–247:20.]

56. Eventually, with the help of another officer, Officer Baisch was able to handcuff Plaintiff. [Ex. 9, Officer Baisch BWC at 2:18–2:50; Ex 4, Officer Baisch Dep. at 256:4–13, 333:23–336:19; Ex. 5, Mullikin Dep. at 250:13–251:15.]

57. It is undisputed that Officer Baisch did not deliver a leg sweep, kick, open palm or closed fist strike to any part of Plaintiff's body, slam his head on the ground, or deploy chemical spray or any electronic device such as a Taser. [*See generally* Ex. 9, Officer Baisch BWC at 01:39–2:50; *see also* Ex. 4, Officer Baisch Dep. at 340:5–19 (no use of head slam).]

58. Officer Baisch put Plaintiff's phone safely on the ground when Plaintiff requested that he do so. [Ex. 9, Officer Baisch BWC at 2:18–2:50; Ex. 5, Mullikin Dep. at 249:8–250:7; Ex. 4, Officer Baisch Dep. at 258:16–22.]

59. During the struggle, Officer Baisch was concerned that the incident could spill out onto the street and wanted to ensure that everyone was safe. [Ex. 4, Officer Baisch Dep. at 225:2–21, 337:4–338:4.]

60. Officer Baisch arrested Plaintiff for resisting arrest and refusing an officer command under Yuma City Code § 111-04. [*See* Ex. 5, Mullikin Dep. at 176:1–3.]

61. YPD officers routinely arrest for violations of Yuma City Code § 111-04 and resisting arrest. [*See*; Ex. 4, Officer Baisch Dep. at 299:25–300:13 (Baisch arrests for resisting arrest); Ex. 12, Chief Garrity Dep. at 192:17–193:15; Ex. 1, Chief Garrity Decl. ¶ 10.]

62. Plaintiff testified that the only injuries he sustained from the incident were scrapes on his knees and forehead as a result of the scuffle. [Ex. 5, Mullikin Dep. at 269:7–15 & Deposition Exhibits 12 and 13 (included in Ex. 5).]

63. He was not limping the night of the incident. [Ex. 3, Heap Dep. at 48:4–8.]

64. Plaintiff did not request medical attention at the scene. [*See* Ex. 4, Officer Baisch Dep. at 339:2–11; Ex. 5, Mullikin Dep. at 268:23–269:18.]

65. He never sought medical attention of any kind for injuries arising from the arrest. [Ex. 5, Mullikin Dep. at 268:23–269:18.]

66. Plaintiff testified that the scrapes all occurred in the second half of the incident, when Officer Baisch attempted to place him in handcuffs and effectuate the arrest. [Ex. 5, Mullikin Dep. at 276:2–277:5.]

67. Plaintiff did not know any of the Officers prior to the date. [Ex. 5, Mullikin Dep. at 92:24–93:3.]

68. Heap was not arrested. [Ex. 5, Mullikin Dep. at 171:12–15; Ex. 12, Chief Garrity Dep. at 192:8–15.]

69. She testified that she stayed far away from the officers so she would not obstruct the arrest. [Ex. 3, Heap Dep. at 75:4–13, 108:2–9.]

70. Another witness was also present on the scene, and he was not arrested because he stayed away from officers like Heap. [*See, e.g.*, Ex. 9, Officer Baisch BWC at 2:57-3:03; *see also* Ex. 3, Heap Dep. at 79:24–80:14.]

71. Officer Baisch would not have ultimately arrested Plaintiff if not for the fact that Plaintiff got back up off the ground after he was told to stay there and he began interfering again. [Ex. 4, Officer Baisch Dep. at 341:22–342:1.]

72. Officer Baisch was not aware that Plaintiff was a journalist, but that would not have changed anything about the incident, because Plaintiff had still committed a crime. [Ex. 4, Officer Baisch Dep. at 342:3–16.]

73. Officer Baisch had experience with citizens filming police prior to this incident and has never arrested anyone who was filming prior to Plaintiff. [Ex. 4, Officer Baisch Dep. at 301:13–18.]

74. The City maintains policies and trains on use of force. [Ex. 12, Chief Garrity Dep. at 74:9–82:24; Ex 1, Chief Garrity Decl. ¶ 5 & Ex. B; Ex. 13, Sgt. Nathan Dusek Decl. ¶¶ 6–9, 18 & Ex. C (Officer Baisch training records).]

75. At the time of the incident, it also maintained a Media Relations Policy 1.12, which informed officers that members of the media are permitted to record officer's conduct. [Ex. 1, Chief Garrity Decl. ¶ 5 & Ex. A]

76. It specifically created training for personnel who interact with the media and dictates that at crime scenes, news media representatives may be present and "agency personnel shall ensure that members of the media respect the established perimeter;" however, "[m]edia staff has no greater or lesser access to an incident scene than members of the general public." [Ex. 1, Chief Garrity Decl. ¶ 5 & Ex. A]

77. Under the policy, an officer shall not prohibit the media from news gathering practices, including photography, outside of an established perimeter. [Ex. 1, Chief Garrity Decl. ¶ 5 & Ex. A.]

78. The City also maintained a directive regarding filming and the First Amendment. [Ex. 12, Chief Garrity Dep. at 12:18–15:2, 23:23–24:3; Ex. 1, Chief Garrity Decl. ¶ 5 & Ex. E.]

79. That directive had the same force as policy, and Officer Baisch, as well as all other YPD officers, was required to acknowledge it. [Ex. 12, Chief Garrity Dep. at 14:10–15:2; Ex. 4, Officer Baisch Dep. at 303:8–14.]

80. The directive comprehensively explains how an officer should approach a situation with an individual filming an incident, including considerations regarding approaching that person, and it explicitly tells officers that "[c]itizens have a right to utilize a camera or recording device to document the police encounter." [Ex. 1, Chief Garrity Decl. ¶ 5 & Ex. E *see also* Ex. 12, Chief Garrity Dep. at 25:20–26:5, 43:11–47:20.]

81. Officers are trained on the First Amendment through their AZPOST training and in City of Yuma trainings. [*See* Ex. 12, Chief Garrity Dep. at 59:13–20, 195:15–197:1; Ex. 4, Officer Baisch Dep. at 310:10–311:21 (discussing training); *see generally* Ex. 13, Sgt. Dusek Decl.]

82. For example, they undergo legal training throughout the 20 weeks of the academy which builds their constitutional understanding and foundation. [Ex. 12, Chief Garrity Dep. at 59:13–20.]

83. Then, in field officer training, officers receive more education, including a minimum of 12 hours of additional training a year. [Ex. 12, Chief Garrity Dep. at 195:15–197:1.]

84. YPD offers approximately eight times more training than the 12-hour minimum. [Ex. 12, Chief Garrity Dep. at 195:15–197:1.]

85. Officer Baisch testified that they have "trainings and briefings where the sergeants would advise [officers] on what [they're] expected to do when dealing with people filming." [Ex. 4, Officer Baisch Dep. at 310:19–311:10; *see also* Ex. 13, Sgt Dusek Decl. ¶¶ 14–16.]

86. Importantly, Plaintiff's own expert conceded that the training Officer Baisch received exceeded minimum standards, and that AZPOST training is "excellent." [Ex. 14, Clark Op. at 23–24.]

87. Officer Baisch never received any discipline on any relevant uses of force, nor had he ever been disciplined in a case involving a First Amendment activity. [*See, e.g.*, Ex. 4 Officer Baisch Dep. at 105:14–17; Ex. 1, Chief Garrity Decl. ¶ 12.]

88. Officer Baisch's actions in this case were found to be within policy. [Ex. 1, Chief Garrity Dep. at 177:11–22, 180:3–181:10.]

89. After the incident, the YPD put out a video sharing the body-worn camera and Chief Garrity explained the incident to be transparent with the community. [Ex. 1, Chief Garrity Decl. ¶ 9 & Ex. H.]

DATED this 27th day of March, 2026.

JONES, SKELTON & HOCHULI, P.L.C.

By */s/ Michele Molinario*

Michele Molinario
Derek R. Graffious
Ashley E. Caballero-Daltrey
Melynda M. Meyrick
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Defendants City of Yuma and James Baisch

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of March, 2026, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

Gregg P. Leslie, Esq.
Aaron A. Baumann, Esq.
ASU Sandra Day O'Connor College of Law
First Amendment Clinic, Public Interest Law Firm
111 E. Taylor Street, Mail Code 8820
Phoenix, AZ 85004
Gregg.Leslie@asu.edu
Aaron.Baumann@asu.edu
*Attorneys for Plaintiff Lucas Mullikin*

*/s/ Crystal Wong*