**ASU Sandra Day O'Connor College of Law**
**First Amendment Clinic, Public Interest Law Firm**
Gregg P. Leslie, Gregg.Leslie@asu.edu,* (AZ Bar # 035040)
Adelyn Ascherl, arascher@asu.edu**
Justin Dutrisac, jdutrisa@asu.edu**
Justin Smith Chiago, jsmithch@asu.edu**
First Amendment Clinic, Public Interest Law Firm
Arizona State University Sandra Day O'Connor College of Law
111 E. Taylor St., Mail Code: 8820
Phoenix, AZ 85004
(480) 727-7398
* Supervising attorney pursuant to Ariz. R. Sup. Ct. 39(c)
** Certified limited practice student pursuant to Ariz. R. Sup. Ct. 39(c)
*Attorneys for Plaintiff Lucas Mullikin*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| LUCAS MULLIKIN,<br>Plaintiff,<br><br>v.<br><br>CITY OF YUMA,<br>JAMES BAISCH, in his personal capacity<br>Defendants. | No. 2:25-cv-00637-ROS-JZB<br><br>**MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** |

Plaintiff Lucas Mullikin, pursuant to Rule 56.4, hereby submits this memorandum in support of his *Motion for Partial Summary Judgment* on his claims of (1) violation of the First and Fourteenth Amendments under 42 U.S.C. § 1983 (Interference with speech and news gathering) (Against Defendant James Baisch in his personal capacity); (2) Violation of the First and Fourteenth Amendments under 42 U.S.C. § 1983 (Retaliation) (Against Defendant James Baisch in his personal capacity); (3) Violation of First and Fourteenth Amendments under 42 U.S.C. § 1983 (Liability under *Monell*) (Against

Defendant City of Yuma); (4) Violation of Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 (Unlawful and excessive force) (Against Defendant James Baisch in his personal capacity); and (6) Violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 (Wrongful Arrest) (Against Defendant James Baisch in his personal capacity). Plaintiff hereby requests dismissal of these claims.

## MEMORANDUM IN SUPPORT

### I. CLAIM 1: Defendant James Baisch violated Plaintiff's First and Fourteenth Amendment rights by interfering with Plaintiff's speech and news gathering.

#### A. Plaintiff was engaged in a constitutionally protected activity

The undisputed record establishes that Plaintiff was engaging in the constitutionally protected newsgathering activity at the time of his encounter with Officer Baisch. Recording law enforcement officials carrying out their public duties is protected under the First Amendment. *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (recording police is a matter of public interest); *see Project Veritas v. Schmidt*, 125 F.4th 929, 945, 959 (9th Cir. 2025) (recording conversations is protected by the First Amendment). The First Amendment is applicable to states through the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 669-670 (1925).

The undisputed record demonstrates that Defendant knew the Plaintiff was recording the interaction between officers and Mr. Bermudez prior to his arrest. Baisch testified that he knew Plaintiff was recording at the scene, stating "he had his phone held lower like he was almost trying to hide the fact that he was recording." SOF ¶ 21.

Baisch's testimony establishes his awareness of Plaintiff recording law

enforcement from the time he arrived on scene until the arrest. Plaintiff's action—recording of police officers—is constitutionally protected under the First Amendment. *Fordyce*, 55 F.3d at 439. There is no genuine dispute that Plaintiff was exercising his First Amendment right to record law enforcement, or that Officer Baisch was aware of this activity at the time of Plaintiff's arrest.

**B. Baisch's actions restricted Plaintiff's ability to exercise his First Amendment rights.**

When an individual is engaged in a constitutionally protected newsgathering, government action that restricts, burdens, or interferes with the ability to exercise that right without sufficient justification constitutes a First Amendment violation. *Fordyce*, 55 F.3d at 439; *see Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011).

Despite knowing Plaintiff was recording, Officer Baisch engaged in a series of escalating actions that restricted and ultimately eliminated Plaintiff's ability to record.

First, Plaintiff was standing approximately six feet from the arrest and was separated from the officers by a 90-degree turn in the fence. SOF ¶¶ 14, 19. Approximately one and a half seconds after arriving on scene, Baisch commanded Plaintiff to "get back." SOF ¶ 23. Plaintiff responded, "six feet," which Baisch did not interpret as disobedience. SOF ¶ 23. About one second later, before Plaintiff had a reasonable opportunity to comply, Baisch forcefully pushed him away. SOF ¶¶ 26, 30. Baisch later acknowledged Plaintiff needed time to comply and that he could not immediately shove him, yet he did so after only one second. SOF ¶¶ 28–29.

After pushing Plaintiff backward, Baisch grabbed Plaintiff's head and forced him

to the ground, then ordered him to "stay there." SOF ¶¶ 35, 37. By doing so, Baisch directly restricted Plaintiff's ability to record the officers' encounter with Bermudez.

Second, after Plaintiff stood up and requested Baisch's badge number, Baisch informed Plaintiff he was under arrest. SOF ¶¶ 38-40. The entire encounter, from Baisch's arrival to the announcement of arrest, lasted approximately nineteen seconds. SOF ¶ 41. Baisch then forced Plaintiff to the ground a second time. SOF ¶ 44. Plaintiff's recording of the encounter ended at the time of arrest. SOF ¶¶ 39-40. During the arrest, Baisch removed Plaintiff's phone from his hand, eliminating any remaining possibility of continued recording. SOF ¶¶ 45–49.

In sum, Baisch's actions—pushing Plaintiff, forcing him to the ground, arresting him, and seizing his phone—eliminated Plaintiff's right to record law enforcement. But for Baisch's actions, Plaintiff would have continued recording the ongoing arrest. SOF ¶¶ 2, 8, 11–12, 17. No intervening cause ended the recording. The undisputed record shows Plaintiff was engaged in protected newsgathering, Baisch was aware of it, and his actions directly caused its cessation. There is no dispute of material fact and Plaintiff is therefore entitled to summary judgment on his interference with speech and newsgathering claim.

## II. **CLAIM 2: Defendant James Baisch violated Plaintiff's First and Fourteenth Amendment rights by initiating a retaliatory arrest against Plaintiff due to Plaintiff's exercise of his First Amendment rights.**

The undisputed factual record demonstrates that Defendant retaliated against Plaintiff for exercising his First Amendment rights. To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show: (1) he was engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of

ordinary firmness from continuing to engage in that activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *Ford v. City of Yakima*, 706 F.3d 1188, 1193–94 (9th Cir. 2013); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). When the retaliatory action is an arrest, the plaintiff must further demonstrate the absence of probable cause. *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). The First Amendment applies to the states through the Fourteenth Amendment. *Gitlow*, 268 U.S. at 666.

**A. Plaintiff was engaged in the constitutionally protected activity of speech and newsgathering.**

As established in Section I above, Plaintiff was engaged in the constitutionally protected activity of recording law enforcement performing public duties on a public street. SOF ¶¶ 2, 8. In addition to recording, Plaintiff requested Baisch's badge number, exercising his speech and petition rights under the First Amendment. SOF ¶ 38.

**B. Defendants' arrest of Plaintiff would chill a person of ordinary firmness from continuing to exercise their right to record law enforcement.**

Baisch's actions would chill a person of ordinary firmness from continuing to exercise First Amendment rights. An arrest is among the most severe actions that can be taken against a person exercising those rights. *Fordyce*, 55 F.3d at 439 (9th Cir. 1995); *see Hoyland v. McMenomy*, 869 F.3d 644, 656–57 (8th Cir. 2017). Here, Defendant's adverse actions culminated in Plaintiff's arrest. SOF ¶¶ 40, 42. Because Plaintiff was separated from officers behind a 90-degree turn in the fence, posing no threat to officer safety or operations, SOF ¶¶ 14, 17, 20, a reasonable person facing such a

disproportionate response would unquestionably be deterred from exercising the right to record law enforcement in the future.

**C. Plaintiff's recording of officers was a motivating factor in the arrest.**

The undisputed record shows that Plaintiff's protected First Amendment activity—recording law enforcement and requesting badge numbers—was a substantial motivating factor behind Baisch's decision to arrest him.

First, Plaintiff's conduct prior to arrest was peaceful and non-disruptive. Plaintiff was recording the encounter between officers and Bermudez. SOF ¶¶ 2, 8. He was unarmed, cooperated with Officer Kinnell's commands multiple times, and at no point actively interfered with officers' duties. SOF ¶¶ 5, 11, 16. After officers placed Bermudez around the corner and backup arrived, no officer addressed Plaintiff or indicated concern about his presence. SOF ¶¶ 14, 18.

Second, Baisch's actions immediately upon arrival demonstrate a retaliatory motive. No officer communicated to Baisch that Plaintiff was disruptive or posed a concern. SOF ¶ 18. Nevertheless, Baisch immediately stepped between Plaintiff and the officers, observed Plaintiff recording, issued a command, and—before Plaintiff had the opportunity to comply—began pushing him away from the scene and forcing him to the ground. SOF ¶¶ 17, 19, 23, 26, 30, 35. Baisch's rapid escalation to physical force against a peaceful, non-disruptive individual who was visibly recording strongly suggests that the recording itself motivated his actions.

Third, the arrest was triggered by Plaintiff's request for Baisch's badge number. After forcing Plaintiff to the ground and ordering him to stay in place, Baisch began

walking away. SOF ¶ 37. Plaintiff, while continuing to record, stood up and asked for Baisch's badge number. SOF ¶ 38. This request prompted Baisch to immediately turn and announce that Plaintiff was under arrest. SOF ¶ 40. The temporal proximity between Plaintiff's exercise of his First Amendment rights and the arrest is compelling evidence of retaliatory motive. *See Ford*, 706 F.3d at 1193–94.

Baisch's claim that Plaintiff failed to comply with a lawful command is equally unavailing. After forcing Plaintiff to the ground, Baisch told him to "stay there" and began walking away. SOF ¶ 37. This command was ambiguous, it gave no direction whether Plaintiff was to remain on the ground, stay in the general area, or something else entirely. When Plaintiff stood up and asked for Baisch's badge number, he had no reasonable basis to believe he was violating the scope of the command. SOF ¶ 38.

Baisch's conduct reveals the arrest was prompted not by any failure to comply but by Plaintiff's request for his badge number. Bodycam footage demonstrates that Baisch announced the arrest within one second of turning toward Plaintiff. SOF ¶ 40. Baisch admitted he was unable to ascertain how or whether Plaintiff had stood up. SOF ¶ 39. Exercising First Amendment rights—recording police, asking questions, and requesting an officer's identifying information—does not constitute a disruption. *Poocha*, 259 F.3d at 1081. Baisch's stated justifications are pretextual, underscoring that Plaintiff's protected activity, not legitimate law enforcement concern, motivated the arrest.

In sum, the undisputed evidence establishes that Plaintiff's protected activity was a substantial or motivating factor in Baisch's decision to arrest him. Plaintiff's conduct was peaceful and non-disruptive, Baisch immediately resorted to physical force upon

observing Plaintiff recording, and the arrest was triggered directly by Plaintiff's request for Baisch's badge number. No genuine dispute of material fact exists on this element.

**D. The arrest lacked probable cause.**

Baisch's arrest of Plaintiff was not supported by probable cause. Probable cause exists when, under the totality of the circumstances, there is a fair probability of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 230–32 (1983); *Whren v. United States*, 517 U.S. 806, 813 (1996); *see Atwater v. City of Lago Vista*, 532 U.S. 318, 323 (2001); *see United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004). The standard is objective: whether a reasonable officer in Baisch's position would have concluded probable cause existed at the time of arrest. *Whren*, 517 U.S. at 813; *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

Baisch contends Plaintiff was arrested for failure to obey a lawful command. SOF ¶¶ 42, 52. Under the totality of the circumstances, no reasonable officer would have concluded there was a fair probability that Plaintiff had committed this offense.

**i. Circumstances up to and after the "back up" command.**

When Baisch arrived on scene, no officer indicated that Plaintiff was disruptive or posed any concern. SOF ¶ 18. Plaintiff was standing approximately six feet from the officers, separated by a 90-degree turn in the fence, unarmed, and had complied with Kinnell's commands multiple times. SOF ¶¶ 5, 11, 14, 16, 20. When Baisch commanded Plaintiff to back up, Plaintiff began stepping away and responded that he was "six feet." SOF ¶¶ 19, 23. Approximately two seconds later—before Plaintiff could fully comply—Baisch resorted to physical force, pushing Plaintiff back and forcing him to the ground.

SOF ¶¶ 26, 30, 35. Plaintiff grabbed the fence to stabilize himself in response to the force, not an act of resistance. SOF ¶ 33. Under these circumstances, no reasonable officer would have concluded that a crime was being committed. Plaintiff was in the process of complying with Baisch's command when force was applied.

**ii. Circumstances after the "stay there" command.**

After forcing Plaintiff to the ground and ordering him to "stay there," Baisch turned and began walking away. SOF ¶ 37. Plaintiff stood up without moving closer to officers and requested Baisch's badge number. SOF ¶ 38. Baisch had been turned back toward Plaintiff for less than one second before announcing the arrest. SOF ¶ 40.

No reasonable officer would have concluded that these circumstances gave rise to probable cause. The "stay there" command was ambiguous, and Plaintiff's standing up without approaching officers was a reasonable interpretation. SOF ¶¶ 37, 39. Baisch announced the arrest just seconds later, with his back turned for most of that time, observing Plaintiff for less than a second. SOF ¶¶ 37–40. The arrest was thus not based on noncompliance but on Plaintiff's request for Baisch's badge number.

The totality of the circumstances reveals a nineteen-second encounter—from arrival to announcement of arrest—involving a Plaintiff who was unarmed, compliant, separated by a fence, never identified as disruptive by other officers, and arrested immediately after requesting a badge number. SOF ¶ 41.

## III. CLAIM 3: Defendant City of Yuma violated Plaintiff's First and Fourteenth Amendment rights under *Monell* by failing to train and supervise officers regarding First Amendment activity.

As a matter of undisputed fact and law, Defendant City of Yuma is liable under 42

U.S.C. § 1983 because its failure to train and supervise officers regarding First Amendment activity, combined with its lack of policy governing interactions with individuals recording police, constituted deliberate indifference and was the moving force behind the violation of Plaintiff's rights.

Although a municipality cannot be held liable under a theory of *respondeat superior*, it becomes liable under § 1983 when its policy, custom, deliberate indifference, or failure to train causes a constitutional violation. *Monell*, 436 U.S.658, 691(1978); *City of Canton*, 489 U.S. at 388 (1989). The need for training was obvious. The Ninth Circuit has long recognized a First Amendment right to record police activity, making such encounters plainly foreseeable. *Fordyce*, 55 F.3d at 439. But the City lacked any meaningful policy in place at the time of Plaintiff's arrest governing how officers should interact with individuals recording or questioning police. Chief Garrity testified that, prior to 2023, the Department operated only under a directive—not a formal policy—and that a formal policy was implemented only after the incident. SOF ¶ 54, 56. Critically, that directive failed to provide guidance on core issues, including what constitutes "interference," how close an individual may stand to a police encounter, and under what circumstances officers may order an individual to move or remove a person recording police activity. SOF ¶ 55, 56. As Chief Garrity admitted, the directive "does not" define interference, does not explain permissible distance, and does not describe when officers may direct individuals filming to step away or be removed. *Id.* The inadequate presence of procedures in a recurring situation supports a finding of deliberate indifference. *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). Where officers are left without guidance

in predictable encounters, the resulting constitutional violations are a "highly predictable consequence" of that failure. *Connick v. Thompson, 563 U.S. 51, 63–64 (2011).*

The City is also liable under a ratification theory. A municipality may be liable where "an authorized policymaker approves a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). The policymaker must have knowledge of the constitutional violation and actually approve of it. *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

Here, Chief Garrity reviewed video of the incident and publicly stated that no officer acted improperly, and that Officer Baisch's conduct was lawful. SOF ¶ 59. He further endorsed the specific basis for the arrest, confirming that the command to "stay there" was a lawful and justified arrest. *Id*. This constitutes approval of both the conduct and its underlying reasoning. *See Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

Further, the City's ratification of the unconstitutional conduct is confirmed through sworn testimony of Chief Garrity, who testified that, after reviewing the incident and the internal investigation, "the force appears reasonable and within policy." SOF ¶ 60. The internal review likewise determined that "no unreasonable tactics or techniques were used" and that the officers' actions were "within policy and training." *Id*. This continued endorsement, made under oath and after full review of the incident, constitutes approval of both the officers' conduct and the basis for their actions, satisfying the *Monell* ratification standard. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

Finally, the City's failures were the moving force behind the violation. *Monell*, 436 U.S. at 694. The absence of training and policy governing First Amendment activity

left officers unequipped to handle a routine and foreseeable situation, resulting in the unlawful interference with Plaintiff's newsgathering and his arrest. Where, as here, a municipality's deliberate indifference directly causes a constitutional violation, liability attaches as a matter of law.

## IV. CLAIM 4: Defendant James Baisch violated Plaintiff's Fourth and Fourteenth Amendment rights by his use of unlawful and excessive force.

Defendant Baisch's immediate use of physical force only one second after telling Plaintiff to "get back" was excessively and objectively unreasonable under the circumstances. SOF ¶¶ 23, 26, 30. Plaintiff is accordingly entitled to summary judgment on his Fourth and Fourteenth Amendment claim.

Police officers violate the Fourth Amendment when using force that is not "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The determination of "reasonableness" of the force at issue requires balancing (1) the nature and quality of the intrusion on an individual's liberty with (2) the countervailing government interests at stake. *Smith v. City of Hemet,* 394 F.3d 689, 701 (9th Cir. 2005).

Here, it is undisputed that Defendant Baisch instantly met Plaintiff with force only one second after his command that Plaintiff "get back." SOF ¶¶ 23, 26, 30. Baisch further testified that he believed he had given Plaintiff enough time to comply with his command. SOF ¶ 31. Baisch's proffered reason for using the amount of force he did was that Plaintiff was "not going to comply." SOF ¶ 32. Baisch's proffered reason that Plaintiff was "not going to comply" was that Plaintiff hadn't moved in the singular

second after Baisch's command. *Id*. As a matter of law, no reasonable officer under similar circumstances would have acted this way, as it is objectively unreasonable to believe that Plaintiff posed an immediate threat by exercising his First Amendment right of newsgathering and by failing to "comply" within one second.

### A. YPD's interest in preventing a potential threat did not justify Defendant Baisch's excessive use of force against Plaintiff.

Defendant Baisch's asserted interest in using such force in the first place was that "if something happens with [Mr. Bermudez], [Plaintiff is] going to be right there." SOF ¶ 25. In light of the undisputed facts, these asserted interests, as a matter of law, do not justify the type and amount of force that Defendant Baisch employed against Plaintiff, which, in turn, intruded on Plaintiff's liberty.

The factors in assessing the government's interests at stake include: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396; *see also Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). However, these factors are not exclusive; "we examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham.*" *Mattos* at 441, (quoting *Bryan v. MacPherson,* 630 F.3d 805, 826 (9th Cir. 2010)) (internal quotation marks omitted). The most important factor is whether the suspect posed an immediate threat to the safety of the officers or others. *See id.*

#### i. The alleged crime at issue was not severe enough to warrant Baisch's level of force.

Defendant Baisch charged Plaintiff with Yuma Code of Ordinances § 111-04 Obedience to Officers and A.R.S. § 13-2508(A)(3) Resisting Arrest-Passive Resistance. SOF ¶ 52. Baisch used force within one second, not allowing Plaintiff to comply with his commands. SOF ¶¶ 23, 26, 30. At this moment, Plaintiff had not committed any crime; it is objectively unreasonable for Baisch to have used such force before Plaintiff even engaged in the alleged criminal activity of disobeying an officer's lawful commands.

**ii. Plaintiff did not pose an immediate threat.**

Upon Baisch's arrival at the scene, there was no reason to believe that Plaintiff posed an immediate threat. When considering whether the suspect posed an immediate threat, a "simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford,* 272 F.3d 1272, 1281 (9th Cir. 2001).

Here, Plaintiff was standing approximately 6 feet away from the arrest and separated by a 90-degree physical barrier when Baisch arrived at the scene and positioned himself between the ongoing arrest and Plaintiff. SOF ¶¶ 14, 20. Baisch's proffered reason for insisting that Plaintiff back up is "if something happens with [Mr. Bermudez], [Plaintiff is] going to be right there." SOF ¶ 25. However, Baisch himself noted that his immediate perception of Plaintiff's behavior was that "he was acting like nothing was going on," "he had his phone held lower like he was almost trying to hide the fact that he was recording," and he "did not know" whether Plaintiff appeared to be a threat as he arrived on the scene. SOF ¶¶ 21-22. This undermines Baisch's statements that he

subjectively viewed Plaintiff as posing a potential danger. SOF ¶ 25. Rather, it illuminates that he immediately noticed Plaintiff's exercise of his First Amendment right to record police. Furthermore, immediately after Baisch placed himself between the arrest and Plaintiff, Plaintiff did, in fact, take a step backward, creating further distance from the arrest and Baisch. SOF ¶ 19.

The interest in quickly resolving a potentially dangerous situation is insufficient to justify the use of force that Baisch employed; there must be other significant circumstances warranting such behavior. *Deorle v. Rutherford,* 272 F.3d 1272, 1281 (9th Cir. 2001). This potential for danger, combined with the fact that Plaintiff was "not going to comply," was the only justification Baisch had. SOF ¶¶ 25, 32, 53.

**iii. Plaintiff was not actively resisting arrest, nor attempting to evade arrest by flight.**

At no point during the incident did Plaintiff actively resist arrest, nor did he attempt to evade arrest by flight; this is certainly undisputed when Baisch met Plaintiff with physical force only one second after commanding him to "get back." SOF ¶¶ 23, 26. At that point, Plaintiff had not been arrested and thus could not actively resist or attempt to evade arrest.

Baisch's asserted interest in elevating his use of force was that Plaintiff grabbed onto the fence after being pushed backwards. SOF ¶¶ 33-34. However, Plaintiff did so to maintain his balance after the onslaught of force from Baisch. SOF ¶ 33. At no point did Plaintiff actively resist arrest; rather, he merely expressed verbal objections to the force and adjusted his body to avoid hurting himself while complying with Baisch's

commands. *Id*. In light of the undisputed facts, these asserted interests, as a matter of law, do not justify the type and amount of force that Baisch used against Plaintiff.

### B. It is undisputed that Defendant Baisch did not consider alternative means to address this asserted governmental interest.

In analyzing the reasonableness of force, courts may consider the "availability of alternative methods in capturing or subduing a suspect." *Smith v. City of Hemet,* 394 F.3d 689, 701 (9th Cir. 2005). If an officer fails to give a suspect sufficient warnings and alternative tactics were available, such determinations weigh in favor of a finding of excessive force. *Nelson v. City of Davis*, 685 F.3d 867, 883 (9th Cir. 2012).

Here, Baisch did not consider alternative means to address his asserted interest. Baisch acknowledged during testimony that there were alternative actions he could have taken rather than simply telling Plaintiff to "get back," and yet he did not take these actions. SOF ¶ 28. Further, Baisch did not give Plaintiff time to comply with his command, as Baisch began using force one second after telling Plaintiff to "get back." SOF ¶¶ 23, 26. The fact that Baisch chose such force without considering alternative methods illuminates the excessive nature of his conduct.

## V. <u>CLAIM 6: Defendant James Baisch violated Plaintiff's Fourth and Fourteenth Amendment rights by initiating a wrongful arrest.</u>

Once Plaintiff stood up from his position on the ground and asked for Baisch's badge number, Baisch instantly turned while telling Plaintiff he was under arrest. SOF ¶¶ 38-40. *See supra* Section II(D)(ii).

### A. Baisch lacked probable cause to arrest Plaintiff.

Baisch lacked probable cause to arrest Plaintiff as Plaintiff did not impede officers

in the exercise of their lawful duties, nor did he resist arrest. *See supra* Section II(D).

**1. Plaintiff did not impede Baisch in the exercise of his *lawful* duties.**

As established above, Baisch's command was ambiguous, and Baisch had no reasonable basis to believe Plaintiff was violating his command. *See supra* Section II(C).

**2. Plaintiff did not resist arrest.**

As established above, Plaintiff did not resist arrest but rather expressed verbal disagreement and adjusted his body to avoid being injured. *See supra* Section IV(A)(iii).

**VI. Qualified immunity should not apply to any of the above-mentioned claims, as the unlawfulness of his conduct was clearly established.**

Qualified immunity does not apply because Defendant violated clearly established rights to record police and request identifying information without retaliation, and to be free from excessive force and arrest without probable cause. *See Fordyce*, 55 F.3d at 439; *Graham*, 490 U.S. at 386; *Deorle*, 272 F.3d at 1272.

**CONCLUSION**

For the forgoing reasons, Plaintiff Lucas Mullikin respectfully requests this Court grant them summary judgment on Plaintiff's claims.

DATED this 27th day of March, 2026.

Respectfully submitted,

/s/ Gregg Leslie
Gregg P. Leslie
Adelyn Ascherl
Justin Dutrisac
Justin Smith Chiago
ASU Sandra Day O'Connor College of Law
First Amendment Clinic, Public Interest Law Firm
*Attorneys for Plaintiff Lucas Mullikin*