**ASU Sandra Day O'Connor College of Law**
**First Amendment Clinic, Public Interest Law Firm**
Gregg P. Leslie, Gregg.Leslie@asu.edu,* [AZ Bar # 035040]
Adelyn Ascherl, arascher@asu.edu**
Justin Dutrisac, jdutrisa@asu.edu**
Justin Smith Chiago, jsmithch@asu.edu**
First Amendment Clinic
Public Interest Law Firm
Sandra Day O'Connor College of Law
Arizona State University
111 E. Taylor St., Mail Code: 8820
Phoenix, AZ 85004
[480] 727-7398
* Supervising attorney pursuant to Ariz. R. Sup. Ct. 39[c]
** Certified limited practice student pursuant to Ariz. R. Sup. Ct. 39[c]
*Attorneys for Plaintiff Lucas Mullikin*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| LUCAS MULLIKIN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF YUMA,<br>JAMES BAISCH, in his personal capacity<br><br>Defendants. | No. 2:25-cv-00637-ROS-JZB<br><br>**STATEMENT OF FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff Lucas Mullikin, pursuant to LRCiv 56.1, hereby submits this statement of facts in support of his *Motion for Partial Summary Judgment* on his claims of (1) violation of the First and Fourteenth Amendments under 42 U.S.C. § 1983 "(Interference with speech and news gathering) (Against Defendant James Baisch in his personal

capacity); (2) Violation of the First and Fourteenth Amendments under 42 U.S.C. § 1983 (Retaliation) (Against Defendant James Baisch in his personal capacity); (3) Violation of First and Fourteenth Amendments under 42 U.S.C. § 1983 (Liability under *Monell*) (Against Defendant City of Yuma); (4) Violation of Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 (Unlawful and excessive force) (Against Defendant James Baisch in his personal capacity); and (6) Violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 (Wrongful Arrest) (Against Defendant James Baisch in his personal capacity).

## STATEMENT OF FACTS

1. On May 16, 2023, at approximately 8:15 P.M., Officer Kinnell ("Kinnell") was detaining Mr. Bermudez ("Bermudez"). [**Ex. 1**, Kinnell Bodycam at 00:30, 01:05].

2. Plaintiff arrived shortly after and began recording the encounter. [*Id.* at 01:30].

3. Upon arrival, Plaintiff requested Kinnell's badge number, which Kinnell provided. [*Id.*]

4. Kinnell then commanded Plaintiff to back up several times, claiming Plaintiff was interfering with his investigation. [*Id.* at 01:33-01:45].

5. Plaintiff responded that he was standing six feet away and that Kinnell "knows the law." [*Id.* at 01:40].

6. Later testimony from the Plaintiff revealed that his understanding of six feet being the law was based on the Arizona Supreme Court overturning a law codifying an 8 feet boundary for individuals to record during officer detention, and that without it,

he expected officers to expect 6 feet of space. [**Ex. 2**, Mullikin Dep. Tr. at 148-49:20-5].

7. Throughout this exchange, a third individual stood approximately 2-3 feet to Plaintiff's side, in closer proximity to Kinnell, yet was not commanded to move. [**Ex. 1**, Kinnell Bodycam at 02:00; **Ex. 2**, Mullikin Dep. Tr. at 121:3-9].

8. Plaintiff continued to exercise his First Amendment rights by inquiring about the nature of Bermudez's detention, asking what Bermudez had done wrong, why he was being arrested, and again requesting Kinnell's badge number. [**Ex. 3**, Mullikin Recording at 00:02-00:30].

9. Kinnell then attempted to move Bermudez away from their current position; Bermudez wrestled with Kinnell and fell back closer to Plaintiff—an event caused by Bermudez's resistance, not by any action of Plaintiff. [**Ex. 4**, Heap recording #1 at 00:01-00:05].

10. Kinnell commanded Plaintiff to "back up right now, go over to the corner." [*Id.* at 00:06-00:12; *see* **Ex. 1**, Kinnell Bodycam #1 at 02:29-02:36; *see* **Ex. 3**, Mullikin Recording at 00:34-00:41].

11. Plaintiff complied, stepping back from Kinnell and responding: "You can, I will be right here waiting for you. Six feet is the law officer. I am a journalist. You are welcome to go ahead and talk." [**Ex. 3**, Mullikin Recording at 00:38-00:44].

12. Plaintiff, while continuing to record then asked: "Why aren't you asking for backup? Why aren't you calling someone for backup if it is such a big deal?" [*Id.* At 01:22-01:27].

13. When Bermudez requested that someone retrieve his hat, Plaintiff walked

down the street and retrieved it. [*Id.* at 01:34-01:50].

14. Kinnell and Bermudez then crossed the corner of the sidewalk and fence, creating a 90-degree barrier of separation between them and Plaintiff. [**Ex. 1**, Kinnell Bodycam #1 at 03:35-03:55; **Ex. 3**, Mullikin Recording at 01:50-01:55].

15. Kinnell placed Bermudez on the ground and told both Heap and Plaintiff to "back up." [**Ex. 3**, Mullikin recording #1 at 02:00-02:10].

16. Plaintiff responded, "six feet, six feet" and stepped further away from Kinnell and Bermudez. [*Id.*].

17. Over a minute later, Baisch arrived on scene and immediately stepped between Plaintiff, whose phone was pointed toward the officers, and the rest of the officers, who were attempting to unbind Bermudez. [**Ex. 5**, Baisch Bodycam at 01:52-01:54; **Ex. 3**, Mullikin Recording at 03:19-03:21; **Ex.** 9, Heap Recording #3 at 01:20-01:22].

18. No officer on scene communicated to Baisch before he contacted Plaintiff that Plaintiff was disruptive, posed a concern, or had interfered with Officer Kinnell's arrest. Baisch had no knowledge of Plaintiff's prior actions at the time he contacted him. [**Ex. 6**, Baisch Dep. Tr. at 178:24-180:22].

19. When Baisch placed himself between the arrest and Plaintiff, Plaintiff took a step backward, away from the arrest and Baisch. [**Ex. 9,** Heap Recording #3 at 01:19-01:22].

20. From a combination of the video evidence and testimony, it can be inferred that Plaintiff was standing approximately 6 feet away from the arrest when Baisch arrived

at the scene. [**Ex. 9**, Heap Recording #3 at 1:19-1:22; **Ex. 2**, Mullikin Dep. Tr. at 146:1-16; **Ex. 5**, Baisch Bodycam at 01:47-01:51].

21. Baisch later alleged that his immediate perception of Plaintiff was "that he was acting like nothing was going on" and "he had his phone held lower like he was almost trying to hide the fact that he was recording." [**Ex. 6**, Baisch Dep. Tr. at 169:20-21; **Ex. 6**, Baisch Dep. Tr. at 182:16-18].

22. Baisch testified that he "did not know" whether Plaintiff appeared to be a threat as he arrived on the scene. [**Ex. 6**, Baisch Dep. Tr. at 170:25].

23. One-and-a-half seconds after Baisch placed himself between Plaintiff and the arrest, Baisch commanded Plaintiff to "get back," and Plaintiff responded that he was "six feet." [**Ex. 9**, Heap Recording #3 at 01:20-01:22; **Ex. 3**, Mullikin Recording at 03:19-03:21; **Ex. 5**, Baisch Bodycam at 01:52-01:54].

24. Baisch testified that he did not understand Plaintiff's statement of "six feet" to be a verbal expression of disobedience. [**Ex. 6**, Baisch Dep. Tr. at 186:2-23].

25. Baisch testified that his reason for commanding Plaintiff to move back was that "there's no reactionary gap" and "if something happens with [Mr. Bermudez], [Plaintiff is] going to be right there." [**Ex. 6**, Baisch Dep. Tr. at 174:4-11].

26. One second after Plaintiff's response of "six feet," Baisch began to forcefully push Plaintiff further back from the scene. [**Ex. 3**, Mullikin Recording at 03:25-03:28; **Ex. 9**, Heap Recording #3 at 01:25-01:28; **Ex. 5**, Baisch Bodycam at 01:55-01:58].

27. Baisch testified that he believed his command to "get back" was "so simple

that anyone would be able to follow" it. [**Ex. 6**, Baisch Dep. Tr. at 190-191:25-1].

28. Baisch further acknowledged that he could have given Plaintiff a destination where he had to move, or given Plaintiff a distance that he had to move back, or could have told Plaintiff why he had to move back, or could have engaged with Plaintiff further to understand why Plaintiff was standing where he was, and yet did none of those alternative actions. [**Ex. 6**, Baisch Dep. Tr. at 191-192:7-5].

29. Baisch further acknowledged that "I can't just tell him to get back or shove him immediately or push him" and that Plaintiff needed to "have time to comply with the command." [**Ex. 6**, Baisch Dep. Tr. at 185:12-14].

30. Baisch gave Plaintiff one second to comply with the command. [**Ex. 3**, Mullikin Recording at 03:25-03:28; **Ex. 9**, Heap Recording #3 at 01:25-01:28; **Ex. 5**, Baisch Bodycam at 01:55-01:58].

31. Baisch testified that he believed he had given Plaintiff enough time to comply. [**Ex. 6**, Baisch Dep. Tr. at 185:18].

32. Baisch testified that he chose to use the amount of force that he did because Plaintiff was "not going to comply." [**Ex. 6**, Baisch Dep. Tr. at 187:7-19]. Baisch testified that Plaintiff indicated he wasn't compliant because Plaintiff had not physically moved back in the time Baisch gave him. [**Ex. 6**, Baisch Dep. Tr. at 188:3-8].

33. After being shoved backwards, Plaintiff grabbed the fence to stabilize himself, holding on for approximately four seconds. [**Ex. 2**, Mullikin Dep. Tr. at 157:2-6; **Ex. 9**, Heap Recording #3 at 01:27-01:31].

34. It was this physical response that Baisch later claimed furnished probable

cause for the arrest. [**Ex. 6**, Baisch Dep. Tr. at 211:4-13].

35. Baisch then removed Plaintiff from the fence and forced him to the ground by grabbing his head and pulling him down. [**Ex. 9**, Heap Recording #3 at 01:30-32].

36. While on the ground, Plaintiff told Baisch "it was six feet" and "I have not done anything wrong." [**Ex. 3**, Mullikin Recording at 03:27-03:33; **Ex. 5**, Baisch Bodycam at 01:58-02:04].

37. Baisch ordered Plaintiff to "stay there," then turned and began walking away. [**Ex. 4**, Mullikin Recording at 03:27-03:33; **Ex. 5**, Baisch Bodycam at 02:04-05].

38. Plaintiff stood up and asked: "What's your badge number? Badge number, officer." [**Ex. 3**, Mullikin Recording at 03:36-03:39; **Ex. 5**, Baisch Bodycam at 02:06-09].

39. Baisch testified that he was unable to see the way Plaintiff stood up after being ordered to "stay there." [**Ex. 6**, Baisch Dep. Tr. at 326:24-327:14].

40. Five seconds after issuing the "stay there" command, Baisch turned, faced Plaintiff for approximately one second and informed Plaintiff he was under arrest. [**Ex. 3**, Mullikin Recording at 03:38-03:39; **Ex. 5**, Baisch Bodycam at 02:09-10].

41. The entire encounter—from Baisch's arrival on scene to the announcement of arrest—lasted approximately nineteen seconds. [**Ex. 3**, Mullikin Recording at 03:21-03:40; **Ex. 5**, Baisch Bodycam at 01:51-02:10].

42. When Plaintiff asked why he was being arrested, Baisch stated it was because he was "failing to comply." [**Ex. 3**, Mullikin Recording at 03:40-03:43; **Ex. 5**, Baisch Bodycam at 02:10-02:13].

43. Plaintiff attempted to call the Sergeant for assistance and held onto the fence. [**Ex. 3**, Mullikin Recording at 03:42-03:44; **Ex. 5**, Baisch Bodycam at 02:12-02:19].

44. Baisch forced Plaintiff to the ground a second time; While on the ground, Plaintiff stated: "I did nothing wrong. I'm a journalist. This is fucked up." [**Ex. 7**, Heap Recording #2 at 00:01-00:05; **Ex. 5**, Baisch Bodycam at 02:20-02:24].

45. Once Plaintiff is forced to the ground by Baisch, another officer arrives to aid Baisch in handcuffing Plaintiff. [**Ex. 5**, Baisch Bodycam at 02:20-02:27; **Ex. 7**, Heap Recording #2 at 00:01-00:08].

46. The officer tells him to put his hands behind his back and that "you're not going to stand on top of us while we're working." [**Ex. 5**, Baisch Bodycam at 02:27-02:29].

47. Baisch began removing Mullikin's phone from his left hand. [**Ex. 5**, Baisch Bodycam at 02:29-02:37].

48. Mullikin asked the officers to "let me remove my phone. Please don't let it break, let me set it down." *Id.*

49. Shortly after Mullikin's phone was removed from his hand, he was handcuffed. [**Ex. 5**, Baisch Bodycam at 02:39-02:49].

50. Mullikin insisted that he was not trying to bother the officers by stating that, "I wasn't trying. You can ask the officer. I wasn't mean. I wasn't cursing at him." [**Ex. 5**, Baisch Bodycam at 02:35-02:40].

51. The officers had Mullikin fully detained about 40 seconds after Baisch told

Mullikin that he was under arrest. [**Ex. 5**, Baisch Bodycam at 02:09-02:49].

52. Mullikin was charged with violating one count of Yuma Code of Ordinances § 111-04 Obedience to Officers and one count of A.R.S. § 13-2508[A][3] Resisting Arrest-Passive Resistance. [**Ex. 8**, Baisch Incident Report, 1].

53. Baisch testified that his asserted interest in using such force in the first place was "because I wanted to move him back and he wasn't following my verbal commands." [**Ex. 6**, Baisch Dep. Tr. at 192:18-22].

54. Chief Garrity testified that the Yuma Police Department issued a directive to provide guidance to officers encountering individuals recording police activity. [**Ex. 10**, Garrity Dep. Tr. at 24:19-22].

55. The directive was issued in response to individuals conducting what the Department referred to as "First Amendment audits." [*Id.*].

56. Chief Garrity testified that the later-adopted policy "goes beyond" the prior directive. [**Ex. 10**, Garrity Dep. Tr. at 32:21-23].

57. Chief Garrity testified that officers are trained on policies prior to those policies being implemented. [**Ex. 10**, Garrity Dep. Tr. at 33:19-24].

58. Chief Garrity testified that he directed that a policy governing recording police activity be developed. [**Ex. 10**, Garrity Dep. Tr. at 31:6-8].

59. "After reviewing the incident and internal investigation, Chief Garrity concluded that Officer Baisch's conduct was reasonable and within policy." [**Ex. 10**, Garrity Dep. Tr. at 181:9-13].

60. Chief Garrity testified that, after reviewing the incident, "the force appears

reasonable and within policy." [**Ex. 10**, Garrity Dep. Tr. at 181:9-13].

DATED this 27th day of March, 2026.

Respectfully submitted,

/s/ Gregg Leslie
Gregg P. Leslie
Adelyn Ascherl
Justin Dutrisac
Justin Smith Chiago
ASU Sandra Day O'Connor College of Law
First Amendment Clinic,
Public Interest Law Firm
*Attorneys for Plaintiff Lucas Mullikin*