Michele Molinario, Bar #020594
Derek R. Graffious, Bar #033486
Ashley E. Caballero-Daltrey, Bar #036449
Melynda M. Meyrick, Bar #039695
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1746
Fax: (602) 200-7831
mmolinario@jshfirm.com
dgraffious@jshfirm.com
adaltrey@jshfirm.com
mmeyrick@jshfirm.com

Attorneys for Defendants City of Yuma
and James Baisch

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Lucas Mullikin,

Plaintiff,

v.

City of Yuma; James Baisch, in his personal capacity,

Defendants.

No. 2:25-cv-00637-ROS-JZB

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants City of Yuma and James Baisch, respond in opposition to Plaintiff's Motion for Partial Summary Judgment. Plaintiff's Motion misstates the record, draws impermissible conclusions, and seeks summary judgment in Plaintiff's favor based on those contentions. As this Court has before recognized, "it is generally a heavy burden for a plaintiff to seek summary judgment" because a movant who bears the burden of proof at trial "must establish beyond controversy every essential element of the claim based on the undisputed material facts." *Navajo Health Found.-Sage Mem'l Hosp. Inc. v. Razaghi Dev. Co. LLC*, 800 F. Supp. 3d 955, 963 (D. Ariz. 2025), *reconsideration denied*, No. CV-23-08072-PCT-DJH, 2025 WL 3062638 (D. Ariz. Nov. 3, 2025) (cleaned up). Plaintiff has not met that burden, and his Motion should be denied.

## I. FACTS.

Plaintiff's Motion does not contain a fact section and, instead, contains references to their separate statement of facts throughout the Motion. Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment significantly overlap in terms of facts and, accordingly, Defendants incorporate by reference their fact section rather than reprinting it in full here. [*See* Doc. 58 at 1–7; Doc. 51.] Defendants address Plaintiff's facts throughout the motion and include their objections in their Controverting Statement of Facts, as required by LRCiv 56.1(b).

## II. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS FIRST AMENDMENT CLAIMS.

### A. The Record Lacks Evidence To Support Plaintiff's Interference Claim.

Defendants do not dispute, for the purposes of briefing the cross-motions for summary judgment that Plaintiff was engaged in a constitutionally protected activity. Where the parties differ, however, is how to analyze Plaintiff's interference claim. Defendants argued in their Motion for Summary Judgment that the claim appeared to be based solely on the arrest (which is a retaliation claim) and to the extent that it was based on any use of force, that claim would appear to be analyzed under the retaliation framework as well. [Doc. 58 at 9–12.] Plaintiff's Motion for Partial Summary Judgment, however, proposes an entirely different framework. He argues that he is entitled to summary judgment on his interference claim because Officer Baisch interfered with his rights "without sufficient justification." [Doc. 54 at 3.] He does not explain what a "sufficient justification" is, and he does not apply the causation test described in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977), despite applying it in his retaliation claim. *See also Nieves v. Bartlett*, 587 U.S. 391, 404 (2019) (discussing *Mt. Healthy* test in retaliatory arrest claims). Accordingly, Plaintiff appears to be advancing an argument that the interference claim has some *other* framework for cause.

Whatever the test for interference may be, it cannot be completely untethered from cause. Plaintiff's cited cases do not demonstrate otherwise. Two of his cases were issued prior to *Nieves*. *See, e.g.*, *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir.

1995) (finding question of fact where officer violently smashed a camera into the plaintiff's face); *see also Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011). Another case was a facial challenge to a law, not an issue that arose from interactions with police officers. *Project Veritas v. Schmidt*, 125 F.4th 929, 945, 959 (9th Cir. 2025). Subsequent cases have reaffirmed that the Court cannot avoid undertaking the but-for causation analysis simply because a plaintiff alleges interference. *See, e.g.*, *Cheairs v. City of Seattle*, 145 F.4th 1233, 1246 (9th Cir. 2025); *Solomon v. Las Vegas Metro. Police Dep't*, No. 23-4166, 2025 WL 1678174, at *1 (9th Cir. June 12, 2025). The Ninth Circuit has noted the difficulty of the First Amendment framework in cases involving interference and retaliation. *See, e.g.*, *Dickinson v. Trump,* __F. 4th__, No. 26-1609, 2026 WL 1133353, at *7 (9th Cir. Apr. 27, 2026) (explaining that First Amendment retaliation framework is a "poor fit" in crowd dispersal cases involving a use of force).

The Ninth Circuit sometimes analyzes these interference claims in terms of whether the governmental entity had a valid time, place, or manner restriction, but that typically arises where the entity has created a law, policy, or some sort of prior restriction, not because of a single officer's actions. *See, e.g.*, *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) (policy regarding where a person can take photographs); *but see Reed v. Lieurance*, 863 F.3d 1196, 1211 (9th Cir. 2017) (pre-*Nieves* applying a time, place, and manner analysis where plaintiff was told to leave a parking spot). A restriction is reasonable if it is content-neutral, narrowly tailored to serve a significant government interest, and leaves open other channels for exercising the right. *Reed*, 863 F.3d at 1211. Plaintiff did not argue that the claim should be analyzed as such a restriction. But even if he had, he would not be entitled to summary judgment, because restricting a Plaintiff from encroaching on the ongoing arrest in this case *was* a valid time, place, and manner restriction because it was content-neutral and narrowly tailored to preserve the safety of the officers and all others involved in the ongoing arrest. Officer Baisch only sought to move Plaintiff far enough back for the safety of everyone, and he did not tell Plaintiff to stop filming, nor did he stop Plaintiff's girlfriend, Heap, from

filming from a safe distance away. In fact, in addition to a misdemeanor violation of a Yuma City Ordinance, Plaintiff's actions also constituted a crime under Arizona law. *See* A.R.S. § 13-2413. Thus, although Defendants assert that the *Nieves*/*Mt. Healthy* test should apply, as detailed in their Motion for Summary Judgment, Plaintiff would not be entitled to summary judgment even under a time, place, and manner analysis.

Regardless of the analysis, however, the record does not support Plaintiff's arguments. He claims that Officer Baisch's actions "eliminated Plaintiff's right to record law enforcement." [Doc. 54 at 4.] The undisputed record here shows that Plaintiff was in fact allowed to continue filming. Officer Baisch testified that he would have let Plaintiff film after he escorted him back, and Plaintiff *continued filming*. Indeed, the film from his video is part of the record. Plaintiff also argues that Officer Baisch "removed" his phone from his hand, "eliminating any remaining possibility of continued recording," but Officer Baisch removed Plaintiff's phone from his hand at *his* request. [DSOF ¶ 58.] Heap continued filming during the encounter. [*See* DSOF ¶¶ 68–69 (explaining that Heap was not arrested).] The record does not reflect that Plaintiff's ability to record was eliminated, but even to the extent that it was interfered with, the record shows that Officer Baisch was not the but-for cause of that interference either because (1) interference was not a substantial or motivating factor of his actions[1] or (2) because removing Plaintiff from an in-progress arrest was a valid time, place, and manner restriction on his First Amendment activities.

**B. <u>Officer Baisch Is Entitled To Qualified Immunity on The Interference Claim.</u>**

Plaintiff has the burden to identify a case where "an officer taking similar actions in similar circumstances was held to have violated the Constitution." *Zorn v. Linton*, 146 S. Ct. 926, 931 (2026) (cleaned up). If he is unable to do so, the officer is

---

[1] Defendants address the but-for causation in more detail below in response to Plaintiff's arguments on his retaliation claim as he did not address causation in his section on interference.

entitled to qualified immunity. *Id.*; *see also Fuhr v. City of Seattle*, __ F.4th __, No. 24-5618, 2026 WL 1252331, at *3–4 (9th Cir. May 7, 2026).

Given the uncertainty across binding Ninth Circuit case law, and the parties' dispute over the applicable test, it would be impossible for a reasonable officer in Officer Baisch's position to know that his actions would infringe Plaintiff's rights. Plaintiff cites *Fordyce* for the proposition that Officer Baisch is not entitled to qualified immunity, [*see* Doc. 54 at 17,] but cases *after Fordyce* cite to it and still employ the *Mt. Healthy* but-for causation test, so even the cases interpreting it do not rely solely on its language. *See, e.g.*, *Cheairs*, 145 F.4th at 1246. Officer Baisch is entitled to qualified immunity on Plaintiff's interference claim because no case clearly established the law.

**C. <u>The Record Lacks Evidence Of Retaliation.</u>**

Plaintiff's retaliation claim fails because the record lacks evidence that Plaintiff was arrested without probable cause or any evidence of retaliation. Plaintiff's retaliatory arrest analysis refers to *Mt. Healthy* and *Nieves*, but it primarily cites cases that predate (and are abrogated by) *Nieves*. *See Ford v. City of Yakima*, 706 F.3d 1188, 1193–94 (9th Cir. 2013); *Fordyce*, 55 F.3d at 439; *Hoyland v. McMenomy*, 869 F.3d 644, 656–57 (8th Cir. 2017); [*see also* Doc. 58 at 9–10 (discussing *Nieves*).

For the purposes of the briefing on these claims, Defendants do not dispute that an arrest would chill a person of ordinary firmness from exercising their rights. What remains, then, of Plaintiff's argument is whether Officer Baisch had probable cause; whether Plaintiff's recording was a substantial or motivating factor of his arrest; and whether the arrest would have been made without respect to retaliation. *See Nieves*, 587 U.S. at 404.

**1. The record shows that Officer Baisch had probable cause.**

As detailed in Defendants' Motion for Summary Judgment, Officer Baisch had probable cause to believe that Plaintiff violated A.R.S. § 13-2413 (interfering with a crime scene investigation), A.R.S. § 13-2508 (resisting arrest), A.R.S. § 13-1203(A)(3) (assault), A.R.S. § 13-1204(A)(8)(a) (assault against a peace officer), and Yuma City Code

§ 111-04.2 [Doc. 58 at 7–9.] Plaintiff's Motion focuses only on Officer Baisch's testimony that he arrested Plaintiff for failure to obey a lawful command. An arrest is lawful if officers had probable cause to arrest for any offense, not just the stated reason for arrest. *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018). Nevertheless, Defendants focus their Response on Plaintiff's arguments regarding failure to obey a lawful command and refer the Court to their Motion for Summary Judgment on the other offenses.

The record shows that Plaintiff failed to comply with officer commands. Plaintiff claims that he had complied with Officer Kinnell's commands, which is not supported by the record. Even if Plaintiff may have taken a small step back at some point during the encounter, he continued to follow Officer Kinnell along the street and was very close to him at multiple points during the interaction. Plaintiff argues that no one had conveyed anything to Officer Baisch, but he was aware from the 911 call that Officer Kinnell was surrounded and, under the collective knowledge doctrine, if one officer has probable cause to arrest a suspect, all officers have probable cause. *See United States v. Ramirez*, 473 F.3d 1026, 1032–33 (9th Cir. 2007). Plaintiff admits that he grabbed the fence but claims that was not an "act of resistance." Plaintiff's subjective intent, however, does not change the fact that he was disobeying a lawful command to move away. Additionally, the record shows that Plaintiff also pushed against Officer Baisch with his chest and leaned on him during the interaction. [DSOF ¶ 44.]

The record also shows—and Plaintiff admits—that he stood up after he was told to stay on the ground, and he moved towards Officer Baisch. [*See* Doc. 54 at 9; *see also* DSOF ¶ 47.] Although he argues that the command was "ambiguous," he cites no case law to support that argument, and there is nothing about the command that would have made it hard to follow, such as contradictory language. Officer Baisch had probable cause for Plaintiff's arrest. [2]

---

[2] Defendants' Motion for Summary Judgment analyzed the *Nieves* exception, and Defendants incorporate that discussion by reference instead of reproducing it here. [Doc. 58 at 10.] Plaintiff did not address the exception, and his argument simply assumes that Officer Baisch lacked probable cause to arrest him.

**2. The record lacks evidence that retaliation was a substantial or motivating factor of the arrest.**

The record does not support Plaintiff's arguments that the recording was a substantial or motivating factor of the arrest—the opposite is true. [*See* Doc. 58 at 10–11.] Plaintiff argues that he "at no point actively interfered with officers' duties," [Doc. 54 at 6,] even though the record shows that he was extremely close to the officers. Similarly, Plaintiff claims that no officer "indicated concern about his presence" after Bermudez had put his legs through the fence, but that is not supported by the record, either. [*Id.*] Officer Baisch ordered Plaintiff to get back as soon as he arrived on scene because he saw that the situation was unsafe. [DSOF ¶¶ 35–36.] The record also does not support the assertion that "no officer communicated to Baisch that Plaintiff was disruptive or posed a concern." [Doc. 54 at 6.] Officer Baisch had received a call that officers were surrounded, and he testified as to why he thought Plaintiff was creating an unsafe situation. [DSOF ¶¶ 22, 26, 35–36.] Plaintiff asserts that the arrest was because he asked for Officer Baisch's badge number, but he also concedes that he in fact stood up after he was ordered to stay in one place—in other words, he concedes that he did, in fact, disobey an officer's lawful command. [Doc. 54 at 6–7.] Furthermore, the record shows that Heap was filming and she was not arrested because she *obeyed* officer commands, unlike Plaintiff.

There is no evidence that shows that Plaintiff was arrested because he asked for Officer Baisch's badge number and not because he stood after being told to stay in one place and approached an officer from behind. This had occurred after Plaintiff had already resisted an escort back and had been encroaching on an ongoing arrest. And although Defendants agree that an officer cannot give a command for a person to stop exercising their lawful rights, that is not what occurred here. Officer Baisch gave a lawful command for Plaintiff to stay away from a crime scene. Plaintiff has not cited any case that demonstrates that such a command is unlawful or that he was entitled to disregard it.

/ / /

/ / /

### 3. The arrest would have been initiated without respect to retaliation.

Plaintiff did not address whether the arrest would have been made without respect to retaliation. Plaintiff had disobeyed multiple officer commands; refused to move away from an in-progress arrest; and then stood up and moved towards Officer Baisch. Even if this Court believed that Officer Baisch may have been motivated in some part by Plaintiff's question regarding his badge (despite the lack of support in the record), Officer Baisch still would have arrested Plaintiff without respect to retaliation given his conduct, which created a dangerous situation for everyone involved.

### 4. Officer Baisch is entitled to qualified immunity.

Plaintiff is also not entitled to summary judgment on his First Amendment claim because Officer Baisch is entitled to qualified immunity. Plaintiff did not cite a single case that demonstrates that every reasonable officer would have known that he lacked probable cause in this situation such that Officer Baisch would have known his actions would violate Plaintiff's rights. *See also DeCastro v. Las Vegas Metro. Police Dep't*, 2024 WL 4189939, at *11 (D. Nev. Sept. 12, 2024) ("DeCastro has not identified a Supreme Court or Ninth Circuit case establishing that a bystander has a right to film from a particular distance, that an officer cannot tell a bystander filming a traffic stop that they must back up, how far the officer can order the person to back up, and that the officer cannot arrest a person who disobeys that directive.").

## D. <u>The Record Lacks Evidence of a Policy, Practice, or Custom of Violating First Amendment Rights.</u>

Plaintiff is not entitled to summary judgment on his *Monell* claim based on a First Amendment violation. Plaintiff's claim fails, as an initial matter, because there is no underlying constitutional violation for all of the reasons discussed above. Plaintiff argues, however, that the need for training was obvious here because the City "lacked any meaningful policy." [Doc. 54 at 10.] That assertion is directly contradicted by the record. Plaintiff argues that the City only had a directive, but the directive had the same force as formal policy. [DSOF ¶ 79.] In the alternative, Plaintiff argues that interference was not

defined under the policy, but he has cited to no case law that shows how granular a policy must be.

Moreover, the lack of a policy or training alone is typically not enough to hold an entity liable. *See Connick v. Thompson*, 563 U.S. 51, 63–64 (2011) (discussing framework for claims based on an obvious omission). The Ninth Circuit has explained that in a case of a policy of *inaction*, a Plaintiff still must show that the City "was on actual or constructive notice that its omission would likely result in a constitutional violation" and "that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy." *Jackson v. Barnes,* 749 F.3d 755, 763 (9th Cir. 2014) (citation omitted). Although Plaintiff refers vaguely to "a recurring situation," [Doc. 54 at 10,] the record lacks *any* evidence that this issue has arisen before such that the City had notice that its "omission" would cause a constitutional violation and, contrary to Plaintiff's arguments, the City in fact had a policy. *Cf. Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (entity was aware that detainees were missing arraignments, held meetings regarding that issue, and chose not to do anything about it). Plaintiff merely disagrees with that wording of that policy. Plaintiff did not address *any* training and instead simply asserts that the lack of a policy proves a lack of training. Defendants detailed the training and policy issues in their Motion for Summary Judgment and refer the Court to that analysis rather than reproducing it in full in light of Plaintiff's short shrift to their arguments on their policy claim. [*See* Doc. 58 at 18–21.] The record lacks evidence of an obvious need for training.

In the alternative, Plaintiff argues that Chief Garrity ratified Officer Baisch's decision because he publicly stated and testified that Officer Baisch acted lawfully. [Doc. 54 at 11.] None of the cases that Plaintiff cites support such a sweeping theory of ratification. In *Christie v. Iopa*, the Ninth Circuit explained that "a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." 176 F.3d 1231, 1239 (9th Cir. 1999). And in *Lytle v. Carl*, the policymaker was actively participating in the disciplinary actions alongside other defendants. 382 F.3d 978, 987 (9th

Cir. 2004). Neither case stands for the proposition that an after-the-fact statement that an officer acted lawfully could subject a city to liability. On the contrary, courts routinely require a Plaintiff to show "something more" than a failure to discipline in order to demonstrate that the statements are adopted as official policy. *Oakry v. Tempe, City of*, 2022 WL 137621, at *4–5 (D. Ariz. Jan. 14, 2022). The record lacks any such evidence.

Plaintiff is not entitled to summary judgment on his *Monell* claim based on alleged First Amendment violations.

## III. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS EXCESSIVE FORCE CLAIM REGARDING THE BACKWARDS ESCORT.

### A. Plaintiff Has Not Met His Burden To Prove That Officer Baisch Used Excessive Force.

Although Plaintiff's Motion correctly identifies the *Graham* factors, it does not properly analyze the claim. [*See* Doc. 54 at 13.] As an initial matter, Plaintiff does not identify the level of intrusion here. As Defendants explained in their Motion for Summary Judgment, the backwards escort was a minimal use of force because Plaintiff did not suffer injuries, and the escort is one of the lowest levels of force that an officer can use. [*See* Doc. 58 at 14–15.][3] The Court must analyze the use of force within the totality of the circumstances, and that begins with the level of force used. *See Barnes v. Felix*, 605 U.S. 73, 80 (2025) (*Graham* analysis must including the context of the use of force including prior events).

As to the remaining factors, Plaintiff again ignores the record in this case. He leaves out any discussion of his actions prior to Officer Baisch's arrival, including the fact that he was interfering with an on-going arrest where the suspect was combative and Plaintiff's proximity was making the situation even more dangerous. He claims he was "separated by a 90-degree physical barrier," [Doc. 54 at 14,] but the body-worn camera in this case clearly shows that the fence was not a barrier, and Officer Baisch testified that the situation was dangerous. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing

[3] The backwards escort is the only use of force discussed or analyzed in Plaintiff's Motion.

parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Officer Baisch was justified in using a low level of force because Plaintiff had failed to comply with his commands and had failed to comply with Officer Kinnell's commands before.

*Deorle v. Rutherford,* 272 F.3d 1272, 1281 (9th Cir. 2001) is inapposite. It involved lead-filled less-lethal rounds, which the Ninth Circuit characterized as force that "was obviously enough to cause grave physical injury." *Id.* at 1280. And although Plaintiff asserts that Officer Baisch should have used "alternative methods," the backwards escort is one of the lowest levels of force an officer can employ. Plaintiff's focus on Officer Baisch's actions leaves out all of the commands used before he arrived. *See Barnes*, 605 U.S. at 80.

Plaintiff is not entitled to summary judgment on his excessive force claim.

### B. <u>Officer Baisch Is Entitled to Qualified Immunity.</u>

Plaintiff is also not entitled to summary judgment on his excessive force claim because Officer Baisch is entitled to qualified immunity. Plaintiff cites *Deorle* and *Graham* itself to argue that the law was clearly established. The Supreme Court has before recognized that *Graham* cannot clearly establish the law. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) ("*Graham* and *Garner*, following the lead of the Fourth Amendment's text, are cast at a high level of generality."). As above, *Deorle* is inapplicable here, and the Supreme Court has admonished the Ninth Circuit for overstating it. *See Kisela v. Hughes*, 584 U.S. 100, 106–07 (2018) ("Whatever the merits of the decision in *Deorle*, the differences between that case and the case before us leap from the page." (cleaned up)). That is another reason to deny summary judgment on the excessive force claim.

## IV. <u>PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE FALSE ARREST CLAIM.</u>

Plaintiff's argument on false arrest simply repeats his argument on probable cause. [*See* Doc. 54 at 16–17.] As above, Plaintiff has not met his burden to prove that

Officer Baisch lacked probable cause and he is therefore not entitled to summary judgment on Claim 6.

## V. CONCLUSION.

Based on the foregoing, Defendants City of Yuma and James Baisch respectfully request that this Court deny Plaintiff's Motion for Partial Summary Judgment. They additionally request that the Court grant them summary judgment for all of the reasons discussed in their Motion for Summary Judgment.

DATED this 15th day of May, 2026.

JONES, SKELTON & HOCHULI, P.L.C.

By *Michele Molinario*
Michele Molinario
Derek R. Graffious
Ashley E. Caballero-Daltrey
Melynda M. Meyrick
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Defendants City of Yuma and James Baisch

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2026, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

Gregg P. Leslie, Esq.
ASU Sandra Day O'Connor College of Law
First Amendment Clinic, Public Interest Law Firm
111 E. Taylor Street, Mail Code 8820
Phoenix, AZ 85004
Gregg.Leslie@asu.edu
*Attorney for Plaintiff Lucas Mullikin*

*/s/ Cindy Castro*