Gregg P. Leslie, Gregg.Leslie@asu.edu, Bar No. 035040*
Justin Smith Chiago, jsmithch@asu.edu**
First Amendment Clinic
Public Interest Law Firm
Sandra Day O'Connor College of Law
Arizona State University
111 E. Taylor St., Mail Code: 8820
Phoenix, AZ 85004
(480) 727-7398
*Attorneys for Plaintiff Lucas Mullikin*

* Supervising attorney pursuant to Ariz. R. Sup. Ct. 39(c)
** Certified limited practice student pursuant to Ariz. R. Sup. Ct. 39(c)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| LUCAS MULLIKIN,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF YUMA; JAMES BAISCH, in his personal capacity,<br><br>Defendants | No. 2:25-cv-00637-ROS-JZB<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' DAUBERT MOTION TO EXCLUDE EXPERT WITNESS ROGER CLARK** |

Plaintiff Lucas Mullikin hereby responds to Section I of Defendants' *Daubert* Motion to exclude expert witness Roger Clark.

Plaintiff notes that counsel for all parties have already conferred and mutually agreed, and the Court has subsequently issued an appropriate Order (May 14, 2026), to exclude the use of some opinions in any motion and trial that Defendants objected to in Section II of their motion, and Plaintiff does not address that portion here.

As set forth below, Defendants seek to exclude large swaths of Mr. Clark's

opinions on the theory that they are "in the form of legal conclusions." Those arguments misstate the law and mischaracterize the testimony.

**I. Mr. Clark's Opinions are Not Bare Legal Conclusions.**

Federal Rule of Evidence 702 provides that an expert may testify "in the form of an opinion or otherwise" if their specialized knowledge will "help the trier of fact to understand the evidence or to determine a fact in issue." Federal Rule of Evidence 704(a) abolished the *per se* bar on ultimate-issue testimony, providing that "[a]n opinion is not objectionable just because it embraces an ultimate issue." The Ninth Circuit recognizes a narrower limit: an expert may not "give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis omitted). Mr. Clark's opinions do not cross that line.

The Ninth Circuit has explained that an expert "may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Id.* at 1017. Likewise, "if the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion." *United States v. Diaz*, 876 F.3d 1194, 1198 (9th Cir. 2017); *see* Fed. R. Evid. 702(a), 704(a). The line is not whether an opinion uses words that may also appear in a jury instruction. The line is whether the expert is (1) telling the jury what the law is, or (2) telling the jury how to apply the law to the facts. Courts in this Circuit have routinely admitted police-practices testimony using the very terms

Defendants flag "excessive," "unnecessary," "unreasonable," "inadequate training," and "failure to intervene" because those terms describe deviations from generally accepted police standards, not legal elements Mr. Clark purports to define. (Def. *Daubert* Motion 2-3); *See Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc).

Mr. Clark is a qualified police-practices expert with over thirty years of law enforcement experience, who has been retained on more than 2,600 cases and whose opinions have been cited or quoted by the Ninth Circuit in numerous published decisions. (**Ex. 1, Clark CV at 1, 4–6**) His report sets forth a detailed chart of the minimum nationwide standards for police force options based on a subject's level of resistance, drawn from generally accepted training and from AZPOST. (**Ex. 2, Clark Report at 19–20**) Mr. Clark then applied those standards to the documented conduct of Officer Baisch and the other officers on scene. That is the impetus of admissible police-practices testimony. *See City of Hemet*, 394 F.3d at 703; *Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir. 1991) (affirming admission of testimony "as an expert on proper police procedure and policies").

Defendants' isolate phrases from Mr. Clark's report to suggest he is opining with legal conclusions. Read in context, he is doing the opposite. When Mr. Clark states that the force used was "unnecessary and excessive," he is comparing Officer Baisch's conduct to the use-of-force continuum and AZPOST training standards described in his report, not defining the constitutional standard for the jury. (Def. *Daubert* Motion 2-3). When he opines on a "failure to intervene," he is describing what supervisory officers are trained to do under accepted practice, not articulating the legal elements of a bystander-

liability claim. *Id.* When he opines on inadequate training, policy, and supervision, he is measuring the Yuma Police Department's conduct against accepted national standards, a quintessential police-practices subject this Circuit has long permitted. *Id.*; *See Larez*, 946 F.2d at 635.

A district court in this Circuit has considered, and rejected, this same kind of challenge to Mr. Clark's testimony specifically. In *Valtierra v. City of Los Angeles*, the defendants argued that Mr. Clark "misstate[d] the law" in opining on officers' use of force. 99 F. Supp. 3d 1190, 1197-98 (C.D. Cal. 2015). The court rejected that characterization, explaining that "reading Clark's opinion in context, it is clear that Clark is not attempting to state the law, correctly or otherwise; rather, Clark is opining that, in light of the training the defendant officers received," the conduct was inconsistent with that training. *Id.* at 1197. The court held Mr. Clark "qualified to offer such an opinion." *Id.* The same is true here. Mr. Clark's opinions, read in context and against the backdrop of the training-based standards laid out in his report, are not statements of law; they are police-practice opinions the jury is entitled to hear.

To the extent the *Valtierra* court found certain specific formulations (for example, characterizing force as "excessive" or "unreasonable") were better explored through hypothetical questioning at trial to avoid invading the province of the jury, it did not exclude Mr. Clark's opinions. It permitted them to be subject to tailoring at trial. *Id.* at 1197–98. That is precisely the remedy that should govern here. To the extent the Court has concerns about specific phrasings in Mr. Clark's report, the appropriate remedy is targeted limitation at trial through, *inter alia*, hypothetical questioning, a motion in

limine, or a curative instruction, not wholesale exclusion of opinions Mr. Clark is plainly qualified to offer. Plaintiff is prepared to confer with Defendants on appropriate guardrails while preserving Mr. Clark's ability to opine on the police-practices questions the jury needs his help to decide.

**II. Mr. Clark's Opinions are Based on Sufficient Facts and Data**

Opposing counsel's own authority defeats their argument. In *Guidroz-Brault*, the Ninth Circuit explained that "the underlying factual details need not be disclosed in the affidavit," so long as "the underlying facts must exist." 254 F.3d 825, 831–32 (9th Cir. 2001*); see also Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir. 1985); Fed. R. Evid. 705. The Rule 702 inquiry is "a flexible one." *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 594 (1993). The relevant factors vary "depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

Mr. Clark's opinions clear that bar. Far from "sheer speculation," they rest on a developed evidentiary record, including the video and audio recordings made by Plaintiff and Ms. Heap; body-worn camera footage from Officer Baisch and other responding officers; YPD policy documents and incident records; and the November 2023 YPD policies and training pamphlet on media and journalist interactions. (Ex. 2 at 3–5.) That record was identified in his report and was reviewed and analyzed before he reached his conclusions. *Id.* Opposing counsel identifies no "indisputable record facts" that contradict those opinions. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995). They simply disagree with the conclusions Mr. Clark drew from the facts. That

disagreement is the province of cross-examination, not exclusion. *See Daubert*, 509 U.S. at 596 (stating that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

Opposing counsel mischaracterizes Mr. Clark's opinion. Mr. Clark did not opine that YPD had "no policies regarding recording." He stated that, between January 2013 and November 2023, YPD had no policies providing officers with "standards, training, or information about how to engage with journalists or civilians recording police activity in public places." (Ex. 2 at 11.) Policy 1.12 does not contradict that opinion. Policy 1.12 is a media relations policy: it governs credentialed press access at crime and critical-incident scenes with established perimeters and presumes coordination through a Public Affairs Unit (PAU) and scene commander. (**Ex. 3, 1.12 Media Relations Policy at 2-3)**. It says nothing about civilians recording police activity in public, provides no standards for routine encounters where no perimeter or PAU exists, and is not training material. Mr. Clark's opinion is further grounded in the undisputed fact that YPD issued new policies and a training pamphlet on these subjects in November 2023—six months after Mullikin's arrest. (Ex. 2 at 11.) That YPD itself found it necessary to issue such guidance is concrete record support for Mr. Clark's opinion, not speculation.

Mr. Clark's opinions that Plaintiff was too far away to record Bermudez's arrest and was unable to record important aspects of the officers' interactions with Bermudez are grounded in the record, not speculation. Plaintiff's own video footage establishes his vantage point and shows what he was and could not capture after Officer Baisch took him

to the ground, at which point Plaintiff could no longer record the arrest at all. (*See* PSOF ¶¶ 32-36).[1] That is a factual basis, drawn directly from the video evidence. Mr. Clark's report does more than reference the record; it reproduces it. His factual analysis includes direct quotations from the recordings and testimony at issue, as well as embedded images and stills drawn from the video evidence. (Ex. 2 at 5-11). An expert who quotes the record verbatim and embeds the visual evidence on which he relies is not speculating; he is documenting the factual basis for his opinions. That is precisely what *Guidroz-Brault* requires: facts that "must exist" and that support the opinion. 254 F.3d at 832. Whether opposing counsel reads the same footage differently is a factual dispute for the jury, not grounds for exclusion under Rule 702. *See Daubert*, 509 U.S. at 596.

Regarding the "false report" bullet, Mr. Clark did not opine that Officer Baisch in fact submitted a false report. He identified specific inconsistencies between Officer Baisch's report and the video and audio evidence in the record. (Ex. 2 at 24-25). Identifying inconsistencies through comparison to objective video evidence is not a credibility determination; it is documentary analysis grounded in the record. Whether those inconsistencies ultimately establish falsity is for the jury.

The balance of opposing counsel's bullet list follows the same pattern. Each asserted "deficiency" is, on inspection, a citation to opposing counsel's own version of the disputed facts. That defense counsel reads the same record differently is unsurprising and is precisely the kind of dispute Rule 702 commits to the jury, not the Court. *See*

---

[1] Plaintiffs incorporate by reference Plaintiff's Separate Statement of Facts ("PSOF") in support of their Motion for Summary Judgment and its exhibits.

*Daubert*, 509 U.S. at 596.

Opposing counsel's secondary argument, that Mr. Clark improperly invades the province of the jury by weighing credibility, is similarly unfounded. Mr. Clark expressly stated at the outset of his report: "I do not make credibility determinations in expressing my opinions. That is, where there are differences in the events proffered by Officer Baisch and/or others versus the allegations and testimony proffered by Mr. Mullikin, and/or others, I do not opine for the trier of fact regarding who are the more believable witnesses. I consider that the resolution of any such conflicts are the purview of a jury to decide." (Ex. 2 at 1). Mr. Clark's analysis instead draws inferences from physical and documentary evidence: video, audio, body-worn camera footage, and policy materials, which is permissible expert work. To the extent any specific phrasing in the report could be construed as crossing into the factfinder's territory, the appropriate remedy is a targeted motion in *limine*, a curative instruction, or cooperation among counsel, not wholesale exclusion of an experienced expert whose opinions on police policy and practice will materially assist the jury. *See* Fed. R. Evid. 702(a).

//

//

## III. Conclusion

Plaintiffs hereby ask the court to deny the Defendants' *Daubert* motion or otherwise provide a curative instruction that does not exclude their expert witness.

Respectfully submitted,

/s/ Gregg P. Leslie
Gregg P. Leslie, Bar No. 035040 *
Gregg.Leslie@asu.edu
Justin Smith Chiago, jsmithch@asu.edu**
First Amendment Clinic
Public Interest Law Firm
Sandra Day O'Connor College of Law
Arizona State University
111 E. Taylor St., Mail Code: 8820
Phoenix, AZ 85004
*Attorneys for Plaintiff Lucas Mullikin*

May 15, 2026

* Supervising attorney pursuant to Ariz. R. Sup. Ct. 39(c)
** Certified limited practice student pursuant to Ariz. R. Sup. Ct. 39(c)