**ASU Sandra Day O'Connor College of Law**
**First Amendment Clinic, Public Interest Law Firm**
Gregg P. Leslie, Gregg.Leslie@asu.edu,* (AZ Bar # 035040)
Justin Dutrisac, jdutrisa@asu.edu**
First Amendment Clinic, Public Interest Law Firm
Arizona State University Sandra Day O'Connor College of Law
111 E. Taylor St., Mail Code: 8820
Phoenix, AZ 85004
(480) 727-7398
* Supervising attorney pursuant to Ariz. R. Sup. Ct. 39(c)
** Certified limited practice student pursuant to Ariz. R. Sup. Ct. 39(c)
*Attorneys for Plaintiff Lucas Mullikin*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

LUCAS MULLIKIN,

Plaintiff,

v.

CITY OF YUMA,
JAMES BAISCH, in his personal capacity

Defendants.

No. 2:25-cv-00637-ROS-JZB

**PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lucas Mullikin responds in opposition to Defendants City of Yuma and Officer James Baisch's Motion for Summary Judgment. Defendants' Motion depends on their own characterization of the record, resolves disputed facts in their favor, and asks the Court to treat contested issues of interference, compliance, resistance, probable cause, and force as undisputed. But at a summary judgment request by Defendants, the evidence must be viewed in Plaintiff's favor, and Defendants are not entitled to judgment by labeling Plaintiff's conduct as "interference," "refusal," or "resistance" where a

reasonable jury could view the evidence differently. Here, the record permits a jury to find that Plaintiff was recording police activity from a public sidewalk, complied with an earlier command to move back, was not actually interfering with the officers, was not given a meaningful opportunity to comply before Officer Baisch used force, and was arrested after asking for Baisch's badge number. Because those disputes are material to Plaintiff's First and Fourth Amendment claims, Defendants' Motion should be denied.

## I. Defendants Are Not Entitled to Summary Judgment on Plaintiff's False Arrest and Unreasonable Seizure Claims.

Defendants argue that Officer Baisch had probable cause to arrest Plaintiff for multiple offenses, including failure to obey a lawful order, interfering with a crime scene investigation, resisting arrest, assault, and assault on a peace officer. But each theory depends on Defendants' disputed factual narrative. Defendants' probable-cause argument assumes Plaintiff was interfering, refusing commands, physically resisting, and threatening officer safety. Plaintiff disputes those facts, and the record permits a jury to reject Defendants' account. CSOF ¶¶ 37–44, 47–55, 60.

The question here is whether, viewing the facts in Plaintiff's favor, Baisch had probable cause to believe Plaintiff committed a crime at the time Baisch seized, forced, and arrested him. On this record, he did not.

### A. A jury could find Plaintiff was recording and asking questions, not interfering.

Defendants' probable-cause theory begins with the premise that Plaintiff interfered with Officer Kinnell and later with Officer Baisch. But Plaintiff's evidence permits a

different finding. Plaintiff asked questions about the detention, including what Bermudez had done wrong, why he was being arrested, and Kinnell's badge number. PSOF ¶¶ 2–3. When Kinnell later commanded Plaintiff to "back up right now" and "go over to the corner," Plaintiff complied, stepped back, and said he was a journalist. PSOF ¶ 4. That evidence matters because Defendants characterize Plaintiff's questions as "interjecting" and "peppering" Kinnell.

The record also undermines Defendants' claim that Plaintiff remained in the officers' way. Bermudez fell closer to Plaintiff because of Bermudez's resistance, not because of any action by Plaintiff. PSOF ¶ 9. Kinnell and Bermudez then crossed the corner of the sidewalk and fence, creating a 90-degree barrier of separation between them and Plaintiff. PSOF ¶ 14. A jury could find from that evidence that Plaintiff was separated from the officers and was not physically obstructing their ability to detain Bermudez.

### B. A jury could find Baisch lacked probable cause when he first seized Plaintiff.

Defendants contend that Baisch had probable cause "from the second he arrived on scene." That argument fails because it depends on disputed facts and ignores what Baisch actually knew. When Baisch arrived, he stepped between Plaintiff and the officers attempting to unbind Bermudez. PSOF ¶ 17. Plaintiff then took a step backward, away from Baisch. PSOF ¶ 19.

Those facts defeat Defendants' argument that probable cause existed as a matter of law. A reasonable jury could find that Baisch did not arrive to find Plaintiff obstructing

officers, moving toward the officers, threatening them, or physically interfering. Instead, a jury could find that Plaintiff was standing back, recording, and then stepped backward when Baisch entered the space between Plaintiff and the arrest.

Baisch's own testimony further supports denial of summary judgment. Baisch testified that he "did not know" whether Plaintiff appeared to be a threat when he arrived. CSOF ¶ 34; PSOF ¶ 22. A reasonable jury could reject Defendants' claim that Plaintiff's presence created an immediate officer-safety threat justifying seizure or arrest.

**C. A jury could find Plaintiff did not willfully refuse a lawful order.**

Defendants' failure-to-comply theory also depends on disputed facts. Defendants argue that Plaintiff refused Baisch's commands because Plaintiff responded that he was "six feet" away. But a jury could find that Plaintiff's statement was not refusal. Plaintiff's statement can be understood as an attempt to explain his location, clarify the command, or indicate that he believed he was already standing at a reasonable distance. And Baisch testified that he did not understand Plaintiff's "six feet" statement as a verbal expression of disobedience. CSOF ¶ 38; PSOF ¶ 24. That testimony directly undermines Defendants' argument that Plaintiff was willfully refusing a lawful order.

The timing is also critical. One second after Plaintiff responded with "six feet," Baisch began pushing Plaintiff farther back from the scene. PSOF ¶ 25. A jury could find that Plaintiff was not given an opportunity to comply before Baisch used physical force.

Baisch also acknowledged that he could have engaged further with Plaintiff, but did not. PSOF ¶ 28. And Baisch acknowledged that he could not simply tell Plaintiff to get back and immediately shove him. PSOF ¶ 29. Despite that, Baisch gave Plaintiff

approximately one second to comply before pushing him backward. PSOF ¶ 30.

A lawful-order offense cannot be established simply because an officer issued a command and then immediately used force. The command must be lawful, clear, and reasonably capable of compliance under the circumstances. Here, the record supports that Plaintiff had only seconds to respond before Baisch initiated force. A jury could therefore reject Defendants' claim that Plaintiff willfully refused to comply.

**D. Defendants rely on later alleged resistance to justify the initial seizure.**

Defendants argue that Plaintiff refused commands, pushed against Baisch, grabbed the fence, stood up after being told to stay, moved toward Baisch from behind, and resisted handcuffing. But those events did not all occur before the first seizure. Much of the conduct Defendants rely on occurred only after Baisch initiated physical force.

That sequencing matters. Probable cause must be assessed based on the facts known at the time of the seizure or arrest. Defendants cannot justify Baisch's initial physical contact by relying on Plaintiff's alleged reactions to that very contact.

Plaintiff disputes that he pushed or leaned against Baisch in an assaultive or criminal way. CSOF ¶¶ 42, 44. After being pushed backward, Plaintiff grabbed the fence to stabilize himself. PSOF ¶ 33. Baisch later claimed that Plaintiff's physical response supplied probable cause for the arrest. PSOF ¶ 34. A jury could find that Plaintiff's movements were reactions to Baisch's escalation, not acts that establish probable cause.

This is especially important because the entire encounter from Baisch's arrival to the announcement of arrest lasted approximately nineteen seconds. PSOF ¶ 41. A jury could view this as a rapid escalation, not a prolonged refusal to comply.

**E. A jury could reject Defendants' assault and resisting-arrest theories.**

Defendants' assault theory depends on the same disputed facts. Defendants contend that Plaintiff pushed or leaned into Baisch during the backward escort. But Plaintiff's position is that any body contact occurred only after Baisch initiated force by pushing him backward. CSOF ¶¶ 42, 44. A jury could find that Plaintiff did not assault Baisch, but instead reacted physically to being shoved or forced backward.

The resisting-arrest theory is similarly disputed. Plaintiff disputes that he refused to give up his arms or physically resisted. CSOF ¶ 53. He also disputes that he "kept physically resisting." CSOF ¶ 54. Plaintiff further disputes that any attempt to get up constituted criminal resistance. CSOF ¶ 55.

Defendants also rely on Plaintiff standing up after Baisch told him to "stay there." But the record again permits a different inference. Baisch ordered Plaintiff to "stay there," then turned and began walking away. PSOF ¶ 37. Plaintiff then stood up and asked: "What's your badge number? Badge number, officer." PSOF ¶ 38. Baisch testified that he was unable to see the way Plaintiff stood up after being ordered to "stay there." PSOF ¶ 39. Five seconds after the "stay there" command, Baisch turned, faced Plaintiff for approximately one second, and informed Plaintiff he was under arrest. PSOF ¶ 40.

A jury could find that Plaintiff was not charging at Baisch, threatening him, or interfering with the officers. Plaintiff disputes that he "disregarded" a lawful command or "headed straight" for Baisch in a threatening manner. On Plaintiff's version of the facts, that is not probable cause for arrest as a matter of law.

**F. Defendants' cited cases do not eliminate the factual disputes here.**

Defendants rely on cases involving plaintiffs who refused commands and actually interfered with police activity. But those cases do not establish probable cause where the key facts are disputed. Here, a jury could find Plaintiff was not physically interfering, complied with Kinnell's instruction to move to the corner, stood behind a fence-line corner, was approximately six feet away, was not identified to Baisch by any officer as disruptive, and was pushed within seconds of Baisch's arrival. PSOF ¶¶ 4, 6–17.

That factual record distinguishes this case from one where a plaintiff plainly obstructed officers or refused repeated clear commands over a meaningful period. Defendants' cases may help them at trial if a jury accepts their view of the facts, but they do not entitle Defendants to summary judgment.

Because those factual disputes are material to probable cause, Defendants are not entitled to summary judgment on Plaintiff's false arrest or unreasonable seizure claims.

## II. Defendants Are Not Entitled to Summary Judgment on Plaintiff's First Amendment Claims.

Defendants' First Amendment argument depends on two flawed premises. First, Defendants try to reduce Plaintiff's First Amendment claims to a retaliatory-arrest claim only. Second, Defendants argue that the claim fails because Baisch had probable cause and because Plaintiff cannot prove retaliatory motive. Both arguments depend on Defendants' disputed version of the facts.

Plaintiff's First Amendment claim is not limited to the final arrest. It also concerns Baisch's interference with Plaintiff's right to record, observe, ask questions, and gather information about police activity in public.

The Ninth Circuit has recognized that the First Amendment protects the right to record police officers performing their duties in public. *See Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018). Defendants do not get summary judgment merely by invoking officer safety or probable cause. A reasonable jury could find that Plaintiff was not actually interfering with the officers, that he was recording from a public place, and that Baisch interfered with that protected activity by stepping between Plaintiff's camera and the officers, pushing him backward, forcing him to the ground, arresting him, and removing his phone from his hand.

**A. Plaintiff's First Amendment claim is broader than retaliatory arrest.**

Defendants argue that Plaintiff has no separate First Amendment claim beyond retaliatory arrest. That framing is too narrow. Plaintiff's claim concerns not only the final arrest, but also the interference with his recording and newsgathering activity before and during the arrest.

The record supports that Plaintiff was engaged in protected activity. He was recording police activity, asking questions, and seeking officer identification. CSOF ¶¶ 9, 15, 50; PSOF ¶¶ 1–4, 23. Plaintiff also disputes Defendants' characterization that his questioning constituted unlawful interference. CSOF ¶¶ 9–10, 15. The facts support a First Amendment interference theory. An officer does not need to say "stop filming" to interfere with recording.

**B. Probable cause does not defeat the First Amendment claim because probable cause is disputed.**

Defendants rely heavily on Nieves and argue that probable cause defeats Plaintiff's First Amendment retaliation claim. But that argument fails at summary judgment because probable cause is disputed for the reasons addressed above.

A reasonable jury could find that Plaintiff was not interfering, was not threatening officers, and was not refusing a lawful command. The timing further supports Plaintiff. One-and-a-half seconds after Baisch placed himself between Plaintiff and the arrest, Baisch commanded Plaintiff to "get back," and Plaintiff responded that he was "six feet." PSOF ¶ 23. One second after Plaintiff responded "six feet," Baisch began pushing Plaintiff farther back from the scene. PSOF ¶ 26.

On those facts, a jury could find that Plaintiff did not refuse a lawful order before Baisch used force. A jury could also find that the alleged basis for the arrest — failure to comply — was not supported by probable cause.

### C. A reasonable jury could find Plaintiff's protected activity was a substantial or motivating factor.

Defendants argue there is no evidence that Plaintiff's speech or recording motivated Baisch's conduct. But a jury may infer motive from the timing, sequence, and nature of the interaction.

Here, the protected activity and adverse action were closely connected. Within approximately nineteen seconds of Baisch's arrival, Baisch had forced Plaintiff backward, forced him to the ground, ordered him to "stay there," turned away, turned back, and announced Plaintiff was under arrest. PSOF ¶ 23-40. When Plaintiff asked why he was being arrested, Baisch stated it was because Plaintiff was "failing to comply."

PSOF ¶ 42. A jury could find that explanation pretextual.

Those facts are enough for a jury to decide whether Plaintiff's protected activity was a substantial or motivating factor in Baisch's use of force and arrest.

**D. Defendants' reliance on Heap's non-arrest does not defeat the claim.**

Defendants argue that Baisch did not retaliate against Plaintiff because Heap also recorded and was not arrested. That evidence may be relevant, but it does not entitle Defendants to summary judgment.

The issue is not whether every person recording was arrested. The issue is whether Baisch interfered with Plaintiff's protected activity because of Plaintiff's own recording, questioning, assertion of distance, and request for identifying information.

Heap's non-arrest does not prove that Baisch's conduct toward Plaintiff was unrelated to Plaintiff's First Amendment activity. A reasonable jury could distinguish Heap's role from Plaintiff's and still find that Plaintiff's own protected conduct was a substantial or motivating factor.

**E. Defendants are not entitled to summary judgment on any retaliatory-force theory.**

Defendants also argue that, to the extent Plaintiff claims the use of force was retaliatory, that claim fails because retaliation did not motivate the force. That argument again depends on Defendants' disputed version of the facts.

Plaintiff disputes that he refused to comply, pushed against Baisch in an assaultive or criminal way, or leaned into Baisch. CSOF ¶¶ 37, 42, 44. Plaintiff also disputes that Baisch was justified in forcing him to the ground. CSOF ¶ 43. Plaintiff's claim concerns

Baisch's decision to shove Plaintiff, remove him from the fence, grab his head, force him to the ground, and then force him down again. CSOF ¶ 57.

A jury could find that the force used by Baisch was not merely a neutral safety response, but a reaction to Plaintiff's protected recording and questioning. At minimum, the motive for Baisch's use of force depends on disputed facts and credibility determinations that cannot be resolved on summary judgment.

### F. Summary judgment should be denied on the First Amendment claims.

Plaintiff was engaged in protected activity by recording police officers, asking questions, and requesting identifying information. A reasonable jury could find that Baisch interfered with that activity by stepping between Plaintiff's camera and the officers, pushing Plaintiff backward, forcing him to the ground, arresting him, and removing his phone from his hand. PSOF ¶¶ 1–4, 7, 12–14, 23–26, 33–35.

Defendants' contrary argument depends on disputed facts: that Plaintiff was interfering, refusing commands, threatening officers, and resisting. Plaintiff disputes those facts. CSOF ¶¶ 9–11, 14–15, 34, 37–44, 47–58, 72. Because a jury could find that Baisch interfered with and retaliated against Plaintiff for protected First Amendment activity, summary judgment should be denied on Plaintiff's First Amendment claims.

## III. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Excessive Force Claim.

Defendants argue that Officer Baisch's force was reasonable because it was "minimal" and because Plaintiff allegedly refused commands, resisted, and created an officer-safety concern. But that argument depends on Defendants' disputed version of the

facts. A reasonable jury could find that Plaintiff was recording from a public sidewalk, was not physically interfering with the officers, was not given a meaningful opportunity to comply, and was subjected to unnecessary force within seconds of Baisch's arrival.

The excessive-force inquiry turns on the totality of the circumstances, and here, those facts are disputed. Plaintiff does not merely challenge the amount of force in the abstract. He challenges Baisch's decision to shove him backward, remove him from the fence, grab his head, force him to the ground, and force him down again. CSOF ¶ 57.

**A. A jury could find the backward escort unreasonable.**

Defendants first argue that Baisch's backward escort was a minimal use of force. But even low-level force can be unreasonable when the need for force is disputed or minimal. The issue is not whether Baisch used the most severe force available. The issue is whether it was reasonable to use force at all, viewing the facts in Plaintiff's favor.

The evidence undercuts Defendants' claim that force was necessary to address an immediate threat. Baisch testified that he "did not know" whether Plaintiff appeared to be a threat when he arrived. CSOF ¶ 34; PSOF ¶ 22. And Plaintiff disputes that Baisch's safety concerns were objectively reasonable as applied to Plaintiff. CSOF ¶ 35.

The timing is also critical. One-and-a-half seconds after Baisch placed himself between Plaintiff and the arrest, Baisch commanded Plaintiff to "get back," and Plaintiff responded that he was "six feet." PSOF ¶ 23. Baisch testified that he did not understand Plaintiff's "six feet" statement as a verbal expression of disobedience. CSOF ¶ 38; PSOF ¶ 24. One second after Plaintiff responded "six feet," Baisch began pushing Plaintiff backward. PSOF ¶ 26. A jury could find from this evidence that Baisch escalated too

quickly.

Defendants' argument asks the Court to accept that Plaintiff's failure to move instantly justified force. But a reasonable jury could find that Plaintiff was not given enough time to comply, was not clearly told where to go, and had already stepped backward. On Plaintiff's version of the facts, the backward escort was not a reasonable safety measure; it was an unnecessary escalation.

**B. A jury could find Baisch's decision to force Plaintiff to the ground unreasonable.**

Defendants next argue that Baisch used only minimal force when he removed Plaintiff from the fence and placed his hand on Plaintiff's head to force him to the ground. That argument again depends on Defendants' disputed characterization of Plaintiff's conduct as resistance. Plaintiff disputes Defendants' claim that he "pushed against" Baisch in an assaultive or criminal way. CSOF ¶ 42. After being pushed backward, Plaintiff grabbed the fence to stabilize himself. PSOF ¶ 33. A jury could reject Defendants' claim that Plaintiff's contact with the fence or with Baisch justified further escalation and instead find that Plaintiff's movements were reactions to being unexpectedly pushed backward, not active resistance.

That distinction matters. Defendants cannot create the need for greater force by initiating unnecessary force and then characterizing Plaintiff's reaction as resistance. If the backward escort was not justified, or if Plaintiff was not given a meaningful opportunity to comply before Baisch put hands on him, then a jury could also find that the later escalation to the ground was unreasonable.

### C. A jury could find the second takedown and handcuffing force unreasonable.

Defendants also argue that the later takedown and handcuffing force were reasonable because Plaintiff allegedly disregarded the "stay there" command, moved toward Baisch from behind, and resisted arrest. Again, those facts are disputed.

After Baisch forced Plaintiff to the ground, Baisch ordered Plaintiff to "stay there," then turned and began walking away. PSOF ¶ 37. Plaintiff then stood up and asked, "What's your badge number? Badge number, officer." PSOF ¶ 38. Baisch testified that he was unable to see the way Plaintiff stood up after being ordered to stay there. PSOF ¶ 39. Five seconds after issuing the "stay there" command, Baisch turned, faced Plaintiff for about one second, and informed Plaintiff he was under arrest. PSOF ¶ 40.

A reasonable jury could view that sequence very differently than Defendants do. Plaintiff disputes that he "disregarded" a lawful command or "headed straight" for Baisch in a threatening manner. CSOF ¶ 47. Plaintiff also disputes that he was threatening Baisch, interfering with the arrest, or approaching Baisch. CSOF ¶ 48. Plaintiff's position is that he stood up after being forced to the ground and asked for identifying information, not that he advanced on Baisch or interfered with the officers. CSOF ¶ 50.

Those disputes matter because the "most important" Graham factor is whether Plaintiff posed an immediate threat. If Plaintiff was simply standing up after being forced to the ground and asking for Baisch's badge number, a jury could find that he did not pose an immediate threat requiring another takedown or additional force.

The handcuffing struggle is also disputed. Plaintiff disputes Defendants'

characterization that he refused to give up his arms or physically resisted in a way that supplied probable cause. CSOF ¶ 53. Plaintiff disputes that he "kept physically resisting," and contends that any physical response occurred after Baisch had already used force and announced an arrest unsupported by probable cause. CSOF ¶ 54. Plaintiff also disputes that any attempt to get up constituted criminal resistance. CSOF ¶ 55.

### D. The Graham factors do not support summary judgment when the facts are viewed in Plaintiff's favor.

The Graham factors do not entitle Defendants to summary judgment. First, the severity of the suspected offense was low. Defendants' theory is that Plaintiff failed to move back quickly enough, failed to comply with a distance command, or resisted after Baisch initiated force. But a jury could find that Plaintiff did not commit any offense before force was used.

Second, a jury could find Plaintiff posed no immediate threat. Baisch testified that he "did not know" whether Plaintiff appeared to be a threat when he arrived. CSOF ¶ 34; PSOF ¶ 22. Plaintiff also disputes that he threatened Baisch, interfered with the arrest, or approached Baisch after standing up. CSOF ¶¶ 47–50.

Third, a jury could find Plaintiff was not actively resisting. Plaintiff disputes that he refused to comply, disputes that he pushed against Baisch in a criminal or assaultive way, disputes that he refused to give up his arms, and disputes that any attempt to get up constituted criminal resistance. CSOF ¶¶ 37, 42, 53–55.

### E. Summary judgment should be denied on excessive force.

Defendants' excessive-force argument depends on resolving disputed facts in their

favor. They ask the Court to accept that Plaintiff refused commands, physically resisted, pushed Baisch, grabbed the fence to prevent movement, stood up in a threatening manner, and resisted arrest. Plaintiff disputes those facts. CSOF ¶¶ 37, 40–44, 47–55, 57, 62.

A reasonable jury could find instead that Baisch escalated almost immediately against a person recording from a public sidewalk, pushed him backward one second after he stated he was six feet away, forced him to the ground, arrested him after he stood up and asked for a badge number, and then forced him down again. PSOF ¶¶ 7–14, 22–26, 33-40.

Because the reasonableness of the force depends on disputed facts about threat, resistance, compliance, timing, and necessity, Defendants are not entitled to summary judgment on Plaintiff's excessive-force claim.

## IV. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Monell Claims.

Defendants argue that Plaintiff's Monell claims fail because there was no underlying constitutional violation and because the City maintained policies and training on use of force, media relations, and recording police activity. But summary judgment is improper for two reasons. First, as explained above, a reasonable jury could find that Baisch violated Plaintiff's First and Fourth Amendment rights. Second, the record permits a jury to find that the City's policies, training, and post-incident approval were inadequate as applied to the recurring situation at issue here: members of the public recording police activity, asking questions, and being ordered to move based on asserted

interference or safety concerns.

Defendants rely heavily on the existence of general policies and training. But the mere existence of policies does not resolve whether the City adequately trained officers on the specific constitutional problem presented here: how to distinguish protected recording and questioning from actual interference, how to issue lawful and clear distance commands, and when force may be used against a person recording police activity. Plaintiff disputes that the City's general policies and training adequately addressed those issues. CSOF ¶¶ 74–81, 86.

**A. The Monell claims do not fail for lack of an underlying constitutional violation.**

Defendants first argue that the Monell claims fail because Plaintiff cannot establish an underlying constitutional violation. That argument fails for the same reasons Defendants' individual-liability arguments fail. A reasonable jury could find that Baisch lacked probable cause, interfered with Plaintiff's First Amendment activity, and used excessive force.

**B. A jury could find the City's policies and training were inadequate as applied to public recording and interference.**

Defendants argue that the City had use-of-force policies, a Media Relations Policy, a First Amendment recording directive, AZPOST training, and additional Yuma training. Plaintiff does not dispute that those policies and trainings existed. But Plaintiff disputes that the existence of general policies and training establishes adequate training on public recording, interference, lawful distance commands, or the difference between

protected questioning and obstruction. CSOF ¶ 74.

That distinction matters. The issue is not whether YPD had any policies. The issue is whether the City adequately trained officers on the specific recurring constitutional problem at issue in this case. The City knew officers would encounter people recording police activity. Chief Garrity testified that YPD issued a directive to provide guidance to officers encountering individuals recording police activity, and that the directive was issued in response to individuals conducting what the Department referred to as "First Amendment audits." PSOF ¶¶ 54-56.

A jury could find that this known recurring issue required more specific guidance than the City provided. Plaintiff disputes that Media Relations Policy 1.12 adequately trained officers on the rights of members of the public to record police activity. CSOF ¶ 75. Plaintiff also disputes that the policy gave adequate guidance on what constitutes interference, how far a person recording police must stand, or when an officer may order a person to move. CSOF ¶ 76.

The City's First Amendment directive likewise does not entitle Defendants to summary judgment. Plaintiff does not dispute that the City had a directive regarding recording police activity and the First Amendment, or that the directive recognized some right to record police. But Plaintiff disputes that the directive was sufficient or that it "comprehensively" explained how officers should handle people recording police activity. CSOF ¶¶ 78, 80.

**C. The later-adopted policy supports an inference that the prior directive was insufficient.**

The record also supports an inference that the City itself recognized the prior directive was inadequate. Chief Garrity testified that the later-adopted recording-police policy "goes beyond" the prior directive. PSOF ¶ 56. He also testified that officers are trained on policies before those policies are implemented, and that he directed that a policy governing recording police activity be developed. PSOF ¶¶ 56-58.

Those facts are significant. Defendants argue that the prior directive "comprehensively" explained how officers should handle people recording police activity. But the jury could view the later policy differently. If the later policy "goes beyond" the prior directive, and if Chief Garrity directed that a policy governing recording police activity be developed, a jury could infer that the prior directive did not provide adequate operational guidance.

Plaintiff is not arguing that the later policy itself proves liability. The point is narrower: Defendants are not entitled to summary judgment merely by pointing to the existence of the prior directive. The adequacy of that directive is disputed, and the later development of a more specific policy supports Plaintiff's position that the City's earlier guidance was insufficient.

**D. General training and minimum standards do not resolve whether the City trained officers on the specific constitutional issue.**

Defendants also rely on general AZPOST and YPD training. But general training does not necessarily resolve whether officers were adequately trained on public recording, interference, lawful distance commands, and protected questioning. Plaintiff disputes that Defendants have shown adequate training specific to those issues. CSOF ¶

81.

**E. The City's post-incident approval supports ratification.**

Defendants argue there is no evidence of ratification because Chief Garrity's post-incident approval was merely a statement after review. But the record supports more than a failure to discipline. Chief Garrity reviewed the incident and internal investigation and concluded that Officer Baisch's conduct was reasonable and within policy. PSOF ¶ 59. Chief Garrity also testified that, after reviewing the incident, "the force appears reasonable and within policy." PSOF ¶ 60.

Plaintiff also disputes that Baisch's actions were properly within policy, and notes that Chief Garrity concluded Baisch's conduct was reasonable and within policy after reviewing the incident. CSOF ¶ 88. That matters because the alleged ratification was not simply silence or inaction. A final policymaker reviewed the incident and approved Baisch's conduct as reasonable and consistent with City policy.

If a jury finds that Baisch violated Plaintiff's First or Fourth Amendment rights, then Chief Garrity's approval supports a finding that the City endorsed both the conduct and the basis for it. That is particularly important because Defendants themselves argue that Baisch acted consistently with City policy. If the conduct was unconstitutional but still "within policy," a jury could reasonably find that the policy, training, or ratification caused the violation.

**F. Summary judgment should be denied on the Monell claims.**

The Monell claims should survive because the record supports triable issues on underlying constitutional violations, inadequate training or policy, and ratification.

Plaintiff disputes that the City's general policies and training adequately addressed public recording, interference, lawful distance commands, or the distinction between protected questioning and obstruction. CSOF ¶¶ 74–81, 86. The record also supports that YPD issued a directive because it knew officers were encountering people recording police activity, that the later recording-police policy went beyond the prior directive, and that Chief Garrity directed development of that policy. PSOF ¶¶ 54-58. Finally, Chief Garrity reviewed the incident and concluded that Baisch's conduct was reasonable and within policy. PSOF ¶¶ 54-58.

Viewed in Plaintiff's favor, a jury could find that the City's policy and training were inadequate for a known and recurring First Amendment issue, and that the City ratified Baisch's conduct after the fact. Defendants are therefore not entitled to summary judgment on Plaintiff's Monell claims.

**V. Officer Baisch Is Not Entitled to Qualified Immunity.**

Officer Baisch is not entitled to qualified immunity because Defendants' argument depends on resolving disputed facts in their favor. Defendants frame the issue as whether an officer may move or arrest a person who refuses lawful commands and interferes with an active arrest. But that is not Plaintiff's version of the facts.

Viewed in Plaintiff's favor, Plaintiff was recording police activity from a public sidewalk, had complied with Officer Kinnell's earlier command to move to the corner, and was separated from the officers by the corner of the sidewalk and fence. PSOF ¶¶ 1–6. More than a minute later, Baisch arrived, stepped between Plaintiff's camera and the officers, and no officer had told Baisch that Plaintiff was disruptive, posed a concern, or

had interfered with Kinnell's arrest. PSOF ¶¶ 17–18. Plaintiff then stepped backward, away from the arrest and Baisch. PSOF ¶ 19. The record also supports an inference that Plaintiff was approximately six feet away when Baisch arrived. PSOF ¶ 20.

Baisch then escalated within seconds. One-and-a-half seconds after placing himself between Plaintiff and the arrest, Baisch ordered Plaintiff to "get back." Plaintiff responded that he was "six feet," which Baisch testified he did not understand as a verbal expression of disobedience. PSOF ¶¶ 23-24. One second later, Baisch began pushing Plaintiff backward. PSOF ¶ 26. Plaintiff disputes that he refused to comply, pushed Baisch in a criminal or assaultive way, threatened Baisch, approached Baisch, or resisted in a way that supplied probable cause. CSOF ¶¶ 37, 42, 44, 47–50, 53–55.

On Plaintiff's version of the facts, this was not an arrest of a person who was plainly obstructing officers or refusing repeated lawful commands. It was the seizure, use of force, and arrest of a person recording police activity in public who was not actually interfering and was not given a meaningful opportunity to comply. The Ninth Circuit clearly established before this incident that the First Amendment protects the right to record police officers performing their duties in public. *See Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018). It was also clearly established that an officer may not arrest a person without probable cause or use unreasonable force under the Fourth Amendment.

Defendants define the right too narrowly by assuming that Plaintiff was interfering, refusing commands, and creating an officer-safety threat. But those are disputed facts. Because a jury could find that Baisch violated Plaintiff's clearly

established First and Fourth Amendment rights, and because qualified immunity cannot be granted by accepting Defendants' disputed version of the encounter, summary judgment should be denied.

## VI. Conclusion

Based on the foregoing, Plaintiff Lucas Mullikin respectfully requests that this Court deny Defendants City of Yuma and Officer James Baisch's Motion for Summary Judgment. Plaintiff further requests that the Court allow his claims to proceed to trial because genuine disputes of material fact remain regarding Defendants' interference with Plaintiff's First Amendment rights, the existence of probable cause, the reasonableness of the force used, qualified immunity, and municipal liability.

DATED this 15th day of May, 2026.

Respectfully submitted,

/s/ Gregg P. Leslie
Gregg P. Leslie
Justin Dutrisac
ASU Sandra Day O'Connor College of Law
First Amendment Clinic,
Public Interest Law Firm
*Attorneys for Plaintiff Lucas Mullikin*