**ASU Sandra Day O'Connor College of Law**
**First Amendment Clinic, Public Interest Law Firm**
Gregg P. Leslie, Gregg.Leslie@asu.edu,* (AZ Bar # 035040)
Justin Dutrisac, jdutrisa@asu.edu**
First Amendment Clinic, Public Interest Law Firm
Arizona State University Sandra Day O'Connor College of Law
111 E. Taylor St., Mail Code: 8820
Phoenix, AZ 85004
(480) 727-7398
* Supervising attorney pursuant to Ariz. R. Sup. Ct. 39(c)
** Certified limited practice student pursuant to Ariz. R. Sup. Ct. 39(c)
*Attorneys for Plaintiff Lucas Mullikin*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| LUCAS MULLIKIN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF YUMA,<br>JAMES BAISCH, in his personal capacity<br><br>Defendants. | No. 2:25-cv-00637-ROS-JZB<br><br>**PLAINTIFFS CONTROVERTING STATEMENT OF FACTS** |

Plaintiff Lucas Mullikin submits this Controverting Statement of Facts ("PCSOF") pursuant to Fed. R. Civ. P. 56 and LRCiv 56.1(b). Plaintiff responds to Defendants' separately filed Statement of Facts in support of their Motion for Summary Judgment and incorporates by reference Plaintiff's Separate Statement of Facts and the record evidence cited therein. Many of Defendants' asserted facts are undisputed only as general background, while others rely on disputed characterizations of the video evidence, deposition testimony, and reasonable inferences from the record. In particular, Defendants repeatedly characterize Plaintiff's protected recording activity as interference,

noncompliance, threat, or resistance, even though the record supports that Plaintiff was recording from a public place, stepped back when directed, and was subjected to force and arrest within seconds of Officer Baisch's arrival. Accordingly, genuine disputes of material fact preclude summary judgment for Defendants.[1]

**1. Undisputed.**

**2. Undisputed.**

**3. Undisputed.**

**4. Undisputed.**

**5. Undisputed.**

**6. Undisputed.**

**7. Undisputed**.

**8. Undisputed.**

**9. Disputed in part.** Plaintiff does not dispute that he asked Officer Kinnell questions, including about the basis for Bermudez's detention and Kinnell's badge number. Plaintiff disputes Defendants' argumentative characterization that he "interjected himself" or "peppered" Kinnell in a way that constituted unlawful interference. Plaintiff's questioning was part of his recording and newsgathering activity.

**10. Undisputed in part.** Plaintiff does not dispute that Officer Kinnell responded to

---

[1] Defendants may not defeat Plaintiff's Motion by manufacturing disputes through argumentative characterizations of the video. Nor may Defendants obtain summary judgment by relying on those same characterizations as undisputed facts. The material facts supporting Plaintiff's Motion are not genuinely disputed; the disputes Defendants identify either concern immaterial details or require inferences that no reasonable jury could draw from the record. By contrast, Defendants' Motion depends on disputed inferences that must be resolved by a jury.

some of Plaintiff's questions. Plaintiff disputes any implication that those questions prevented Kinnell from performing his duties.

**11. Disputed in part.** Plaintiff does not dispute that Officer Kinnell told Plaintiff and Heap to back up. Plaintiff disputes that he was physically interfering with Kinnell. Plaintiff's facts show that when Kinnell later commanded him to "back up right now, go over to the corner," Plaintiff complied, stepped back, and stated that he would wait there while identifying himself as a journalist. [Ex. 1, Kinnell Bodycam #1 at 02:29-02:36; see Ex. 3, Mullikin Recording at 00:34-00:41]

**12. Undisputed.**

**13. Undisputed in part.** Plaintiff does not dispute that he stated he was six feet away. Plaintiff disputes that this statement was a criminal refusal to comply.

**14. Disputed in part.** Plaintiff disputes Defendants' characterization that he "refused to comply" or "only took tiny steps."

**15. Disputed in part.** Plaintiff does not dispute that he continued asking questions. Plaintiff disputes that his questions or his recording constituted physical interference.

**16. Undisputed.**

**17. Disputed in part.** Plaintiff disputes Defendants' use of this distance characterization to imply unlawful interference.

**18. Undisputed.**

**19. Undisputed.**

**20. Undisputed.**

**21. Undisputed.**

**22. Undisputed in part.** Plaintiff does not dispute that Kinnell's call for backup used urgent language. Plaintiff disputes any implication that he surrounded Kinnell or created an objective threat to officer safety.

**23. Undisputed.**

**24. Undisputed.**

**25. Undisputed.**

**26. Undisputed in part.** Plaintiff does not dispute that a passerby called 911. Plaintiff disputes any implication that the passerby's characterization establishes that Plaintiff unlawfully interfered or that he surrounded Kinnell.

**27. Undisputed.**

**28. Undisputed.**

**29. Undisputed.**

**30. Undisputed**.

**31. Undisputed**

**32. Disputed in part.** Plaintiff disputes that he was "very close" in a way that justified immediate force.

**33. Disputed.** Plaintiff disputes that Baisch necessarily had to kneel only a couple feet in front of Plaintiff or that Plaintiff blocked Baisch from assisting.

**34. Disputed in part.** Plaintiff does not dispute that Baisch later claimed a safety concern. Plaintiff disputes that Plaintiff posed an objective striking threat. Baisch testified that he "did not know" whether Plaintiff appeared to be a threat as he arrived on the scene. [Ex. 6, Baisch Dep. Tr. at 170:25]

**35. Undisputed in part.** Plaintiff does not dispute that Baisch testified he had safety concerns. Plaintiff disputes that those concerns were objectively reasonable as applied to Plaintiff.

**36. Undisputed.**

**37. Disputed.** Plaintiff disputes that he refused to comply.

**38. Undisputed in part.** Plaintiff does not dispute that he said "six feet." Plaintiff disputes that this statement was a refusal to comply. Baisch testified he did not understand Plaintiff's "six feet" statement as a verbal expression of disobedience. [Ex. 6, Baisch Dep. Tr. at 186:2-23].

**39. Undisputed in part.** Plaintiff does not dispute that Heap made a statement about the distance. Plaintiff does not know why Heap made that statement and disputes any inference that it establishes Plaintiff was interfering, refusing to comply, or standing at an unlawful distance.

**40. Disputed.** Plaintiff disputes that Baisch could not assist because Plaintiff refused to maintain a reasonable distance.

**41. Disputed in part.** Plaintiff does not dispute that Baisch placed hands on him and moved him backward. Plaintiff disputes that Plaintiff refused to comply or that the force was justified.

**42. Disputed in part.** Plaintiff disputes Defendants' characterization that he "pushed against" Baisch in an assaultive or criminal way.

**43. Disputed.** Plaintiff disputes that Baisch was justified in forcing him to the ground.

**44. Disputed in part.** Plaintiff disputes that he pushed or leaned against Baisch. To the

extent there was body contact, Plaintiff contends it occurred only after Baisch initiated physical force by shoving him backward.

**45. Undisputed.**

**46. Undisputed.**

**47. Disputed.** Plaintiff disputes that he "disregarded" a lawful command or "headed straight" for Baisch in a threatening manner. Plaintiff stood up and asked, "What's your badge number? Badge number, officer." [Ex. 3, Mullikin Recording at 03:36-03:39; Ex. 5, Baisch Bodycam at 02:06-

09]. Baisch was unable to see the way Plaintiff stood up after being ordered to "stay there." [Ex. 6, Baisch Dep. Tr. at 326:24-327:14].

**48. Undisputed in part.** Plaintiff does not dispute that Baisch says he noticed Plaintiff in his periphery. Plaintiff disputes that Plaintiff was threatening Baisch, interfering with the arrest, or approaching Baisch.

**49. Disputed.** Plaintiff disputes that Baisch had probable cause for failure to comply, assault, or resisting arrest.

**50. Disputed in part.** Plaintiff does not dispute that he asked for Officer Baisch's name and badge number. Plaintiff disputes Defendants' characterization that he was "moving toward" Officer Baisch in a threatening or obstructive manner. Plaintiff's position is that he stood up after being forced to the ground and asked for identifying information, not that he advanced on Baisch or interfered with the officers.

**51. Undisputed in part.** Plaintiff does not dispute that Baisch testified he does not remember hearing the question. Plaintiff disputes any implication that the question was

not asked.

**52. Undisputed**

**53. Disputed.** Plaintiff disputes Defendants' characterization that he refused to give up his arms or physically resisted in a way that supplied probable cause.

**54. Disputed.** Plaintiff disputes that he "kept physically resisting." Plaintiff contends that any physical response occurred after Baisch had already used force and announced an arrest unsupported by probable cause.

**55. Disputed in part.** Plaintiff disputes that any attempt to get up constituted criminal resistance.

**56. Undisputed.**

**57. Undisputed in part.** Plaintiff does not dispute that Baisch did not use a taser, chemical spray, strike, or similar weapon. Plaintiff disputes that this establishes the force used was reasonable. Plaintiff's claim concerns, among other things, Baisch's decision to shove Plaintiff, remove him from the fence, grab his head, force him to the ground, and then force him down again.

**58. Undisputed in part.** Plaintiff does not dispute that his phone was eventually placed down. Plaintiff disputes any implication that Baisch did not interfere with Plaintiff's recording activity.

**59. Undisputed.**

**60. Undisputed in part.** Plaintiff does not dispute that he was charged with violating Yuma Code of Ordinances § 111-04 and A.R.S. § 13-2508(A)(3). Plaintiff disputes that probable cause existed for either charge.

**61. Undisputed.**

**62. Undisputed in part.** Plaintiff does not dispute that he sustained scrapes. Plaintiff disputes any implication that the injuries were legally insignificant or that the force was reasonable.

**63. Undisputed.**

**64. Undisputed.**

**65. Undisputed.**

**66. Undisputed.**

**67. Undisputed.**

**68. Undisputed.**

**69. Undisputed.**

**70. Undisputed in part.** Plaintiff does not dispute that another witness was present and was not arrested. Plaintiff disputes Defendants' characterization that the witness was not arrested because he "stayed away from officers." Plaintiff lacks sufficient information to admit why that witness was not arrested and disputes any inference that the witness's non-arrest establishes that Plaintiff's arrest was lawful.

**71. Disputed.** Plaintiff disputes Baisch's after-the-fact assertion that he would not have arrested Plaintiff but for Plaintiff standing up.

**72. Undisputed in part.** Plaintiff does not dispute that Officer Baisch testified he was not aware Plaintiff was a journalist. Plaintiff disputes Defendants' assertion that this fact "would not have changed anything" or that Plaintiff had "still committed a crime." Those are legal conclusions. Plaintiff also disputes any implication that the First Amendment

protection at issue depended on Baisch knowing Plaintiff was a journalist. The right to record police activity applies to members of the public, not only credentialed journalists. Plaintiff further disputes that Baisch's claimed lack of knowledge defeats the retaliation claim, because the record supports that Baisch knew Plaintiff was recording, immediately placed himself between Plaintiff's camera and the officers, and then used force and arrested Plaintiff within seconds.

**73. Undisputed.**

**74. Undisputed in part.** Plaintiff does not dispute that the City maintains policies and training on use of force. Plaintiff disputes that the existence of general policies and training establishes adequate training on public recording, interference, lawful distance commands, or the difference between protected questioning and obstruction.

**75. Undisputed in part.** Plaintiff does not dispute that the City maintained Media Relations Policy 1.12. Plaintiff disputes that this policy adequately trained officers on the rights of members of the public to record police activity.

**76. Undisputed in part.** Plaintiff does not dispute that Policy 1.12 discusses media access and established perimeters. Plaintiff disputes that this policy gave adequate guidance on what constitutes interference, how far a person recording police must stand, or when an officer may order a person to move.

**77. Undisputed.**

**78. Undisputed in part.** Plaintiff does not dispute that the City had a directive regarding recording police activity and the First Amendment. Plaintiff disputes that the directive was sufficient.

**79. Undisputed.**

**80. Disputed in part.** Plaintiff does not dispute that the directive recognized some right to record police. Plaintiff disputes that it "comprehensively" explained how officers should handle people recording police activity.

**81. Disputed in part.** Plaintiff does not dispute that officers receive some First Amendment training. Plaintiff disputes that Defendants have shown adequate training specific to public recording of police activity, interference, distance commands, or protected questioning.

**82. Undisputed.**

**83. Undisputed.**

**84. Undisputed.**

**85. Undisputed.**

**86. Disputed in part.** Plaintiff does not dispute that Plaintiff's expert acknowledged certain minimum training standards. Plaintiff disputes that general training standards establish that Baisch's conduct was constitutional or that the City adequately trained officers on public recording and interference.

**87. Undisputed in part.** Plaintiff does not dispute that Baisch had not previously been disciplined for relevant uses of force or First Amendment activity. Plaintiff disputes that lack of prior discipline proves his conduct here was lawful.

**88. Disputed.** Plaintiff disputes that Baisch's actions were properly within policy. This is a disputed conclusion, not a neutral fact. Plaintiff does not dispute that Chief Garrity concluded Baisch's conduct was reasonable and within policy after reviewing the

incident.

**89. Undisputed in part.** Plaintiff does not dispute that YPD released a video after the incident. Plaintiff disputes any implication that the video was complete, neutral, or sufficient to establish that Baisch's conduct was lawful.

**Plaintiff's Separate Statement of Additional Facts**

1. Plaintiff arrived shortly after Officer Kinnell began detaining Bermudez and began recording the encounter.

[Ex. 1, Kinnell Bodycam at 00:30, 01:05, 01:30.]

2. Plaintiff asked Officer Kinnell for his badge number, and Kinnell provided it.

[Ex. 1, Kinnell Bodycam at 01:30.]

3. Plaintiff continued to ask questions about Bermudez's detention, including what Bermudez had done wrong, why he was being arrested, and Kinnell's badge number.

[Ex. 3, Mullikin Recording at 00:02–00:30.]

4. When Kinnell commanded Plaintiff to "back up right now, go over to the corner," Plaintiff complied, stepped back from Kinnell, and identified himself as a journalist.

[Ex. 4, Heap Recording #1 at 00:06–00:12; Ex. 1, Kinnell Bodycam #1 at 02:29–02:36; Ex. 3, Mullikin Recording at 00:34–00:44.]

5. Bermudez fell closer to Plaintiff because of Bermudez's resistance, not because of any action by Plaintiff.

[Ex. 4, Heap Recording #1 at 00:01–00:05.]

6. Kinnell and Bermudez crossed the corner of the sidewalk and fence, creating a 90-degree barrier of separation between them and Plaintiff.

[Ex. 1, Kinnell Bodycam #1 at 03:35–03:55; Ex. 3, Mullikin Recording at 01:50–01:55.]

7. More than a minute later, Baisch arrived and stepped between Plaintiff, whose phone was pointed toward the officers, and the officers attempting to unbind Bermudez.

[Ex. 5, Baisch Bodycam at 01:52–01:54; Ex. 3, Mullikin Recording at 03:19–03:21; Ex. 9, Heap Recording #3 at 01:20–01:22.]

8. Before Baisch contacted Plaintiff, no officer told Baisch that Plaintiff was disruptive, posed a concern, or had interfered with Kinnell's arrest.

[Ex. 6, Baisch Dep. Tr. at 178:24–180:22.]

9. When Baisch placed himself between Plaintiff and the arrest, Plaintiff took a step backward, away from the arrest and Baisch.

[Ex. 9, Heap Recording #3 at 01:19–01:22.]

10. The record supports an inference that Plaintiff was approximately six feet away from the arrest when Baisch arrived.

[Ex. 9, Heap Recording #3 at 01:19–01:22; Ex. 2, Mullikin Dep. Tr. at 146:1–16; Ex. 5, Baisch Bodycam at 01:47–01:51.]

11. Baisch testified that he "did not know" whether Plaintiff appeared to be a threat when he arrived.

[Ex. 6, Baisch Dep. Tr. at 170:25.]

12. One-and-a-half seconds after Baisch placed himself between Plaintiff and the arrest, Baisch commanded Plaintiff to "get back," and Plaintiff responded that he was "six feet."

[Ex. 9, Heap Recording #3 at 01:20–01:22; Ex. 3, Mullikin Recording at 03:19–03:21; Ex. 5, Baisch Bodycam at 01:52–01:54.]

13. Baisch testified that he did not understand Plaintiff's statement of "six feet" to be a verbal expression of disobedience.

[Ex. 6, Baisch Dep. Tr. at 186:2–23.]

14. One second after Plaintiff responded "six feet," Baisch began pushing Plaintiff farther back from the scene.

[Ex. 3, Mullikin Recording at 03:25–03:28; Ex. 9, Heap Recording #3 at 01:25–01:28; Ex. 5, Baisch Bodycam at 01:55–01:58.]

15. Baisch acknowledged that he could have given Plaintiff a destination, a distance to move, an explanation, or could have engaged further with Plaintiff, but did none of those things.

[Ex. 6, Baisch Dep. Tr. at 191:7–192:5.]

16. Baisch acknowledged that he could not simply tell Plaintiff to get back and immediately shove him, and that Plaintiff needed time to comply.

[Ex. 6, Baisch Dep. Tr. at 185:12–14.]

17. Baisch gave Plaintiff approximately one second to comply before pushing him backward.

[Ex. 3, Mullikin Recording at 03:25–03:28; Ex. 9, Heap Recording #3 at 01:25–01:28; Ex. 5, Baisch Bodycam at 01:55–01:58.]

18. After being pushed backward, Plaintiff grabbed the fence to stabilize himself.

[Ex. 2, Mullikin Dep. Tr. at 157:2–6; Ex. 9, Heap Recording #3 at 01:27–01:31.]

19. Baisch later claimed that Plaintiff's physical response supplied probable cause for the arrest.

[Ex. 6, Baisch Dep. Tr. at 211:4–13.]

20. Baisch removed Plaintiff from the fence and forced him to the ground by grabbing his head and pulling him down.

[Ex. 9, Heap Recording #3 at 01:30–01:32.]

21. While on the ground, Plaintiff stated that "it was six feet" and "I have not done anything wrong."

[Ex. 3, Mullikin Recording at 03:27–03:33; Ex. 5, Baisch Bodycam at 01:58–02:04.]

22. Baisch ordered Plaintiff to "stay there," then turned and began walking away.

[Ex. 3, Mullikin Recording at 03:27–03:33; Ex. 5, Baisch Bodycam at 02:04–02:05.]

23. Plaintiff stood up and asked: "What's your badge number? Badge number, officer."

[Ex. 3, Mullikin Recording at 03:36–03:39; Ex. 5, Baisch Bodycam at 02:06–02:09.]

24. Baisch testified that he was unable to see the way Plaintiff stood up after being ordered to "stay there."

[Ex. 6, Baisch Dep. Tr. at 326:24–327:14.]

25. Five seconds after issuing the "stay there" command, Baisch turned, faced Plaintiff for approximately one second, and informed Plaintiff he was under arrest.

[Ex. 3, Mullikin Recording at 03:38–03:39; Ex. 5, Baisch Bodycam at 02:09–02:10.]

26. The entire encounter from Baisch's arrival to the announcement of arrest lasted approximately nineteen seconds.

[Ex. 3, Mullikin Recording at 03:21–03:40; Ex. 5, Baisch Bodycam at 01:51–02:10.]

27. When Plaintiff asked why he was being arrested, Baisch stated it was because Plaintiff was "failing to comply."

[Ex. 3, Mullikin Recording at 03:40–03:43; Ex. 5, Baisch Bodycam at 02:10–02:13.]

28. Plaintiff attempted to call the Sergeant for assistance and held onto the fence.

[Ex. 3, Mullikin Recording at 03:42–03:44; Ex. 5, Baisch Bodycam at 02:12–02:19.]

29. Baisch forced Plaintiff to the ground a second time.

[Ex. 7, Heap Recording #2 at 00:01–00:05; Ex. 5, Baisch Bodycam at 02:20–02:24.]

30. While on the ground, Plaintiff stated: "I did nothing wrong. I'm a journalist. This is fucked up."

[Ex. 7, Heap Recording #2 at 00:01–00:05; Ex. 5, Baisch Bodycam at 02:20–02:24.]

31. Another officer arrived to assist Baisch in handcuffing Plaintiff.

[Ex. 5, Baisch Bodycam at 02:20–02:27; Ex. 7, Heap Recording #2 at 00:01–00:08.]

32. That officer stated, "you're not going to stand on top of us while we're working."

[Ex. 5, Baisch Bodycam at 02:27–02:29.]

33. Baisch began removing Plaintiff's phone from his left hand.

[Ex. 5, Baisch Bodycam at 02:29–02:37.]

34. Plaintiff asked the officers to let him set his phone down so it would not break.

[Ex. 5, Baisch Bodycam at 02:29–02:37.]

35. Plaintiff was handcuffed shortly after his phone was removed from his hand.

[Ex. 5, Baisch Bodycam at 02:39–02:49.]

36. Plaintiff told officers, "I wasn't trying. You can ask the officer. I wasn't mean. I wasn't cursing at him."

[Ex. 5, Baisch Bodycam at 02:35–02:40.]

37. Officers had Plaintiff fully detained about forty seconds after Baisch told him he was under arrest.

[Ex. 5, Baisch Bodycam at 02:09–02:49.]

38. Plaintiff was charged with violating Yuma Code of Ordinances § 111-04 and A.R.S. § 13-2508(A)(3).

[Ex. 8, Baisch Incident Report at 1.]

39. Baisch testified that his asserted interest in using force was "because I wanted to move him back and he wasn't following my verbal commands."

[Ex. 6, Baisch Dep. Tr. at 192:18–22.]

40. Chief Garrity testified that YPD issued a directive to provide guidance to officers encountering individuals recording police activity.

[Ex. 10, Garrity Dep. Tr. at 24:19–22.]

41. The directive was issued in response to individuals conducting what the Department referred to as "First Amendment audits."

[Ex. 10, Garrity Dep. Tr. at 24:19–22.]

42. Chief Garrity testified that the later-adopted recording-police policy "goes beyond" the prior directive.

[Ex. 10, Garrity Dep. Tr. at 32:21–23.]

43. Chief Garrity testified that officers are trained on policies before those policies are implemented.

[Ex. 10, Garrity Dep. Tr. at 33:19–24.]

44. Chief Garrity testified that he directed that a policy governing recording police activity be developed.

[Ex. 10, Garrity Dep. Tr. at 31:6–8.]

45. After reviewing the incident and internal investigation, Chief Garrity concluded that Officer Baisch's conduct was reasonable and within policy.

[Ex. 10, Garrity Dep. Tr. at 181:9–13.]

46. Chief Garrity testified that, after reviewing the incident, "the force appears reasonable and within policy."

[Ex. 10, Garrity Dep. Tr. at 181:9–13.]

DATED this 15th day of May, 2026.

Respectfully submitted,

/s/ Gregg Leslie
Gregg P. Leslie
Justin Dutrisac
ASU Sandra Day O'Connor College of Law
First Amendment Clinic,
Public Interest Law Firm
*Attorneys for Plaintiff Lucas Mullikin*