Michele Molinario, Bar #020594
Derek R. Graffious, Bar #033486
Ashley E. Caballero-Daltrey, Bar #036449
Melynda M. Meyrick, Bar #039695
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1746
Fax: (602) 200-7831
mmolinario@jshfirm.com
dgraffious@jshfirm.com
adaltrey@jshfirm.com
mmeyrick@jshfirm.com

Attorneys for Defendants City of Yuma
and James Baisch

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Lucas Mullikin,

Plaintiff,

v.

City of Yuma; James Baisch, in his personal capacity,

Defendants.

No. 2:25-cv-00637-ROS-JZB

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Response lacks legal argument or reference to any relevant case citation and focuses solely on unsupported assertions of factual disputes. Plaintiff's failure to meaningfully address the applicable legal frameworks or the undisputed record in this case demonstrates that Officer Baisch is entitled to qualified immunity and, regardless, Plaintiff's constitutional claims fail. Defendants are entitled to summary judgment in this case.

## I. <u>FACTS.</u>

As with Plaintiff's Motion for Partial Summary Judgment, Plaintiff's Response does not contain a fact section. Rather than lay out his version of the facts clearly for this Court, Plaintiff chose to make those arguments throughout his Response. Defendants laid out the facts in their Motion for Summary Judgment. [Doc. 58 at 1–7.] They also addressed

Plaintiff's version of the facts throughout their Response to Plaintiff's Motion for Partial Summary Judgment. [*See* Doc. 64.] Defendants do not repeat those arguments here and, instead, address specifically those points raised in Plaintiff's Response with a brief description of the facts to orient the Court.

From the outset of his Response, Plaintiff claims Defendants' Motion must be denied because the facts are disputed, but he does not cite evidence that demonstrates a genuine dispute of material fact, only his own argument. [*See, e.g.*, Doc. 70 at 2.] Nor can he—the parties focus on the same record of facts and, in fact, Plaintiff moved for summary judgment even though he faces a higher burden on summary judgment than Defendants do. *See Navajo Health Found.-Sage Mem'l Hosp. Inc. v. Razaghi Dev. Co. LLC,* 800 F. Supp. 3d 955, 963 (D. Ariz. 2025), *reconsideration denied*, No. CV- 23-08072-PCT-DJH, 2025 WL 3062638 (D. Ariz. Nov. 3, 2025) (explaining that it is "generally a 'heavy burden' for a plaintiff to seek summary judgment"). Regardless, argument cannot stand in the place of facts, and it cannot create a genuine issue of material fact that must go to the jury.

The material facts in this case are not in dispute.[1] Plaintiff and Heap arrived on scene and began filming an on-going arrest. [DSOF ¶ 8.] Plaintiff continued to encroach on the ongoing arrest, refusing to back up when he was directed. [DSOF ¶¶ 9–11, 13–17.] Heap backed up as she was directed. [DSOF ¶ 12.] Officer Baisch responded to a 911 call that an officer was surrounded and when he arrived, Plaintiff was close to officers, who were attempting to free the suspect's legs that were wrapped around a fence. [DSOF ¶¶ 26, 29–30, 32–35.] Officer Baisch ordered Plaintiff to get back and Plaintiff refused to comply. [DSOF ¶¶ 36–37.]

---

[1] The majority of Plaintiff's Controverting Statement of Facts ("PCSOF") are simply repetitions of his statements of fact in support of his Motion for Partial Summary Judgment. [*Compare* Doc. 71 *with* Doc. 55.] Defendants have already objected, as necessary, to those statements at length in their own Controverting Statement of Facts ("DCSOF") and they do not repeat those objections here. [*See generally* Doc. 65.] Defendants note that Plaintiff's timeline of the facts is different in his PSOF than in his PCSOF. For example, in the PCSOF, Plaintiff states that he identified himself as a journalist before the time he ended up close to Bermudez, but those facts are flipped in the PSOF. [Compare PCSOF ¶¶ 4–5 with PSOF ¶¶ 9–11.]

Officer Baisch used the lowest level of force that he could to escort Plaintiff back and away from the scene for everyone's safety. [DSOF ¶¶ 41–42.] Plaintiff resisted arrest by grabbing onto the fence and pushing against Officer Baisch. [DSOF ¶¶ 42, 44.] Officer Baisch lowered Plaintiff to the ground because he had resisted and told him to "stay" there. [DSOF ¶¶ 43, 45.] Plaintiff stood up, disregarding the command, and walked towards Officer Baisch. [DSOF ¶¶ 47, 50.] Officer Baisch told Plaintiff he was under arrest, but Plaintiff refused to give up his arms. [DSOF ¶¶ 52–54.] In the struggle, Plaintiff ended up on the ground. [DSOF ¶ 54.] Plaintiff only sustained scrapes on his knees and his forehead as a result of the scuffle. [DSOF ¶ 62.] Heap was not arrested. [DSOF ¶ 68.]

## II. <u>OFFICER BAISCH IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW WAS NOT CLEARLY ESTABLISHED.</u>

Plaintiff's Response contains only *two* citations in its entirety, and those citations are for the sole purpose of explaining that the First Amendment "protects the right to record police officers performing their duties in public." [*See* Doc. 70 at 8, 22.] As Defendants explained in their Response to Plaintiff's Motion for Partial Summary Judgment, neither of those cases are on point. [*See* Doc. 64 at 2–3, 5.] *Fordyce* was a pre-*Nieves* case where an officer violently smashed a camera into the plaintiff's face, *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995), and *Askins* involved the Department of Homeland Security's policy of stopping individuals from taking photographs off of a specific bridge, *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043–44 (9th Cir. 2018). Neither case involves the issues in this case, where Plaintiff was encroaching on an ongoing arrest and then refused to obey multiple officer commands, ultimately physically resisting arrest by grabbing onto a fence, pushing into an officer, and then standing and approaching an officer from behind. Finally, there is no case to support Plaintiff's assertion that Officer Baisch could not legally require him to stay back "six feet".

Plaintiff utterly failed to carry his burden to produce a case that clearly established the law as to each of his claims. *Rivas-Villegas v. Cortesluna,* 595 U.S. 1, 6 (2021) (a plaintiff has the burden to produce a case that clearly establishes the law); *Zorn v. Linton*, 146 S. Ct. 926, 931 (2026) (officers are entitled to qualified immunity unless plaintiff identifies "a

case where an officer taking similar actions in similar circumstances was held to have violated the Constitution" (cleaned up)). The two cases he cited do not establish the law as to his First Amendment claims—regardless of the theory he advances. [*See also* Doc. 64 at 2–3 (discussing Plaintiff's failure to support his interference claim).] Importantly, the cases do not involve *any* of the alleged uses of excessive force or whether it would have been reasonable for Officer Baisch to believe he had probable cause. In contrast, Defendants discussed numerous cases showing that qualified immunity *would* be proper in this case, and Plaintiff did not discuss those cases or even proffer an alternative argument. [*See* Doc. 58 at 23–24.] Although it is not Defendants' burden to prove the *absence* of clearly established case law, the cases nevertheless prove that Plaintiff cannot meet his burden. He did not even attempt to do so. This Court can thus resolve Plaintiff's claims against Officer Baisch on qualified immunity grounds even under Plaintiff's purported version of the facts, and it need not reach any other issue. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) ("There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.").

## III. THE RECORD LACKS EVIDENCE OF A CONSTITUTIONAL VIOLATION.

Plaintiff's arguments on his individual claims rest entirely on his repeated assertions that the facts in this case are disputed. As discussed above, however, they are not. Plaintiff does not cite to facts in the record to identify this dispute but, instead, repeatedly asserts that the jury could review the undisputed evidence and come to a different conclusion. As described below, those assertions run contrary to the record in this case, the applicable case law, and fail to demonstrate that Defendants' Motion should be denied.

### A. Officer Baisch Had Probable Cause To Arrest Plaintiff.

Plaintiff's argument on probable cause rests primarily on his assertion that Officer Baisch could not have had probable cause when he first seized Plaintiff because, as Plaintiff contends, Defendants' argument "ignores what Baisch actually knew." [Doc. 70 at 3.] Defendants argued—and Plaintiff failed to address—that the collective knowledge doctrine furnishes officers with the knowledge of other officers on scene, which includes Officer Kinnell's knowledge that Plaintiff did not obey commands. [Doc. 58 at 7 (citing *United States*

*v. Ramirez*, 473 F.3d 1026, 1032–33 (9th Cir. 2007).] To make this argument, Plaintiff also misstates Officer Baisch's testimony that he "did not know" if Plaintiff was a threat. [*Compare* Doc. 70 at 4 *with* DCSOF ¶¶ 21–22.] Officer Baisch explained that at first he was not sure if Plaintiff was a threat, but that the situation was quickly evolving, and he believed it was unsafe. [*See* DCSOF ¶¶ 21–22; *see also* DSOF ¶¶ 29–36.] It also ignores the fact that Officer Baisch was responding to a 911 call that an officer was surrounded. Regardless, that argument is irrelevant in light of the collective knowledge doctrine and the fact that the test for probable cause is *objective*, not subjective, and an officer may have probable cause regardless of the officer's stated reasons for arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (any rule focusing on the officer's subjective reason for arrest "makes the lawfulness of an arrest turn upon the motivation of the arresting officer—eliminating, as validating probable cause, facts that played no part in the officer's expressed subjective reason for making the arrest, and offenses that are not 'closely related' to that subjective reason"). Plaintiff relies on Officer Baisch's testimony throughout his Response without regard to these legal principles or the record in this case. [*See also, e.g.*, Doc. 70 at 5.]

Similarly, Plaintiff argues that a jury could determine that Plaintiff's statement of "six feet" was "not refusal." [Doc. 70 at 4.] Plaintiff again makes too much of the statement and Officer Baisch's testimony regarding Plaintiff's comments. There is no question that Plaintiff *did not back up*, regardless of the intention of his statement.[2] Plaintiff's argument about his subjective intent in staying "six feet" is irrelevant and misleading. Plaintiff claims that he did not have enough time to comply before Officer Baisch started moving him backwards, but Plaintiff had failed to comply with numerous commands before Officer Baisch's statements, and the video evidence shows that Officer Baisch in fact gave Plaintiff more than one second to comply with his command. In fact, Plaintiff's own argument regarding the "six feet" exchange proves that fact. If Officer Baisch had truly gone hands-on the second after arriving, there would be no argument as to whether Plaintiff responded with "six feet." The

[2] Moreover, Plaintiff's girlfriend, Heap, undisputedly testified that it was clear to her that he was refusing the command *and* that he was not, in fact, six feet back. [DSOF ¶ 39.]

record also shows that Plaintiff stated "six feet" *twice*, and that Heap told him he was not far enough away. [DSOF ¶¶ 36–41.] That is plainly more than the "one second" Plaintiff claims—enough time that multiple people, including Heap's own girlfriend, told him that he was too close. As Defendants argued, Officer Baisch had probable cause to arrest Plaintiff under the Yuma City Code and A.R.S. § 13-2413 from the moment he arrived on scene under the collective knowledge doctrine, but Plaintiff's failure to respond to Officer Baisch's lawful commands only gave him further probable cause for arrest. [*See* Doc. 58 at 7–9.] Plaintiff did not meaningfully address these offenses, and, instead, simply asserts that a jury could decide that he did not fail to comply.[3]

Plaintiff also baldly asserts that because Officer Baisch did not fully see how Plaintiff moved when he stood up (an argument which is unmoored from the record, [*see, e.g.*, DSOF ¶ 48],) he could not have known that Plaintiff failed to "stay there." That is illogical. If a person is told to stay seated on the ground and ends up walking up behind an officer's back, there is no question that the person failed to heed the command regardless of his initial movements upon standing. Plaintiff was supposed to remain seated. He did not. And because he walked up on Officer Baisch's back after *disregarding commands*, he created a threat and Officer Baisch perceived and reacted to it.

Finally, Plaintiff's assertions that Defendants' cases are somehow distinguishable lack any cogent argument. [*See* Doc. 70 at 7.] Plaintiff does not reference a single one of those cases or explain how they are different. He simply claims that he did not "actually interfere[]" with police activity. Plaintiff ignored multiple officer commands from the time that he arrived on scene. His argument and references to cherry-picked portions of Officer Baisch's testimony do not change that fact.

Officer Baisch had probable cause for Plaintiff's arrest. As such, summary judgment is proper on Plaintiff's false arrest claims.

---

[3] Plaintiff also argues that Defendants used later resistance to justify this seizure, but that is not the case. Defendants broke down the various parts of the interaction and showed how, at each step, Officer Baisch had probable cause. [*Compare* Doc. 70 at 5 *with* Doc. 58 at 8–9.] While Defendants analyzed claims five and six together, they still demonstrated that probable cause existed at each step of the interaction.

**B. The Record Lacks Evidence Of A First Amendment Violation.**

Plaintiff's Response spends little time on the legal framework of retaliation claims under *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019) and, instead, argues (as Plaintiff did in his Motion for Partial Summary Judgment) that he has a claim based on his argument that he was not able to film. Plaintiff argues that his claim involves "the interference with his recording and newsgathering activity before and during the arrest." [Doc. 70 at 8.] As far as Defendants can tell, the *only* way his recording and newsgathering was allegedly interfered with was the arrest. That is a retaliatory arrest claim clearly under the *Nieves* framework. Defendants addressed the potential of other claims in their Response to Plaintiff's Motion for Partial Summary Judgment, [Doc. 64 at 2–5,] but there, as here, Plaintiff has not cited a *single case* that demonstrates the framework that should be applied to his allegedly broader claim that goes beyond the arrest or somehow avoids the application of *Nieves*. Nor has he proposed *any* sort of framework for this Court to evaluate this allegedly different claim.

Plaintiff focuses on probable cause, as above, and gives only a minor amount of attention to the other elements of the claim, again insisting (through unsupported argument alone) that a jury could simply find the facts are otherwise. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986) (plaintiff must present affirmative evidence to defeat a motion for summary judgment); *Brit. Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation."). Plaintiff does not analyze the *Nieves* exception and thus apparently concedes that if Officer Baisch had probable cause (which he did), that his claims necessarily fail. [*See* Doc. 58 at 10.] Plaintiff also does not address the burden shifting framework described in *Nieves*, except to say that the evidence regarding Heap is not enough. *Plaintiff* has the burden to show that retaliation was a substantial or motiving factor of the arrest. His only argument is that the "timing" could show that Officer Baisch may have retaliated against him. That is not enough to meet his burden, and Plaintiff has cited no law that demonstrates any other court has found such an argument sufficient. But even if it had, Defendants may still show that the arrest would have been

initiated without respect to retaliation, and the fact that they did not arrest Heap is proof of that.

Plaintiff has no evidence to rebut Defendants' arguments and simply argues that the jury could decide it is insufficient. Plaintiff is not entitled to a jury trial simply to allow the jury to apply the law to the undisputed record. That is the Court's role. No dispute of fact exists on Plaintiff's First Amendment claims, and summary judgment is proper.

### C. Officer Baisch Is Entitled To Summary Judgment on Plaintiff's Excessive Force Claims.

Plaintiff's argument on his excessive force claims again relies on Officer Baisch's subjective testimony, ignores the bulk of Officer Baisch's arguments, and, again ignores the application of the collective knowledge doctrine. As an initial matter, Defendants argued that the uses of force in this case were de minimis, and Plaintiff did not address that argument or his lack of injury.[4] In fact, Plaintiff pays scant attention to the *Graham* factors. He repeats the elements without argument as to each alleged use of force, and he does not address any of the cases Defendants cited on excessive force. [*See* Doc. 70 at 15–16.] Defendants thus limit the arguments in this Reply to only Plaintiff's purported issues of fact.

For example, in his discussion of the initial backwards escort, Plaintiff focuses solely on whether he was complying with the Officers' orders. For all the reasons discussed above, he was not. On the use of force bringing Plaintiff to the ground, Plaintiff argues that *his* subjective intent in grabbing the fence and pushing into Officer Baisch shows that force was not reasonable. [Doc. 70 at 13.] But *Graham* is from the eyes of an objective officer, not Plaintiff's subjective description of why he did something. *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." (cleaned up)). Plaintiff *admitted* that he grabbed the fence and implicitly admitted to pushing into Officer Baisch. A reasonable

---

[4] In Plaintiff's Motion for Partial Summary Judgment, he discussed only the backwards escort, despite claiming to move on his excessive force claims in their entirety. [*See* Doc. 64 at 10 n.3 (discussing limited argument on excessive force).]

officer would have believed he was resisting arrest. That is not a mere "characterization" as Plaintiff suggests, but a critical factor for this Court to consider under *Graham*, as this Court must consider the claim from the perspective of a reasonable officer on the scene. *Id.* at 397.

As to the second handcuffing and takedown, Plaintiff again relies on the same purported disputed facts above to claim that a jury could believe he did not disregard the command to stay. There can be no true dispute that Plaintiff stood and walked towards Officer Baisch from behind. Plaintiff was a threat at that point. Finally, Plaintiff claims he did not physically resist the handcuffing, but that assertion is belied by the record. Officer Baisch needed assistance from another officer to get Plaintiff into handcuffs, and the video clearly shows Plaintiff resisting and attempting to stand up. [*See* DSOF ¶¶ 53–56;] *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Plaintiff's argument also contends that his attempts to stand up were not meant as physical resistance to the arrest. But what matters is that an objective officer would believe an individual trying to stand up from being placed on the ground would be resisting arrest.

Plaintiff's Response on excessive force focuses on isolated and unsupported assertions of disputed facts, all while ignoring the applicable law in this case. Defendants refer this Court to their Motion for Summary Judgment for a detailed account of each use of force and the applicable case law. [*See* Doc. 58 at 12–18.] Summary judgment is proper on Plaintiff's excessive force claims.

### D. Summary Judgment Is Proper On Plaintiff's *Monell* Claims.

Summary judgment is also proper on Plaintiff's *Monell* claims because the record lacks evidence of a constitutional violation for all the reasons described above and because Plaintiff failed to demonstrate that the City was on notice that any alleged policy of inaction would lead to the violation—in other words, that the City was deliberately indifferent. [*See* Doc. 58 at 18–22.] Defendants cited numerous cases and laid out the record of their policies and training in their Motion. [*Id.*] Plaintiff's Response does not even begin to analyze the *Monell*

claim under the correct framework, and it is focused entirely on Plaintiff's First Amendment claims, despite Plaintiff alleging multiple *Monell* claims.

Plaintiff argues generally that the City lacked sufficient policies, but he fails to cite a *single other instance* that would have put the City on notice. [Doc. 70 at 16–19.] Even accepting as true Plaintiff's assertion that the City lacked a policy (which is not at all supported by the record), Plaintiff still must prove that lack of policy put the City on notice that its policies were deficient. Plaintiff is not entitled to a jury trial simply to let the jury decide whether the language of the policy was clear. Defendants cited numerous cases on this point, which Plaintiff did not address. [*See* Doc. 58 at 18–20.] Instead, Plaintiff argues, entirely without citation or legal support, that a subsequent policy could demonstrate, for the purposes of *Monell*, that a previous policy was constitutionally deficient. [Doc. 70 at 18–19.] That argument is contrary to the requirement that the City must have notice *before the incident* that its policies would likely result in a constitutional violation. This argument also misstates the record, because Chief Garrity testified that the City in fact had a directive that covered this situation and that the directive had the same force as policy. [*See* DSOF ¶¶ 78–79.] Although he stated that the later policy went beyond that directive, he never testified that the directive was somehow deficient, and the record lacks any evidence that demonstrates the City should have known the directive was insufficient. Plaintiff has the burden to show the policies were insufficient *and* that the City was on notice of that fact. He failed to carry that burden. *See Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (plaintiff must show that the City "was on actual or constructive notice that its omission would likely result in a constitutional violation" and "that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy.").

Plaintiff's lacking section on training fares no better, and he does not discuss supervision. [*See* Doc. 70 at 19.][5] This section involves only a *single* line of argument, that

[5] Defendants note for the clarity of the record that they referenced Plaintiff's expert's opinion that the training in this case was sufficient, but that statement appears in an opinion that has since been withdrawn. [*See* DSOF ¶ 86.] Defendants did not base their argument on that opinion and thus nothing about its withdrawal changes the outcome in this case.

Plaintiff believes the training was inadequate without reference to any evidence that would have put the City on notice. Again, Defendants cited numerous cases on this point and Plaintiff neither addressed those cases nor provided any evidence to support his claim.

Finally, Plaintiff cannot base a ratification claim on the mere fact that Officer Baisch was not disciplined. The record does not contain anything more than Chief Garrity's comment that the force was within policy. [*See* Doc. 70 at 20 (arguing same).] That is insufficient as a matter of law to support a *Monell* claim. *See Oakry v. Tempe, City of*, No. CV 20-01167-PHX-JAT (DMF), 2022 WL 137621, at *4–5 (D. Ariz. Jan. 14, 2022) (the record must contain "something more" that shows statements regarding an incident are adopted as official policy, such as ratification through departmental training).

The record lacks evidence that would support a *Monell* claim under any theory, and summary judgment is proper on Plaintiff's *Monell* claims.

## IV. CONCLUSION.

For all of the reasons discussed in their Motion, this Reply, and their Response to Plaintiff's separately filed Motion for Partial Summary Judgment, Defendants City of Yuma and Officer James Baisch respectfully request that this Court grant them summary judgment on Plaintiff's claims and deny Plaintiff's request for summary judgment.

DATED this 12th day of June, 2026.

JONES, SKELTON & HOCHULI, P.L.C.

By */s/ Michele Molinario*
Michele Molinario
Derek R. Graffious
Ashley E. Caballero-Daltrey
Melynda M. Meyrick
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Defendants City of Yuma and James Baisch

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of June, 2026, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

Gregg P. Leslie, Esq.
ASU Sandra Day O'Connor College of Law
First Amendment Clinic, Public Interest Law Firm
111 E. Taylor Street, Mail Code 8820
Phoenix, AZ 85004
Gregg.Leslie@asu.edu
*Attorney for Plaintiff Lucas Mullikin*

*/s/ Cindy Castro*