Michele Molinario, Bar #020594
Derek R. Graffious, Bar #033486
Ashley E. Caballero-Daltrey, Bar #036449
Melynda M. Meyrick, Bar #039695
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1746
Fax: (602) 200-7831
mmolinario@jshfirm.com
dgraffious@jshfirm.com
adaltrey@jshfirm.com
mmeyrick@jshfirm.com

Attorneys for Defendants City of Yuma
and James Baisch

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Lucas Mullikin,<br><br>Plaintiff,<br><br>v.<br><br>City of Yuma; James Baisch, in his personal capacity,<br><br>Defendants. | No. 2:25-cv-00637-ROS-JZB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DAUBERT MOTION RE: ROGER CLARK** |

Plaintiff's Response attempts to rewrite Mr. Clark's opinions in order to save them. Several of Plaintiff's restatements of his opinions materially contradict the Report as written, and only further highlight the deficiencies in Mr. Clark's Report and opinions. Mr. Clark's opinions violate Rule 702 and *Daubert* because they are full of legal conclusions and are not based on sufficient facts and data. This Court should grant Defendants' *Daubert* Motion.

## I. THIS COURT SHOULD EXCLUDE MR. CLARK'S LEGAL CONCLUSIONS.

This Court should exclude Mr. Clark's opinions because they consist primarily of legal conclusions. Plaintiff agrees that an expert cannot give an opinion in the form of a legal conclusion. [*See* Doc. 66 at 2.] The issue thus is not about the framework of evaluating

the Motion, but whether Mr. Clark's opinions can properly be categorized as legal opinions. Plaintiff's cited cases in fact *highlight* the issues in Mr. Clark's opinions.[1] For example, one of Plaintiff's cited cases explain that when the terms "*do not have a specialized meaning in law*," then the testimony is not an impermissible legal conclusion. *See United States v. Diaz*, 876 F.3d 1194, 1198–99 (9th Cir. 2017) (emphasis added). Plaintiff mischaracterizes this argument when he states that the issue is not "whether an opinion uses words that may also appear in a jury instruction." [Doc. 66 at 2.] That was not Defendants' argument. As Defendants described in their Motion, Mr. Clark repeatedly uses specialized legal terminology to conclude that Plaintiff has proven his claims. [*See* Doc. 53 at 2–4.] That is not proper expert opinion.

Plaintiff nevertheless argues that courts have "routinely admitted police-practices testimony," with the kinds of terms that Mr. Clark uses, [Doc. 66 at 2–3,] but he cites only a single case on this point, *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc), *disapproved of on other grounds by Lemos v. Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022) (en banc). *Smith* does not hold that an expert can freely use legal terms. Instead, it states that an expert can discuss whether an officer's conduct comports with law enforcement standards and training. *Id.* It does not state or suggest that an expert could opine on whether force was reasonable, whether officers had probable cause, or whether they failed to intervene.[2] Similarly, in *Larez v. City of Los Angeles*, 946 F.2d 630, 635, 646 (9th Cir. 1991) (which Plaintiff cites later in his Response), the expert had opined on the nature of the investigation and subsequent discipline, not on the underlying claims.

Defendants do not dispute that Mr. Clark is *qualified* as an expert, but a qualified expert can impermissibly opine on legal issues and be excluded nonetheless. Indeed, this Court excluded Mr. Clark's legal opinions on that basis in *Singh v. City of Phoenix*, No. CV-21-00099-

---

[1] Additionally, Plaintiff's citations in support of his argument were issued before Rule 702 was updated in 2023 to address the problem of courts admitting testimony that should otherwise be excluded. *See* Fed. R. Evid. 702 cmt. to 2023 am. ("many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a).").

[2] Plaintiff argues that Defendants discussed "inadequate training" in their Motion. [Doc. 66 at 3.] That is not correct. Defendants argued that Mr. Clark improperly opines that the training was constitutionally or otherwise legally deficient. [Doc. 53 at 3.]

PHX-JJT, 2025 WL 1677569, at *7–*8 (D. Ariz. June 13, 2025) ("Mr. Clark may not opine that the Officers in this case acted unreasonably or excessively"), which Defendants discussed in their Motion. [Doc. 53 at 3–4.] Plaintiff does not address that holding and, instead, points to a 2015 District of California case to argue that a court has rejected this argument. [Doc. 66 at 4.] But the Court there in fact concluded that "several of Clark's opinions, as currently formulated, are not helpful to the jury because they constitute impermissible legal conclusions." *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. 2015). It did so specifically on opinions regarding excessive or unreasonable force: "Although the Court finds that Clark is qualified to opine as to whether the officers' use of force was excessive or unreasonable, the Court concludes that such testimony should be explored through hypothetical questioning so as to avoid invading the province of the jury." *Id.* Thus, Plaintiff's citation to *Valtierra* helps, rather than hurts, Defendants' argument. That is consistent with this Court's recent decision in *Singh*, which identified similar objectionable opinions.

Although *Valtierra* and *Singh* allowed Mr. Clark to correct his opinions by limitations on his testimony, that solution would be less helpful here because Mr. Clark's opinions are almost exclusively legal opinions. In other cases, the Court identified portions of the opinions that could be permissible. Here, however, Mr. Clark's rebuttal opinions are so full of legal conclusions that they cannot be neatly separated.[3] Plaintiff attempts to rewrite Mr. Clark's opinions by claiming that if they are "[r]ead in context," that it is clear that he is only referring to AZPOST standards. [Doc. 66 at 3.] As an initial matter, Defendants pointed out specific statements as examples of problems that are pervasive throughout Mr. Clark's Report. [*See* Doc. 53 at 3–4.] When read in context, however, the problems with Mr. Clark's opinions only become even more stark. In his disagreement with Opinion #1, for example, Mr. Clark specifically references Plaintiff's rights under the Constitution. In Opinion #2, he discusses the legal effect of a city ordinance; in Opinion #3 and 4, he opines whether Plaintiff was a threat; and in Opinion #5 and 6, Mr. Clark specifically opines that the Officers did not

[3] Additionally, as addressed in the Motion and below, Mr. Clark's opinions are also objectionable because they are not based on sufficient facts and data. [*See* Doc. 53 at 4–7.]

protect Plaintiff's First Amendment rights. Similarly, in Rebuttal Opinion #1, he specifically opines that the actions were contrary to "law," and in Rebuttal Opinion #4, he concludes that Officer Baisch was "negligent." The backdrop, then, of Mr. Clark's Report is his attempts to tell the jury that Plaintiff has proven his claims. Plaintiff's Response cannot rewrite or ameliorate those opinions by isolating statements or claiming that the context is somehow different than the actual text of the opinions in the Report.

This Court should exclude Mr. Clark's ultimate issue testimony as presented in the form of legal conclusions.

## II. MR. CLARK'S OPINIONS ARE NOT BASED IN THE FACTS.

This Court should also exclude Mr. Clark's opinions as they are not based on sufficient facts and data in this case. Here, as in his section on legal conclusions, Plaintiff attempts to save Mr. Clark's opinions by rewriting them, which only underscores the insufficiency of Mr. Clark's opinions.

For example, Defendants pointed to Mr. Clark's assertion that "the Yuma Police Department did not have any policies providing officers with standards, training, or information about how to engage with journalists or civilians recording police activity in public places." [Doc. 53, Ex. 1 at 11.] Plaintiff asks this Court to read that statement so narrowly as to remove all meaning from it—that it is not about the lack of policies generally, but about the specific policy Plaintiff thinks the City should have had. Plaintiff goes on to explain why Policy 1.12 is insufficient, but that is Plaintiff's argument, not Mr. Clark's opinion. In fact, Mr. Clark's opinion does not discuss Policy 1.12 at all (and neither Plaintiff nor his expert touch on the directive in place at the time). The parties argued about the sufficiency of specific policies in the briefing on the motions for summary judgment, which is the appropriate place to do so.[4] Plaintiff cannot substitute argument in place of expert opinion in the context of a

---

[4] Similarly, Plaintiff claims that "Mr. Clark did not opine that Officer Baisch in fact submitted a false report." [Doc. 66 at 7.] Clark specifically opines that "**Officer Baisch submitted a false report** when he stated in writing that Mr. Mullikin 'refused' orders, which contradicts the video evidence, which recorded Mr. Mullikin stating that he was six feet back." [Doc. 53, Ex. 1 at 24 (emphasis added).] The parties, however, stipulated to the withdrawal of that opinion. [*See* Doc. 63 (granting stipulation).] This stipulation also covers the policy opinion, which appears at page 11 within the fact section. [*Id.* (withdrawing "Mr. Clark's

*Daubert* Motion. The Motion does not test the sufficiency of counsel's argument—it tests the sufficiency, accuracy, and helpfulness of Mr. Clark's opinions.

Plaintiff's argument does not merely attempt to rewrite Mr. Clark's opinions; however, it goes on to attempt to rewrite the very basis of this case. Plaintiff disregards the Media Relations Policy (Policy 1.12,) the First Amendment filming directive (which was not specific to media), and Chief Garrity's testimony regarding the force of the policy *and* directive—which had the same force and effect of any other policy. [*See* DSOF ¶¶ 75–80.] Plaintiff also focuses on his perception that the Policy "says nothing about civilians recording police activity," which is completely irrelevant in this case because Plaintiff alleged—and has maintained throughout this lawsuit—that he is a journalist. [*See, e.g.*, Doc. 1 ¶¶ 2, 10, 64 (describing Plaintiff as a journalist); *see also* Doc. 70 at 3 (explaining that Plaintiff said he was a journalist).] Moreover, the directive also plainly applied to Plaintiff's interactions with the officers, whether or not he was a journalist. Plaintiff cannot bring a *Monell* claim based on a theory that an allegedly insufficient policy might hurt some hypothetical person—he must demonstrate that the policy caused his injury. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (policy must be the moving force behind the constitutional violation).

Plaintiff's argument on the remainder of Mr. Clark's facts again comes down to his assertion (rather than clear references to the record) that he was *incapable* of recording from where he stood or that there are inconsistencies in the record. Plaintiff claims these are not credibility determinations, [*see* Doc. 66 at 7,] but in every instance, Mr. Clark is weighing the facts and usurping the role of the jury. He does so even though some of these issues (such as whether Plaintiff could record) are not even within the purview of a police expert. *See, e.g.*, *Valtierra*, 99 F. Supp. 3d at 1197 (precluding Mr. Clark from offering opinions regarding medical consequences or use of a taser because they went beyond his expertise as a police practices expert). The jury does not need Mr. Clark's opinions regarding factual disputes—his attempts to resolve those disputes invades the province of the jury. *See Quinn v. Fresno Cty.*

---

recitation of the facts as they include a number of opinions that are unrelated to Handy's opinions.").]

*Sheriff*, No. 1:10-CV-01617 LJO, 2012 WL 2995477, at *4 (E.D. Cal. July 23, 2012) ("Weighing the credibility of witnesses and resolving factual matters is not outside the common ability or knowledge of a layperson; it is the precise role that the law assigns solely to a layperson as a juror.").

Plaintiff cannot avoid the application of Rule 702 by pointing to Mr. Clark's statement that he is not making credibility determinations. Mr. Clark's Report and opinions demonstrate otherwise. Defendants detailed the lack of basis in the record with references to contradicting evidence, [Doc. 53 at 5–7,] and Plaintiff's Response does not address those issues except to say that Mr. Clark's opinions have a basis in the record. [*See* Doc. 66 at 6–8.] Mr. Clark's report invades the province of the jury and improperly tells the jury that the facts and application of the law are decided in this case. That is exactly the kind of testimony Rule 702 is designed to protect against, given the weight that jurors give to experts. *See* Fed. R. Evid. 702 cmt. to 2023 am. ("Judicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support."). This Court should exclude Mr. Clark's opinions for this additional reason.

Finally, Defendants disagree that a curative instruction would be sufficient to resolve the issues in this testimony.[5] A curative instruction would necessarily come *after* the improper testimony is admitted. That testimony would prejudice Defendants because Mr. Clark is an expert, and a curative instruction would not remove that prejudice. If the Court is disinclined to exclude Mr. Clark's testimony in full, it could instead enter an order limiting Mr. Clark's testimony so that he does not offer impermissible legal conclusions or invade the province of the jury.

---

[5] Plaintiff also suggests that Defendants should have filed a motion in *limine* rather than a *Daubert* challenge. [*See* Doc. 66 at 8.] Any such motion would necessarily involve the same substance as the instant motion, and Defendants wanted to raise these issues at the same time as dispositive motions. Additionally, a curative instruction would have no effect on dispositive motions.

**III. CONCLUSION.**

Defendants City of Yuma and Officer James Baisch once again urge this Court to enter an order excluding Plaintiff's Expert Roger Clark from offering opinions or testimony in response to a dispositive motion or at trial. The combination of Mr. Clark's legal conclusions and his attempts to resolve factual issues for the jury are pervasive and undercut the majority of his Report. In the alternative, this Court could issue an order limiting Mr. Clark's testimony consistent with the arguments in Defendants' Motion and Reply.

DATED this 12th day of June, 2026.

JONES, SKELTON & HOCHULI, P.L.C.

By *_/s/ Michele Molinario_*
Michele Molinario
Derek R. Graffious
Ashley E. Caballero-Daltrey
Melynda M. Meyrick
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Defendants City of Yuma and James Baisch

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of June, 2026, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

Gregg P. Leslie, Esq.
ASU Sandra Day O'Connor College of Law
First Amendment Clinic, Public Interest Law Firm
111 E. Taylor Street, Mail Code 8820
Phoenix, AZ 85004
Gregg.Leslie@asu.edu
*Attorney for Plaintiff Lucas Mullikin*

*_/s/ Cindy Castro_*