**ASU Sandra Day O'Connor College of Law**
**First Amendment Clinic, Public Interest Law Firm**
Gregg P. Leslie, Gregg.Leslie@asu.edu (AZ Bar # 035040)
First Amendment Clinic, Public Interest Law Firm
Arizona State University Sandra Day O'Connor College of Law
111 E. Taylor St., Mail Code: 8820
Phoenix, AZ 85004
(480) 727-7398
*Attorney for Plaintiff Lucas Mullikin*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

LUCAS MULLIKIN,

Plaintiff,

v.

CITY OF YUMA; JAMES BAISCH, in his personal capacity.

Defendants.

No. 2:25-cv-00637-ROS-JZB

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants have responded to Plaintiff's claims in a way that muddies the waters, so it is worth noting at the start here that: Plaintiff was engaged in protected newsgathering; Plaintiff was behind two fences, in a manner that demonstrates that Officer Kinnell did not think there was a safety threat, *see* ¶18, Def. Statement of Facts (SOF); Officer Baisch pushed Mullikin to the ground after forcibly moving him back, ¶¶26-30; and when Mullikin asked for his badge number, Baisch turned suddenly and arrested him after again forcing him to the ground, ¶¶38-40. This entire confrontation can be seen in the video Mullikin took at the scene. *See* Exh. 3, Doc. 54: Plaintiff's Motion for Summary Judgment, at 3:19-3:28. These actions clearly violated Plaintiff's

rights, and as established in the Motion, the retaliatory arrest was conducted without probable cause.

In reply to particular statements in the Response, identified by Defendants' argument number:

**Arg. II(A)**: Defendants argue that Plaintiff failed to address causation, however Plaintiff's motion expressly states that Officer Baisch's conduct directly stopped Plaintiff's recording. [Doc. 64 at 2; Doc. 54 at 4]. Additionally, Plaintiff went on to say that "but for Baisch's actions, Plaintiff would have continued recording the ongoing arrest." [Doc. 54 at 4]. Plaintiff did not advance an interference theory untethered from causation, but expressly identified Baisch's actions as the direct cause of the interruption of Plaintiff's protected activity. *Id.*

**Arg. II(B)**: Defendants rely on *Zorn v. Linton*, 146 S. Ct. 926, 931 (2026), for the claim that Plaintiff must identify a case where an officer taking similar actions in similar circumstances was held to have violated the Constitution. [Doc. 64 at 4–5]. However, Defendants have mischaracterized the scope of that decision. *Zorn* states only that courts "generally" look for factually similar precedent when determining whether a right is clearly established. *Zorn*, 146 S. Ct. at 931. The Court did not hold that a plaintiff must always identify a factually identical case before qualified immunity can be denied. *Id.* Where the unconstitutional conduct is sufficiently obvious, a plaintiff does not need to identify a similar case. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). No reasonable officer needed specific prior precedent to know that physically forcing a bystander to the ground and arresting him within one second of a badge number request, before any opportunity

to comply, would violate a First Amendment right clearly established in this Circuit since *Fordyce v. City of Seattle,* 55 F.3d 436 (9th Cir., 1995). [Doc. 64 at 3].

**Arg. II(C)**: Defendants state that Plaintiff "primarily cites cases that predate (and are abrogated by) *Nieves*." [Doc. 64 at 5]. However, *Nieves v. Bartlett*, 587 U.S. 391, 397–398 (2019), specifically addresses the probable cause element of retaliatory arrest claims; it does not abrogate the other elements. Additionally, *Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017) is largely consistent with the holding in *Nieves*, as it includes lack of probable cause as one part of its four-part test. Plaintiff cited *Nieves* when stating the requirements of a retaliation claim and then demonstrated that Baisch lacked probable cause. [Doc. 54 at 5, 8].

**Arg. II(C)(1):** Defendants argue that probable cause existed for multiple offenses beyond failure to obey a lawful command, including resisting arrest and assault on a peace officer. [Doc. 64 at 5–6]. But this argument conflates the sequence of events. The relevant question for Plaintiff's retaliatory arrest claim is whether Officer Baisch had probable cause to arrest Plaintiff, not whether probable cause for other offenses developed during or after the arrest itself. These consequent offenses cannot supply the probable cause that justifies initiating that arrest in the first place. Accordingly, Plaintiff's Motion properly focused on the offenses that could have justified the arrest, and the record does not support probable cause for those offenses for all the reasons set forth in Plaintiff's motion. [Doc. 54 at 8–9].

**Arg. II(C)(3):** Defendants incorrectly state that Plaintiff "did not address whether the arrest would have been made without respect to retaliation." [Doc. 64 at 8]. Plaintiff

established that recording and requesting badge numbers were substantial motivating factors in the arrest. [Doc. 54 at 6–8]. Where Plaintiff properly carried the burden of showing that his conduct was constitutionally protected and that this conduct was a substantial factor, the burden shifts to Defendants to show the arrest would have occurred regardless. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

**Arg. II(D):** Defendants argue that the record lacks evidence that similar issues arose before, such that the City had notice its omission would cause a constitutional violation. [Doc. 64 at 9]. However, *Connick* makes it clear that a pattern of similar violations might not be necessary to show deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 63–64 (2011). Plaintiff's motion argued that the need for training was so obvious because the Ninth Circuit has recognized a First Amendment right to record police since *Fordyce*, thus does not need a pattern of similar violations. [Doc. 54 at 10].

Defendants cite *Oakry v. Tempe, City of*, 2022 WL 137621 (D. Ariz. Jan. 14, 2022), for the "something more" ratification standard. [Doc. 64 at 9]. In *Oakry*, a plaintiff adequately pleaded ratification when a police chief described an incident as a "successful outcome" and stated that additional training was provided to not correct but reinforce the officers' conduct. *Oakry*, 2022 WL 137621, at *4–5. Here, Chief Garrity did not merely decline to discipline Officer Baisch or passively conclude that his conduct did not violate policy. He reviewed the body camera footage and an internal investigation, and then testified under oath that the force was "reasonable and within policy." [SOF ¶¶ 59–60.] That record exceeds what was sufficient to state a ratification claim in *Oakry*.

## CONCLUSION

For the forgoing reasons, Plaintiff Lucas Mullikin respectfully requests this Court grant Summary Judgment in favor of Plaintiff's claims.

DATED this 12th day of June, 2026.

Respectfully submitted,

/s/ Gregg Leslie
Gregg P. Leslie[1]
ASU Sandra Day O'Connor College of Law
First Amendment Clinic,
Public Interest Law Firm
*Attorneys for Plaintiff Lucas Mullikin*

[1] Counsel gratefully acknowledges the assistance of Caitlin Smith, a summer legal extern with the First Amendment Clinic, in the preparation of this Reply.